IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW PERRONG, individually and on behalf of a class of all persons and entities similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>FRONTIER UTILITIES NORTHEAST LLC and NEXT GENERATION ENERGY, INC.,<br><br>    Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT |

**CLASS ACTION COMPLAINT**

Plaintiff Andrew Perrong (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

**Preliminary Statement**

1. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The states likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2.      Plaintiff Andrew Perrong ("Plaintiff" or "Mr. Perrong") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices.  *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

3.      In violation of the TCPA, Frontier Utilities Northeast LLC ("Frontier") hired the co-Defendant Next Generation Energy, Inc. ("Next Generation Energy"), who made the telemarketing calls at issue.  However, this was done by calling residential numbers listed on the National Do Not Call Registry, like Mr. Perrong's, which is prohibited by the TCPA.

4.      The Plaintiff never consented to receive the calls, which were placed to him for telemarketing purposes.  Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendants.

5.      A class action is the best means of obtaining redress for the Defendants' wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

6.      Plaintiff Andrew Perrong is a Pennsylvania resident and a resident of this district.

7.      Defendant Frontier Utilities Northeast LLC is a Delaware limited liability company with its principal place of business in Houston, Texas.  Frontier has a Registered Agent of Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.  Defendant is registered to do business into this district and does business in this district through the service it provides to its energy customers, as it attempted to do with the Plaintiff.

8.	Defendant Next Generation Energy, Inc. is a Massachusetts corporation with a principal place of business at 56 Concord Avenue, North Kingstown, Rhode Island 02852.  Next Generation Energy has a registered agent of Kate L. Fletcher, 22 Parker Street, Unit 8, Malden, Massachusetts 02148.

## Jurisdiction & Venue

9.	The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

10.	This Court has jurisdiction over the parties.  First, Next Generation Energy places telemarketing calls into this district, as it did with Plaintiff.  Second, Frontier regularly engages in business in this district, including making telemarketing calls into this district and soliciting business from this district for its regionalized energy programs.  Furthermore, Frontier provides Pennsylvania residents with services in this district.

11.	Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district, as the telemarketing calls to the Plaintiff occurred in this district.

## The Telephone Consumer Protection Act

12.	In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy [.]"  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The National Do Not Call Registry</u>

13. The National Do Not Call Registry (the "Registry") allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

14. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

15. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## Factual Allegations

16. Frontier is an electric generation supplier that attempts to sell its residential electric services to residents of New Jersey, Illinois, Ohio, and Pennsylvania.

17. To generate business through sales, Frontier relies on telemarketing.

18. However, Frontier's contact with the potential new customers is limited, and the telemarketing is conducted by third parties, such as Next Generation Energy.

19. One of Frontier's strategies for telemarketing involves the use of *en masse* telemarketing to solicit business by third parties.

20. Those calls violate the TCPA when they are made to residential consumers on the National Do Not Call Registry.

<u>The Calls to Mr. Perrong</u>

21. Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

22. Plaintiff's residential telephone number is (215) 322-XXXX.

23. Mr. Perrong listed that number on the National Do Not Call Registry on November 12, 2018 and has not removed it from the Registry since that time.

24. Mr. Perrong uses the number for personal, residential, and household reasons.

25. The number is not associated with any business.

26. Upon information and belief, Next Generation Energy placed telemarketing calls to Plaintiff's number on April 1, 2019 and five calls on April 2, 2019.

27. Upon information and belief, Next Generation Energy transmitted a non-working number for a Caller ID on three of the calls and transmitted a number for an unrelated local resident for a Caller ID on three of the calls.

28. The local Caller ID number was used to mislead call recipients into believing the call was local, so there would be a better chance that they would answer.

29. Frontier was not identified through its Caller ID or at the start of the telemarketing call, so after ignoring the first call, the Plaintiff went through the telemarketing process so he could identify the company.

30. The agent initially stated that he was calling from Plaintiff's local electric utility, PECO Energy, and did not reveal that he was selling Frontier's services until later.

31. The Plaintiff identified Frontier because he received a verification that it was Frontier calling from a third-party verification company as part of the telemarketing pitch for the call he received.

32. Upon information and belief, Next Generation Energy was instructed to make calls for Frontier to promote its goods and services using a script approved by Frontier.

33. All of the telemarketing calls were made to promote Frontier goods and services.

34. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up during the telemarketing calls, and their privacy was improperly invaded. Moreover, these calls injured Plaintiff and the other call recipients because they were frustrating, obnoxious, annoying, were a nuisance, and disturbed the solitude of Plaintiff and the class.

### Frontier's Liability and Its Arrangement with Next Generation Energy

35. For more than twenty years, the Federal Communication Commission ("FCC") has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995).

36. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6588, ¶ 37 (2013) ("May 2013 FCC Ruling").

37. In that ruling, the FCC instructed that sellers such as Frontier may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers

> (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

May 2013 FCC Ruling, 28 FCC Rcd. at 6588, ¶ 37 (internal citations omitted).

38. The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586, ¶ 34.

39. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

*Id.* at 6592, ¶ 46.

40. By engaging Next Generation Energy to make calls on behalf of its agents and to generate new business, Frontier "manifest[ed] assent to another person … that the agent shall act

on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

41. Moreover, Frontier maintained interim control over Next Generation Energy's actions.

42. For example, Frontier controlled the states that it allowed Next Generation Energy to call.

43. Frontier instructed Next Generation Energy on what numbers to call.

44. Frontier also instructed Next Generation Energy on what telephone numbers not to call.

45. Frontier also gave interim instructions to Next Generation Energy by providing the volume of calling and new customers it would purchase.

46. Frontier provided scripts to its third-party telemarketers, including Next Generation Energy, to use when making calls.

47. Next Generation Energy transferred customer information directly to Frontier's third-party vendor and verification system, who had the ability to bind them in contract. Thus, the company that Frontier hired has the "ability … to enter consumer information into the seller's sales or customer systems," as discussed in the May 2013 FCC Ruling. 28 FCC Rcd. at 6592, ¶ 46. As such, the company that Frontier hired is an apparent agent of Frontier.

48. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships … through discovery, if they are not independently privy to such information." *Id.* at 6592-593, ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of

demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593, ¶ 46.

## Class Action Statement

49. As authorized by Rule 23(b)(2) or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

50. The class of persons Plaintiff proposes to represent is tentatively defined as:

> **National Do Not Call Registry Class**: All persons in the United States (1) whose telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendants (3) within a 12-month period, (4) from four years prior the filing of the Complaint.

This is referred to as the "Class."

51. Excluded from the Class are counsel, the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

52. The Class as defined above is identifiable through phone records and phone number databases.

53. The potential members of the Class number at least in the thousands.

54. Individual joinder of these persons is impracticable.

55. The Plaintiff is a member of the Class.

56. There are questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

> (a) whether Next Generation Energy systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

(b) whether Next Generation Energy made calls to Plaintiff and members of the Class without first obtaining prior express written consent to make the calls;

(c) whether Defendants' conduct constitutes a violation of the TCPA;

(d) whether Frontier is vicariously liable for the conduct of Next Generation Energy; and

(e) whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

57. Plaintiff's claims are typical of the claims of members of the Class.

58. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class, he will fairly and adequately protect the interests of the Class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

59. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

60. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

## FIRST CAUSE OF ACTION

**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the National Do Not Call Registry Class)**

61. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

62. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to the Plaintiff and the Class despite their numbers being on the National Do Not Call Registry.

63. The Defendants' violations were negligent, willful, or knowing.

64. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

65. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to numbers on the National Do Not Call Registry, except for emergency purposes, in the future.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

    A.    Certification of the proposed Class;

    B.    Appointment of Plaintiff as a representative of the Class;

    C.    Appointment of the undersigned counsel as counsel for the Class;

    D.    A declaration that Defendants and/or their affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E. An order enjoining Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to numbers on the National Do Not Call Registry, except for emergency purposes;

F. An award to Plaintiff and the Class of damages, as allowed by law;

G. Orders granting such other and further relief as the Court deems necessary, just, and proper.

H. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making calls, except for emergency purposes, to any residential number listed on the National Do Not Call Registry in the future.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

PLAINTIFF,
By his attorneys,

_/s/ Joseph F. Murray_
Joseph F. Murray (327025)
Brian K. Murphy (*pro hac vice* to be filed)
Jonathan P. Misny (*pro hac vice* to be filed)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
Telephone: 614.488.0400
Facsimile: 614.488.0401
E-mail: murray@mmmb.com
         murphy@mmmb.com
         misny@mmmb.com

Anthony I. Paronich (*pro hac vice* to be filed)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com