**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANDREW PERRONG,<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>FRONTIER UTILITIES NORTHEAST LLC<br>and NEXT GENERATION ENERGY, INC.,<br><br>　　　　　　　Defendants. | Civil Action No. 20-05844-MSG |

**[PROPOSED] ORDER DENYING PLAINTIFF'S MOTION FOR
<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

**AND NOW**, this _____ day of _____, 2021, upon consideration of Plaintiff's

Motion for Preliminary Approval of Class Action Settlement, and any responses thereto, it is

hereby **ORDERED** that the Motion for Preliminary Approval of Class Action Settlement is

**DENIED**.

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　The Honorable Mitchell S. Goldberg
　　　　　　　　　　　　　　　　　　United States District Court Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | |
|---|---|
| ANDREW PERRONG,<br><br>Plaintiff,<br><br>v.<br><br>FRONTIER UTILITIES NORTHEAST LLC<br>and NEXT GENERATION ENERGY, INC.,<br><br>Defendants. | Civil Action No. 20-05844-MSG |

---

### DEFENDANT FRONTIER UTILITIES NORTHEAST LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR <u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>

Michael P. Daly (Pa. Bar No. 86103)
Faegre Drinker Biddle & Reath LLP
One Logan Square, Ste. 2000
Philadelphia, PA 19103-6996
Phone:  215.988.2700
Fax:  215.988.2757
michael.daly@faegredrinker.com

Marsha J. Indych
(motion for *pro hac vice* admission forthcoming)
Faegre Drinker Biddle & Reath LLP
1177 Avenue of the Americas, 41st Floor
New York, New York 10036-2714
Phone:  212.248.3140
Fax:  212.248.3141
marsha.indych@faegredrinker.com

*Counsel for Defendant
Frontier Utilities Northeast LLC*

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION .................................................................................................1

II.   BACKGROUND ..................................................................................................2

    A.   The Negotiation Of The Purported Settlement Agreement ...............................2

    B.   The Discovery Of Mr. Frey's Indictment For Child Pornography ...................4

    C.   The Notice Of Breach Of The Settlement Agreement.......................................7

III.  ARGUMENT ........................................................................................................7

    A.   The Motion Should Be Denied Because There Is No Agreement To
         Approve............................................................................................................7

    B.   Concealing Mr. Frey's Indictment Is Material To Adequacy And
         Typicality .......................................................................................................11

    C.   Plaintiffs' Positions Do Not Withstand Scrutiny ...........................................16

IV.   CONCLUSION...................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

CASES                                                                              Page(s)

*In re Allegheny Int'l, Inc.*,
   954 F.2d 167 (3d Cir. 1992) ......................................................................................7

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ...............................................................................................11

*ATD-Am. Co. v. Krueger Int'l, Inc.*,
   No. 12-0032, 2012 WL 1382472 (E.D. Pa. Apr. 20, 2012) ....................................8

*Beck v. Maximus, Inc.*,
   457 F.3d 291 (3d Cir. 2006) ..................................................................................15

*Bennett v. Itochu Int'l, Inc.*,
   682 F. Supp. 2d 469 (E.D. Pa. 2010) ....................................................................17

*Cooper v. Southeastern Penn. Transp. Auth.*,
   No. 06-888, 2011 WL 3919743 (E.D. Pa. Sept. 6, 2011) .................................7, 16

*Duguid v. Facebook, Inc.*,
   No. 19-511 ...........................................................................................................2, 17

*Dunford v. Am. DataBank, LLC*,
   64 F. Supp. 3d 1378 (N.D. Cal. 2014) .............................................................11, 12

*EBC, Inc. v. Clark Bldg. Sys., Inc.*,
   618 F.3d 253 (3d Cir. 2010) ....................................................................................7

*Friedman-Katz v. Lindt & Sprungli (USA), Inc.*,
   270 F.R.D. 150 (S.D.N.Y. 2010) ..........................................................................14

*Gadelhak v. AT&T Services, Inc.*,
   950 F.3d 458 (7th Cir. 2020) ...................................................................................2

*In re: Google Inc. Cookie Placement Consumer Priv. Litig.*,
   934 F.3d 316 (3d Cir. 2019) ............................................................................13, 14

*Hansberry v. Lee*,
   311 U.S. 32 (1940) .................................................................................................13

*Kline v. Wolf*,
   702 F.2d 400 (2nd Cir. 1983) ................................................................................11

*In re Outlaw Lab'y, LP Litig.*,
   No. 18-0840, 2020 WL 5552558 .............................................................................9

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    827 F.3d at 227 ...................................................................................................13

*Philippine Sugar Estates Dev. Co. v. Gov't of Philippine Islands*,
    247 U.S. 385 (1918)..........................................................................................16

*Pope v. Harvard Banchares, Inc.*,
    240 F.R.D. 383 (N.D. Ill. 2006)........................................................................11

*Porath v. Logitech, Inc.*,
    No. 18-3091, 2019 WL 6134936 (N.D. Cal. Nov. 18, 2019) .................................11

*In re Schering Plough Corp. ERISA Litig.*,
    589 F.3d 585 (3d Cir. 2009)................................................................................15

*U.S. v. Frey*,
    No. 20-0386 (E.D. Pa.) .......................................................................... *passim*

*Virzi v. Grand Trunk Warehouse & Cold Storage Co*,
    571 F. Supp. 507 (E.D. Mich. 1983)..............................................................7, 8, 9

**STATUTES, RULES & REGULATIONS**

Federal Rule of Civil Procedure 23 ....................................................... *passim*

**OTHER AUTHORITIES**

Restatement (Second) of Contracts § 155....................................................16

Restatement (Second) of Contracts § 164......................................................7

## I.      <u>INTRODUCTION</u>

Defendant Frontier Utilities Northeast LLC ("Frontier") finds itself in the unenviable position of having to oppose the approval of a proposed classwide settlement that it spent many months and significant time and resources negotiating.  If that sounds unusual, that's because it is.  But then again, so is the path that has taken us here.

Counsel for Plaintiffs Andrew Perrong and Jon Frey ("Joint Counsel") and counsel for Frontier spent five months negotiating a classwide settlement—including a nearly twelve-hour mediation before an experienced mediator.  That settlement would have resolved two actions— this action filed by Mr. Perrong and a prior one filed by Mr. Frey.  Just days before that settlement was due to be submitted to this Court for preliminary approval, Frontier discovered that Mr. Frey had been arrested and indicted for distributing child pornography.  And as if that weren't bad enough, Frontier became convinced from comparing the dockets in the civil and criminal cases that Joint Counsel had known about the indictment all along.  But rather than disclose that fact, they made several affirmative misstatements that had the intent and effect of inducing Frontier into a purported classwide settlement.  And when Frontier asked Plaintiffs and Joint Counsel to explain their conduct and told them that there was no settlement, they said nothing.  Instead, they filed Plaintiff's Motion for Preliminary Approval of Class Action Settlement [ECF No. 15] whose only mention of the issue is a footnote that vaguely refers to an indictment for an unspecified "crime."

And so, Frontier finds itself forced to oppose this Motion.  Suffice it to say that Frontier would never knowingly enter into any sort of agreement with an accused child pornographer.  Or for that matter with counsel who would foist an accused child pornographer on Frontier as a counterparty or on class members as the would-be protector of their interests.  The facts here are an archetypal example of the sort of fraudulent inducement that renders any agreement voidable.  That should not change just because this settlement would have involved absent class members.

To the contrary, Mr. Frey's Indictment is even more troubling in this context, as his indictment and impending trial make him singularly unqualified to protect the interests of a putative class. That Joint Counsel concealed these facts from Frontier and would have concealed them from the Court should likewise disqualify them from representing the putative class.  Frontier therefore respectfully requests that the Court deny Plaintiffs' Motion for Preliminary Approval.[1]

## II.      BACKGROUND

### A.      The Negotiation of the Purported Settlement Agreement

The purported agreement here was the product of many months of negotiations that began with an unsolicited phone call from Plaintiffs' counsel Anthony Paronich on October 20, 2020. . A, Decl. of Michael P. Daly ("Daly Decl.") ¶ 6. Plaintiffs' counsel claimed during that call that their newfound interest in settlement stemmed from the nomination of Justice Amy Coney Barrett—who had authored the Seventh Circuit's opinion in *Gadelhak v. AT&T Services, Inc.*, 950 F.3d 458 (7th Cir. 2020), which had narrowly interpreted the Telephone Consumer Protection Act's, 47 U.S.C. § 227, et seq. ("TCPA") definition of an "automatic telephone dialing system"— to the Supreme Court.  Specifically, he claimed that Plaintiffs were now concerned that the Supreme Court would adopt a similarly narrow reading of the statute in *Duguid v. Facebook, Inc.*, No. 19-511 ("*Facebook*"), which had just been set for oral argument.  *Id* at. ¶ 8.  The parties conducted a second phone call to discuss settlement on October 28, 2020.  *Id.* at ¶ 9.

Joint Counsel eventually sent a settlement demand to Frontier on November 2, 2020, Frontier responded on January 22, 2021, and Joint Counsel replied with what was billed as an "authorized" counteroffer on January 24, 2021.  *See* Ex. A, Daly Decl. ¶¶ 11–13; *see also*

---

[1]      Frontier is also filing a contemporaneous Motion for Sanctions against Joint Counsel. Counsel's fraudulent inducement of the purported settlement agreement demonstrates bad faith and a lack of candor that is problematic under any circumstance but is especially inappropriate in the context where counsel seeks to be appointed to represent the interests of the putative class.

Ex. C, Letter from Joint Counsel to Frontier (Nov. 2, 2020); Ex. D, Email from A. Paronich to M. Daly, *et al*. (Jan. 24, 2021).

On January 24, 2021, Joint Counsel told Frontier the parties should mediate the Frey and Perrong Actions. *See* Ex. A, Daly Decl. ¶ 13. On January 28, 2020, the parties agreed to retain the Honorable Morton Denlow (Ret.) of JAMS to mediate the dispute. *Id.* Due to the pandemic, the mediation would be conducted via videoconference. During a pre-mediation call with Judge Denlow on February 3, 2021, however, Joint Counsel stated that Mr. Frey could only participate by telephone because he had to work that day. *See* Ex. A, Daly Decl. ¶ 15; Ex. E, Notice of Breach Letter ("Notice") at 2. Counsel also represented during that call that both Mr. Perrong and Mr. Frey were able to adequately represent the interests of a class. *See* Ex. A, Daly Decl. ¶ 16; Ex. E, Notice at 2.

The mediation went forward on February 16, 2021. *See* Ex. A, Daly Decl. ¶ 20. Joint Counsel and Mr. Perrong participated via videoconference and Mr. Frey participated by phone, supposedly from work. When asked by Judge Denlow whether there would be any impediments to a classwide settlement, they stated that they were not aware of any. *See* Ex. A, Daly Decl. ¶ 22; Ex. E, Notice at 2. This echoed the pre-mediation "Class Action Checklist" they had submitted to Judge Denlow and Frontier, which listed the obstacles to settlement as: "[f]ocusing the settlement on a non-reversionary fund and ensuring that there are proper protections against Fraud for publication claimants will be important to avoid objections." Ex. F, Pls.' Class Action Checklist at 7.

Although the mediation lasted nearly twelve hours, it did not result in a formal agreement. *See* Ex. A, Daly Decl. ¶ 20. After several weeks of discussions and drafting, Joint Counsel sent Frontier a copy of an agreement that purported to be signed by both Mr. Perrong and Mr. Frey.

*See* ECF No. 15-1 (Purported Class Action Settlement Agreement at 28).  Frontier countersigned

that document on March 9, 2021.  *See id.* Between March 10, 2021 and March 27, 2021, the parties

negotiated the form of a preliminary approval motion.  That motion was not filed by Plaintiffs.

**B.**     **The Discovery of Mr. Frey's Indictment for Child Pornography**

On March 27—a few days before the settlement was agreed to be filed with the Court for

approval—Frontier learned that a grand jury in the Eastern District of Pennsylvania had indicted

Mr. Frey for distributing child pornography.  *See* Ex. B, *U.S. v. Frey*, No. 20-0386 (E.D. Pa.)

("*Frey* Criminal Action"), ECF No. 14 (Indictment); *see also* Ex. A, Daly Decl. ¶ 28; Ex. E, Notice

at 2.  A review of the docket in the *Frey* Criminal Action revealed three disturbing things.

First, the charges against Mr. Frey are so shocking that any reasonable person would want

to have known about them before deciding whether to associate with him, much less enter into an

agreement with him or have him represent their interests.  Specifically, he has been accused of

"viewing and sharing child pornography" and "boast[ing] in an online chat room that he sexually

assaulted his minor daughter."  *Frey* Criminal Action, ECF No. 5 (Def.'s Mot. for Pretrial Release

at 1).  The government alleges that he shared hundreds of images and videos of child pornography,

including an "explicit video" of a "prepubescent girl, who appeared approximately 5–8 years in

age, performing oral sex on a male."  *Frey* Criminal Action, ECF No. 8 (Gov't Mot. for Pretrial

Detention at 1).  The government further alleges that, during an August 2020 search of Mr. Frey's

home, he "confessed to agents" that he had "used mobile applications . . . to engage in chats with

other users about the sexual exploitation of children" and to "view[] images of young children."

*Id.* at 3.  FBI agents claim they found evidence of "numerous chats with other individuals about

sexually abusing young children":

> For example . . . [Frey] messaged [another individual] stating '. . .
> I'm strongly sexually attracted to girls 5–13.' On that same day, he
> told [another individual], 'I've read that 7/8 is the recommended age

for first intercourse possible in a medical journal . . . When I was in
college I would spend hours in the library reading about sexual
deviants and incest, child molestation . . . I'm obsessed.'

*Id.* at 3.  FBI agents also claim that Mr. Frey stated in another exchange that "I've been a pedophile

for as long I can remember . . . [REDACTED]."  *Id.*  And when another user asked Mr. Frey if "he

has had sex with other kids," he allegedly responded "2." *Id.*

Second, the sequence of events makes it all but certain that Joint Counsel was aware of this

when they negotiated the settlement.  Indeed, the arrest occurred on October 20, 2020—i.e., the

same day his counsel placed their unsolicited telephone call to broach the possibility of settlement.

And in what is almost certainly not a coincidence, Mr. Perrong made his own unsolicited offer that

same day to settle a separate claim against Frontier that he had asserted in a proceeding that he had

filed on his own behalf with the Pennsylvania Public Utility Commission ("PUC Proceeding").

*See* Ex. G, Email from A. Perrong to D. O'Dell (Oct. 20, 2020).   Despite rejecting previous

settlement overtures and stating that "that ship has sailed," he changed course on October 20th and

claimed that time was "of the extreme essence."  *See id*; Ex. H, Email from A. Perrong to D. O'Dell

(Oct. 2, 2020) ("Please don't contact me about attempting to settle this again, that ship has sailed.

I look forward to the hearing.").

Moreover, when Joint Counsel made the initial settlement demand on November 2, 2020,

and the "authorized" counteroffer on January 24, 2021, Mr. Frey was still in federal custody.  *See*

*supra*.  It was not until January 26th—two days later—that he was released.  *See Frey* Criminal

Action, ECF No. 29 (Def.'s Mot. for Continuance at 1) (stating that Mr. Frey was released on bail

on January 26, 2021).[2]  And when Joint Counsel provided a final draft of an agreement that was

---

[2]      Notably, at the same time, Mr. Frey's criminal counsel sought a continuance of trial due to
counsel's inability to visit with him while he was in custody.  *Frey Criminal Action,* ECF No. 29
(Def.'s Mot. for Continuance at 2, ¶ 3).

purportedly executed by Mr. Frey, Mr. Frey was still under house arrest and barred from computer and internet access.  *See Frey* Criminal Action, ECF No. 26 (Order Granting Def.'s Mot. for Release from Custody ¶ 10); ECF No. 8 (Gov't Mot. for Pretrial Detention at 10–11).

Third, Plaintiffs and Joint Counsel concealed the fact of Mr. Frey's ongoing criminal charges by making material misstatements.  For example, although they represented that Mr. Frey had to attend the mediation by telephone because he was at work, *see supra*, in reality he was under house arrest and was prohibited from using computers and other internet-enabled devices (except for telemedicine appointments).  *Frey* Criminal Action, ECF No. 26 (Order Granting Def.'s Mot. for Release from Custody ¶ 10); ECF No. 8 (Gov't Mot. for Pretrial Detention at 10–11) ("If this Court were to order that computer monitoring software be installed on the defendant's computer, there would be no way to detect if the defendant—who is clearly technologically savvy—were to subvert the computer monitoring software. . . .").  And when asked by Judge Denlow whether there were any impediments to a classwide settlement with Mr. Frey serving as a class representative, Plaintiffs and Joint Counsel made no mention of the Indictment or his upcoming criminal trial.  *See supra.* Likewise, in the Class Action Checklist that Plaintiffs submitted to Judge Denlow and Frontier, Plaintiffs listed the only impediments to settlement as: "[f]ocusing the settlement on a non-reversionary fund and ensuring that there are proper protections against Fraud for publication claimants will be important to avoid objections."  Ex. F, Pls.' Class Action Checklist at 7.  Though Plaintiffs and Joint Counsel knew about the indictment and trial, they omitted any reference to it in this pre-mediation written submission.

C.      **The Notice of Breach of the Settlement Agreement**

After learning of Mr. Frey's Indictment, Frontier sent Joint Counsel a letter that put Plaintiffs on notice of their material breach of the purported agreement.  Ex. E, Notice.  The Notice informed them and Joint Counsel that Frontier was exercising its right to terminate the agreement:

> Frontier would not have entered into the Settlement Agreement had it known of Mr. Frey's Indictment and his reprehensible alleged conduct as set forth in the pleadings filed by the federal government. At no time did Plaintiffs' counsel advise Frontier of Mr. Frey's Indictment; meaning, Frontier was intentionally lied to and misled over the course of *five months* of the settlement discussions, mediation, and negotiation of the Settlement Agreement resulting in thousands of dollars of wasted attorney's fees and expenses including more than $10,000 paid to JAMS for mediation. Moreover, whether Mr. Frey reviewed or executed the Settlement Agreement at all has now been drawn into question. This material breach prevents the Court from approving the Settlement Agreement, and thus it provides Frontier the right to terminate the Settlement Agreement pursuant to Section 8.1.

*Id.* at 1–2.

At no point since receiving the Notice have Mr. Perrong or Joint Counsel denied knowing about Mr. Frey's being investigated, arrested, and indicted for child pornography.  Indeed, rather than respond to the Notice, they filed the Motion for Preliminary Approval over Frontier's objection, adding only a footnote with a reference to a "criminal charge."  Frontier now opposes that Motion.

## III.      ARGUMENT

A.      **The Motion Should Be Denied Because There is No Agreement to Approve**

The Court should deny Plaintiff's Motion for Preliminary Approval because the purported agreement was induced through fraud.

It is well-settled that agreements are voidable if they result from fraudulent inducement. *See, e.g., In re Allegheny Int'l, Inc.*, 954 F.2d 167, 177–78 (3d Cir. 1992); Restatement (Second)

of Contracts § 164(1) ("If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient."). The traditional elements of a fraudulent inducement are: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 275–76 (3d Cir. 2010).

The rule that an agreement can be voided if it is induced by fraud applies with equal force to settlement agreements. *See, e.g.*, *Virzi v. Grand Trunk Warehouse & Cold Storage Co,* 571 F. Supp. 507 (E.D. Mich. 1983) (voiding individual settlement agreement); *Cooper*, 2011 WL 3919743, at *6 (denying plaintiffs' motion to enforce class action settlement agreement). In *Virzi*, for example, the court set aside a settlement agreement because the plaintiff's attorney failed to disclose the death of his client. 571 F. Supp. at 507. Plaintiff's counsel argued that nothing in the mediation statement was misleading. *Id.* The court disagreed, reasoning that, although the attorney did not state that his client was alive, he "chose not to disclose plaintiff's death, as he was well aware that defendant believed that plaintiff would make an excellent witness on his own behalf if the case were to proceed to trial by jury." *Id.* at 511. The court found that the failure to disclose the plaintiff's death was a material misrepresentation, as the loss of his testimony "would have had a significant bearing on defendants' willingness to settle." *Id.*

Here, Plaintiffs and Joint Counsel made material misrepresentations and omissions to hide the fact that Mr. Frey had been indicted and was being detained on child pornography charges. ***The same day*** Mr. Frey was arrested, his counsel contacted counsel for Frontier out of the blue,

stating that he was interested in settling allegedly because Justice Barrett's nomination to the Supreme Court did not bode well for the *Frey* Action.  *See* Ex. A, Daly Decl. ¶¶ 6–8.  Despite knowing the truth, Joint Counsel ***never disclosed*** that Mr. Frey was actually being held in federal detention while the parties were discussing settlement.  Joint Counsel then sent not one but two settlement communications to Frontier purportedly on behalf of Mr. Frey while he was being held in a federal detention center, notwithstanding that Mr. Frey's own criminal counsel had trouble accessing him during that time.  *See* Ex. A, Daly Decl. ¶¶ 11, 13; Ex. C, Letter from Joint Counsel to Frontier (Nov. 2, 2020); Ex. D, Email from A. Paronich to M. Daly, *et al*. (Jan. 24, 2021); *Frey* Criminal Action, ECF No. 29 (Def.'s Mot. for Continuance at 1).

These statements and omissions were "calculated to deceive" Frontier into an agreement with Mr. Frey.  *See ATD-Am. Co. v. Krueger Int'l, Inc.*, No. 12-0032, 2012 WL 1382472, at *8 (E.D. Pa. Apr. 20, 2012) (stating that fraudulent inducement can consist of "anything calculated to deceive, whether . . . it be direct falsehood or by innuendo, by speech or silence"); *see also In re Outlaw Lab'y, LP Litig.,* No. 18-0840, 2020 WL 5552558, at *18 ("A duty to disclose may also arise in the so-called 'half truth' context—that is, when a speaker makes a representation which, though not false, he knows will be misleading absent full disclosure of additional facts known to him which qualify the initial representation.").

Even more damning were the misrepresentations made throughout the mediation process. Joint Counsel represented that Mr. Frey could not attend the mediation by videoconference because he had to work.  In reality, however, Mr. Frey could not participate by videoconference because the terms of his pretrial release prohibit him from using internet-enabled devices while he is under house arrest.  *Frey* Criminal Action, ECF No. 26 (Order Granting Def.'s Mot. for Release from Custody ¶ 10); ECF No. 8 (Gov't Mot. for Pretrial Detention at 10–11).  And when the

mediator, Judge Denlow, inquired about any potential impediments to a classwide settlement, Joint Counsel and both Plaintiffs remained silent about the Indictment and upcoming criminal trial. Ex. A, Daly Decl. ¶ 22; Ex. E, Notice at 2. Likewise, in their pre-mediation Class Actions Checklist, Plaintiffs listed the only impediments to settlement as: "[f]ocusing the settlement on a non-reversionary fund and ensuring that there are proper protections against Fraud for publication claimants will be important to avoid objections."   Ex. F, Pls.' Class Action Checklist.   Joint Counsel and Plaintiffs withheld this information because they knew that it "would have had a significant bearing on defendants' willingness to settle." *Virzi,* 571 F. Supp. at 511.

The misrepresentations continued after the mediation.  Given that Mr. Frey was prohibited from using the computer, Frontier questions whether he was even able to review the terms of the settlement agreement he allegedly executed on March 9.  *See* ECF No. 15-1 (Proposed Class Action Settlement Agreement at 28); *Frey* Criminal Action, ECF No. 26 (Order Granting Def.'s Mot. for Release from Custody ¶ 10); ECF No. 8 (Gov't Mot. for Pretrial Detention at 10–11).  It also appears that Plaintiffs and their counsel would have kept silent about Mr. Frey's indictment if not for Frontier's discovering the truth.  Indeed, their draft of the Motion for Preliminary Approval said nothing at all about Mr. Frey's Indictment.  *See* Ex. A, Daly Decl. ¶ 27.  And even after Frontier confronted them, the most they could bring themselves to do was to add a footnote about an unspecified "criminal charge."  *See* ECF No. 15 (Pl.'s Mot. for Preliminary Approval at 2 n.2).  In short, Plaintiffs and Joint Counsel had no intention of making this Court aware of the fact that one of the two proposed class representatives is an indicted child pornographer.

These misrepresentations and omissions continued over the course of five months and induced the purported agreement.  Frontier would never have entered a settlement that allowed

Mr. Frey to represent the interests of a settlement class if Frontier had known about his arrest, Indictment, upcoming trial, and potential years-long incarceration.

**B.     Concealing Mr. Frey's Indictment is Material To Adequacy and Typicality**

Although an indictment for such conduct would be material in almost any circumstance, Mr. Frey's indictment is especially relevant in this case because his adequacy and typicality as a proposed class representative are central to the viability of any purported classwide settlement. While his felony indictment raises an insurmountable barrier to his adequacy in and of itself, the attempts by Plaintiffs and Joint Counsel to conceal this barrier from Frontier likewise disqualifies them from representing a class.

**1.     A Proposed Class Representative Who Lacks Credibility is Not Adequate**

"Under Rule 23(a)(4), '[a]dequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members.'" *Id.* "To assure vigorous prosecution, courts consider whether the class representative has adequate incentive to pursue the class's claim, and whether some difference between the class representative and some class members might undermine that incentive." *Id.* (citation omitted). To avoid antagonistic interests, any fundamental conflict "must be addressed with a 'structural assurance of fair and adequate representation for the diverse groups and individuals' among the plaintiffs." *Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 627 (1997)).

A putative class representative's personal characteristics, such as credibility and integrity, have direct bearing on his or her ability to adequately represent absent members of class. *E.g.*, *Kline v. Wolf*, 702 F.2d 400, 403 (2nd Cir. 1983) (finding that would-be class representative's

admitted false statements left their credibility open to serious attack).  Mr. Frey's indictment on felony child pornography charges and his attempts to conceal it destroy his credibility.

Numerous courts have concluded that named plaintiffs with credibility issues arising from criminal charges cannot adequately represent a class.  *See, e.g.*, *Dunford v. Am. DataBank, LLC*, 64 F. Supp. 3d 1378 (N.D. Cal. 2014) (finding proposed class representative inadequate due to felony first-degree burglary, vandalism, aggravated trespass charges); *Porath v. Logitech, Inc.*, No. 18-3091, 2019 WL 6134936, at *4 (N.D. Cal. Nov. 18, 2019) (finding plaintiff with three felony convictions and a misdemeanor of willful cruelty to a child not adequate); *Pope v. Harvard Banchares, Inc.*, 240 F.R.D. 383, 390 (N.D. Ill. 2006) (finding proposed representative inadequate where person with "significant influence" on her decision-making filed false tax returns).

Putting aside for the moment the especially heinous nature of the pending charges against Mr. Frey, his attempt to conceal those charges from Frontier in and of itself destroys his credibility and, by extension, his adequacy as a class representative.  For those same reasons, to the extent Mr. Perrong knew about and was complicit in concealing the Indictment (and neither he nor Joint Counsel have stated that he did not) that would call into question his credibility and adequacy as well.  And to be clear, the same day that Mr. Frey was arrested, Mr. Perrong abruptly changed course from his assertion just three weeks prior that the settlement "ship ha[d] sailed" to making his own unsolicited settlement offer claiming that time was "of the extreme essence."  Ex. H, Email from A. Perrong to D. O'Dell (Oct. 2, 2020) (emphasis added); Ex. G, Email from A. Perrong to D. O'Dell (Oct. 20, 2020).

### 2.    Mr. Frey Could Not Exercise Fiduciary Duties to Absent Class Members

Even if Mr. Frey's credibility had not been irreparably damaged, he still would not be able to exercise his fiduciary duty to a settlement class given that the conditions of his pretrial release limit his computer and internet access.  *Frey* Criminal Action, ECF No. 26 (Order Granting Def.'s

Mot. for Release from Custody ¶10(a)–(c)) (listing restrictions on Mr. Frey's computer, internet, and telephone use as conditions of pre-trial release).   Indeed, given his pre-trial detention and subsequent bail restrictions, it is not clear that he was even able to meaningfully participate in negotiations or review the proposed settlement agreement.  *See id; Frey* Criminal Action at ECF No. 29 (Def.'s Mot. for Continuance at 2, ¶ 3) (motion by Mr. Frey's criminal counsel for continuance of trial due to counsel's inability to "visit with the defendant while he was in custody").

Even putting aside his pretrial release conditions, the distractions of his ongoing criminal proceedings and upcoming criminal trial make it all but impossible for him to diligently represent a class.  *See Dunford*, 64 F. Supp. 3d 1397 (finding proposed class representative "ha[d] shown herself to be too distracted by her own criminal defense and alcohol-related issues to be able to vigorously represent the best interests of absent class members.").  This is particularly so because, in the event Mr. Frey violates his pretrial release conditions and is remanded to federal detention, s*ee Frey* Criminal Action, ECF No. 26 (Order Granting Def.'s Mot. for Release from Custody ¶10(a)–(c)) (listing pretrial conditions), or is convicted and incarcerated, he will be even less able to represent the interests of absent class members.

### 3.      Mr. Frey's Inadequacy as a Class Representative affects Frontier's Rights

Not only is adequate representation required for the sake of class members' rights, it was material to Frontier's willingness to enter into the proposed settlement agreement.  If class members are not adequately represented, any settlement agreement as well as a negotiated release is void.  *See Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940) ("It is familiar doctrine of the federal courts that members of a class not present as parties to the litigation may be bound by the judgment where they are in fact adequately represented by parties who are present" consistent with "the requirements of due process and full faith and credit."); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d at 227 ("[W]here class plaintiffs have not adequately represented the interests of class members," any "[c]laims arising from a shared set of facts will not be precluded.") (citation omitted).  Here, Mr. Frey's inability to represent the class materially impacts any class settlement and releases Frontier would obtain.

### 4.      Joint Counsel's Misrepresentations and Omissions Make Them Inadequate

The purported settlement should also be rejected because the intentionally misleading conduct of counsel seriously calls into question their ability to adequately represent the interests of absent class members here (or anywhere for that matter).

Federal Rule of Civil Procedure 23(g)(4) requires courts to assess the adequacy of proposed class counsel so as to guard the interests of absent class members.  As the Third Circuit has made clear, district courts' usual fiduciary obligations to absent class members are heightened when reviewing proposed class settlements that precede class certification.  *In re: Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 326 (3d Cir. 2019).  The reasoning for this is because "[i]n settlement negotiations, the interests of class representatives or class counsel do not always align with the interests of absent class members, and prior to certification class members

14

may not know their claims are in litigation or that settlement negotiations are taking place." *Id.*

As such, courts must "scrupulous[ly]" review settlements "to ensure that class counsel has

demonstrated sustained advocacy throughout the course of the proceedings and has protected the

interests of all class members." *Id.* (internal quotation and citation omitted).  Counsel, like Joint

Counsel, that conceal material facts or who are complicit in making misrepresentations are in

adequate.  *Friedman-Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150, 160 (S.D.N.Y. 2010)

(finding putative class counsel was inadequate because they "were complicit in the

misrepresentations made by the Plaintiff during her deposition and in response to her

interrogatories.  At the least, her attorneys allowed false testimony to be given; while at the worst,

the testimony was actually encouraged and counseled.").

As discussed above and in Frontier's Motion for Sanctions, Joint Counsel knew full well

what they were doing when they hid the fact of Mr. Frey's indictment for child pornography and

made affirmative misrepresentations and omissions about Mr. Frey to Frontier and Judge Denlow.

This alone should be disqualifying.  But it gets worse, because not only did Joint Counsel try to

defraud Frontier, they also tried to defraud their own putative clients by foisting an inadequate and

atypical representative on them.  This should not be countenanced.

> **5.** **Frontier's Unique Defenses to Mr. Frey's Claims Make Him Atypical**

Not only do Mr. Frey's ongoing criminal proceedings make him inadequate, they also

provide Frontier with unique defenses to his claims that are inapplicable to other class members.

As a proposed class representative, Mr. Frey's lack of typicality was material to Frontier's decision

to enter into the purported class settlement.

It is well-established that "[a] proposed class representative is neither typical nor adequate

if the representative is subject to a unique defense that is likely to become a major focus of the

litigation." *Beck v. Maximus, Inc.*, 457 F.3d 291, 301 (3d Cir. 2006).  As the Third Circuit has repeatedly explained, "'the challenge presented by a defense unique to a class representative' is that 'the representative's interests might not be aligned with those of the class, and the representative might devote time and effort to the defense at the expense of issues that are common and controlling for the class.'"  *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 598 (3d Cir. 2009) (quoting *Beck*, 457 F.3d at 297).

Here, there is no question that Mr. Frey's ongoing criminal issues would be a major focus of Frontier's defenses.  If Mr. Frey is convicted or pleads guilty to the charges levied against him, few juries would find him credible.  This is particularly significant here because Frontier has repeatedly argued that Mr. Frey potentially used his computer and telecommunications expertise to manufacture his claim.  *See, e.g.*, *Frey* Action, ECF No. 37 (Frontier's Mot. to Dismiss Second Am. Compl. at 2); ECF No. 94 (Frontier's Opp'n. to Pl's Mot. to Stay at 3).  That the government has likewise expressed concerns about Mr. Frey's ability to leverage his technical skills to engage in duplicity only strengthens Frontier's unique defenses as to Mr. Frey.  *See Frey* Criminal Action, ECF No. 8 (Gov't Mot. for Pretrial Detention at 10–11) ("If this Court were to order that computer monitoring software be installed on the defendant's computer, there would be no way to detect if the defendant—who is clearly technologically savvy—were to subvert the computer monitoring software. . . .").  Those defenses would become a focus of the litigation and thereby subordinate the interests of a class.

## C.     <u>Plaintiffs' Positions Do Not Withstand Scrutiny</u>

Plaintiffs appear to believe that the Court can cure their misrepresentations by pretending that Mr. Frey was never a party to the purported agreement—that is, by reforming the agreement by proceeding with one class representative rather than two.  *See, e.g.*, ECF No. 15 (Pl.'s Mot. for Preliminary Approval at 2 n.2) ("However, Mr. Frey is not requesting appointment as a class

representative at this time.  . . .  he believes allowing Mr. Perrong to proceed as the sole representative of the class is the most prudent course to maximize the chance of recovery through this settlement for the class.").  They are mistaken.  Reformation is a limited remedy that is only available to correct a contract if, "owing to mutual mistake, the language used therein did not fully or accurately express the agreement and intention of the parties."  *Philippine Sugar Estates Dev. Co. v. Gov't of Philippine Islands*, 247 U.S. 385, 389 (1918); *see also, e.g.*, Restatement (Second) of Contracts § 155.  But here there was no mutual mistake.  To the contrary, Plaintiffs and Joint Counsel were fully aware of Mr. Frey's indictment and fully intended to mislead Frontier, absent class members, and the Court about this material fact.  They cannot simply ask this Court to excise Mr. Frey from the document now that Frontier has discovered their intentional misrepresentations.

Plaintiffs also (rather amazingly) take Frontier to task for not using its "best efforts" to seek approval of the purported agreement.  ECF No. 17 (Pl.'s Opp'n to Mot. to Strike at 5–6) (citing Settlement Agreement §§ 7.1.1, 9.5).  But that misses the point, which is that there is simply no agreement to approve.[3]  Frontier was working diligently toward preliminary approval until the moment it discovered that the agreement had been induced through fraud.  Plaintiffs do not and could not suggest otherwise.  Plaintiffs are also wrong to claim that Frontier "authorized the filing of the proposed order when it executed the Settlement Agreement."  ECF No. 17 (Pl.'s Opp'n to Mot. to Strike at 6).  Even if we pretend that there were still an agreement here, the proposed order that Plaintiffs have asked the Court to enter (which does not refer to Mr. Frey) is not the one

---

[3]       In fact, this makes Plaintiffs' Motion procedurally improvident, as the plain language of Rule 23(e) anticipates that there is a settlement that both sides agree should be approved.  When, as here, one party believes there is an agreement and another party does not, the proper procedure is to file a motion to enforce the supposed agreement.  *See Cooper v. Southeastern Penn. Transp. Auth.*, No. 06-888, 2011 WL 3919743, at *6 (E.D. Pa. Sept. 6, 2011) (E.D. P.A. Sept. 6, 2011) (considering and denying plaintiffs' motion to enforce class settlement agreement because there was no "meeting of the minds on a material term").

Frontier once approved (which of course did).  That Plaintiffs also filed an "alternate" proposed order in case Frontier "believe[s] it is necessary for Mr. Frey to serve as a class representative to preserve the settlement" is of no help to them.  ECF No. 15, Pl.'s Mot. for Preliminary Approval at 2 n.2.  On March 29, 2021, the Notice served by Frontier made it abundantly clear that there was no settlement and Frontier would not be party to an agreement with Mr. Frey, much less one in which he purported to represent putative class members.[4]  Ex. E, Notice.

Finally, Plaintiffs cynically suggest that their conduct can be excused because Mr. Frey's arrest eventually made its way onto a different federal docket, the implication being that civil litigants are under an affirmative obligation to continually investigate their opponents for potential criminal records.  ECF No. 17 (Pl.'s Opp'n to Def.'s Mot. to Strike at 3).  But that is wrong as a matter of law, as a recipient of a fraudulent misrepresentation "is under no duty to investigate its falsity in order to justifiably rely."  *Bennett v. Itochu Int'l, Inc.*, 682 F. Supp. 2d 469, 479 (E.D. Pa. 2010).  It is also wrong as a matter of fact, as Mr. Frey's arrest was not knowable when his counsel called a few hours later to broach the idea of a settlement.  In any event, invoking a "duty to investigate" is a curious position for counsel who purport to represent the interests of consumers.

## IV.   CONCLUSION

Frontier recognizes that Mr. Frey has yet to be convicted of a crime, and that he—like any defendant—is entitled to his day in court.  What matters for present purposes is not whether he is eventually found guilty, but rather whether his pending charges and forthcoming trial were material to whether he could adequately represent the interests of the putative class here.  Because

---

[4]      To the extent that Plaintiffs and Joint Counsel try to deflect attention from their conduct by implying that Frontier is simply trying to get out of the alleged deal now that the *Facebook* decision has been released, the timeline here confirms that any such narrative would be utterly meritless. Frontier served the Notice on March 29, 2021 and the *Facebook* decision was released days later on April 1, 2021, meaning that the as-yet-to be released decision had no role in this dispute.

they were material to that question, and because they were actively concealed from Frontier, the

purported agreement should be voided and the Motion for Preliminary Approval should be denied.

Dated:  April 16, 2021                              Respectfully submitted,

                                                    */s Michael P. Daly*
                                                    Michael P. Daly (Pa. Bar No. 86103)
                                                    Faegre Drinker Biddle & Reath LLP
                                                    One Logan Square, Ste. 2000
                                                    Philadelphia, PA 19103-6996
                                                    Phone:  215.988.2700
                                                    Fax:  215.988.2757
                                                    michael.daly@faegredrinker.com

                                                    Marsha J. Indych
                                                    (Motion for *pro hac vice* admission forthcoming)
                                                    Faegre Drinker Biddle & Reath LLP
                                                    1177 Avenue of the Americas, 41st Floor
                                                    New York, New York 10036-2714
                                                    Phone:  212.248.3140
                                                    Fax:  212.248.3141
                                                    marsha.indych@faegredrinker.com

                                                    *Counsel for Defendant*
                                                    *Frontier Utilities Northeast LLC*

## <u>CERTIFICATE OF SERVICE</u>

   I certify that, on the date set forth below, I served the foregoing document on all counsel of record who have entered an appearance via the Court's CM/ECF system.

Dated: April 16, 2021      By:   *<u>/s/  Michael P. Daly</u>*
              Michael P. Daly