**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANDREW PERRONG,<br><br>            Plaintiff,<br><br>      v.<br><br>FRONTIER UTILITIES NORTHEAST LLC<br>and NEXT GENERATION ENERGY, INC.,<br><br>          Defendants. | Civil Action No. 20-05844-MSG |

**[PROPOSED] ORDER GRANTING MOTION FOR SANCTIONS**

**AND NOW**, this _____ day of _____, 2021, upon consideration of Defendant Frontier Utilities Northeast LLC's ("Frontier") Motion for Sanctions, and any responses thereto, it is hereby **ORDERED** that the Motion is **GRANTED**. It is further **ORDERED** that within twenty-one (21) days of the date of this Order, Frontier shall submit a fee application supporting its request for attorneys' fees and costs. It is further **ORDERED** that the Class Action Complaint is dismissed with prejudice.

_____
The Honorable Mitchell S. Goldberg
United States District Court Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANDREW PERRONG, <br><br> Plaintiff, <br><br> v. <br><br> FRONTIER UTILITIES NORTHEAST LLC and NEXT GENERATION ENERGY, INC., <br><br> Defendants. | Civil Action No. 20-05844-MSG |

**DEFENDANT FRONTIER UTILITIES**
**NORTHEAST LLC'S MOTION FOR SANCTIONS**

Defendant Frontier Utilities Northeast LLC ("Frontier") respectfully moves this Court to issue an order, pursuant to this Court's inherent authority, sanctioning counsel for Plaintiffs Andrew Perrong and Jon Frey ("Joint Counsel") in the amount of Frontier's reasonable and necessary attorneys' fees and costs incurred as a result of Joint Counsel's bad faith conduct, as well as any other relief that this Court deems just and proper. In support of its Motion, Frontier incorporates the accompanying Memorandum of Law.

Dated: April 17, 2021                    Respectfully submitted,

                              */s Michael P. Daly*
                              Michael P. Daly (Pa. Bar No. 86103)
                              Faegre Drinker Biddle & Reath LLP
                              One Logan Square, Ste. 2000
                              Philadelphia, PA 19103-6996
                              Phone: 215.988.2700
                              Fax: 215.988.2757
                              michael.daly@faegredrinker.com

Marsha J. Indych
(Motion for *pro hac vice* admission forthcoming)
Faegre Drinker Biddle & Reath LLP
1177 Avenue of the Americas, 41st Floor
New York, New York 10036-2714
Phone:  212.248.3140
Fax:  212.248.3141
marsha.indych@faegredrinker.com

*Counsel for Defendant*
*Frontier Utilities Northeast LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANDREW PERRONG,<br><br>    Plaintiff,<br><br>   v.<br><br>FRONTIER UTILITIES NORTHEAST LLC<br>and NEXT GENERATION ENERGY, INC.,<br><br>    Defendants. | Civil Action No. 20-05844-MSG |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT FRONTIER UTILITIES**
**NORTHEAST LLC'S MOTION FOR SANCTIONS**

Michael P. Daly (Pa. Bar No. 86103)
Faegre Drinker Biddle & Reath LLP
One Logan Square, Ste. 2000
Philadelphia, PA 19103-6996
Phone:  215.988.2700
Fax:  215.988.2757
michael.daly@faegredrinker.com

Marsha J. Indych
(motion for *pro hac vice* admission forthcoming)
Faegre Drinker Biddle & Reath LLP
1177 Avenue of the Americas, 41st Floor
New York, New York 10036-2714
Phone:  212.248.3140
Fax:  212.248.3141
marsha.indych@faegredrinker.com

*Counsel for Defendant*
*Frontier Utilities Northeast LLC*

# TABLE OF CONTENTS

**Page**

I.      FACTUAL BACKGROUND ...........................................................................3

II.     LEGAL STANDARD ...................................................................................8

III.    ARGUMENT ..............................................................................................9

        A.      Joint Counsel's Conduct Demonstrates Bad Faith and Lack of Candor ...............9

                i.      *Joint Counsel's misrepresentations were intended to fraudulently induce Frontier into settling and are evidence of their bad faith conduct and lack of candor.* .................................10

                ii.     *Joint Counsel acted in bad faith and demonstrated a lack of candor through their court filings.* ........................................15

        B.      Sanctions under the Court's Inherent Authority are Warranted Here .................17

        C.      Payment of Frontier's Reasonable Attorneys' Fees and Costs is a Proper Sanction ...................................................................................18

        D.      The Perrong Action Should be Dismissed because Joint Counsel and Mr. Perrong have Shown they Cannot Adequately Represent the Interests of the Putative Class ................................................................19

IV.     CONCLUSION .........................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aetna, Inc. v. Whatley Kallas, LLP*,
No. 18-2172, 2019 WL 1437916 (E.D. Pa. Mar. 29, 2019) ................................................20

*In re Allegheny Int'l, Inc.*,
954 F.2d 167 (3d Cir. 1992) ...............................................................................................16

*Antoniak v. Armstrong*,
No. 18-1263, 2020 WL 2539194 (E.D. Pa. May 19, 2020), *reconsideration denied*, No. 18-1263, 2020 WL 4436737 (E.D. Pa. Aug. 3, 2020)....................................9, 18

*ATD-Am. Co. v. Krueger Int'l, Inc.*,
No. 12-0032, 2012 WL 1382472 (E.D. Pa. Apr. 20, 2012).................................................10

*In re Bavelis*,
743 F. App'x 670 (6th Cir. 2018) ........................................................................................14

*Bennett v. Itochu Int'l, Inc.*,
682 F. Supp. 2d 469 (E.D. Pa. 2010)...................................................................................14

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) ...............................................................................................................9

*Deming-Archambault v. Lennox Int'l*,
No. 17-1652, 2018 WL 1899033 (W.D. Pa. Apr. 20, 2018) ............................................9, 18

*Derzack v. County of Alleghany, Pa.*,
173 F.R.D. 400 (W.D. Pa. 1996)..........................................................................................17

*Dunford v. American DataBank, LLC*,
464 F. Supp. 3d 1378 (N.D. Cal. 2014)................................................................................12

*EBC, Inc. v. Clark Bldg. Sys., Inc.*,
618 F.3d 253 (3d Cir. 2010) ...............................................................................................10

*Frey v. Frontier Utilities Northeast LLC, et al.*,
Case No. 2:19-2372-JSM (E.D. Pa. May 31, 2019), ECF No. 1 ....................................*passim*

*Gavurnik v. Vantage Labs, LLC*,
No. 19-5537-KSM, 2020 WL 6381383 (E.D. Pa. Oct. 30, 2020) ........................................10

*Goodyear Tire & Rubber Co. v. Haeger*,
137 S. Ct. 1178 (2017) ..........................................................................................................9

*Kaymark v. Urden Law Offices, P.C.*,
    No. 13-419, 2019 WL 999756 (W.D. Pa. Mar. 2, 2019).......................................19

*Kirkpatrick v. Ironwood Commc'ns, Inc.*,
    No. C05-1428JLR, 2006 WL 2381797 (W.D. Wash. Aug. 16, 2006)...................12

*Leder v. Shinfeld*,
    609 F. Supp. 2d 386 (E.D. Pa. 2009)...................................................................10

*Maddox & Starbuck, Ltd. v. British Airways*,
    97 F.R.D. 395 (S.D.N.Y. 1983) ............................................................................12

*McCloskey v. Novastar Mortg., Inc.*,
    No. 05-1162, 2007 WL 2407103 (E.D. Pa. Aug. 21, 2007).................................16

*In re Outlaw Lab'y, LP Litig.*,
    No. 18-0840, 2020 WL 5552558 .........................................................................10

*Sheppard v. River Valley Fitness One, L.P.*,
    428 F.3d 1 (1st Cir. 2005).....................................................................................18

*Sloane v. Gulf Interstate Field Servs., Inc.*,
    No. 4:16-01571, 2017 WL 1105236 (M.D. Pa. Mar. 24, 2017) ...........................12

*In re Suk Kim*,
    No. 06-00157, 2010 WL 148635 (Bankr. D. Haw. Jan. 14, 2010) .......................18

*United States v. Jon Frey*,
    No. 20-mj-1704, ECF No. 8 ....................................................................................3

*Weisman v. Darneille*,
    78 F.R.D. 669 (S.D.N.Y. 1978) ............................................................................12

## Statutes, Rules & Regulations

Fed. R. Civ. P. 23............................................................................................*passim*

Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*.....................................1

## INTRODUCTION

For more than five months, joint counsel for Plaintiffs Andrew Perrong ("Mr. Perrong") and Jon Frey ("Mr. Frey")[1] (counsel for both are referred to collectively as "Joint Counsel")[2] engaged in a pattern of deliberate misrepresentations, obfuscations, and intentional omissions of material information to fraudulently induce Frontier Utilities Northeast LLC ("Frontier") to settle the claims of Mr. Perrong, Mr. Frey, and the putative class members they propose to represent. Because such conduct constitutes bad faith and a lack of candor, Joint Counsel should be sanctioned by the Court.

Not only did Joint Counsel fail to disclose the existence of pending federal criminal charges against Mr. Frey for possession and distribution of child pornography, they intentionally concealed that information. Joint Counsel even went so far as to mislead Frontier and the Parties' selected mediator, retired Judge Morton Denlow, about the reason why Mr. Frey could not participate in the mediation virtually, claiming that he had to work instead of the true reason—that, as a condition for his release, Mr. Frey was under house arrest and prohibited from using a computer or any device with internet access. They also misled Frontier and Judge Denlow by affirmatively

---

[1]     As discussed further below, a separate class action lawsuit alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), was filed by Jon Frey against Frontier on May 31, 2019. *See Frey v. Frontier Utilities Northeast LLC, et al.,* Case No. 2:19-2372-JSM (E.D. Pa. May 31, 2019) ("*Frey* Action"), ECF No. 1 (Complaint). Frontier, Perrong, and Frey (collectively, the "Parties") discussed resolving both the instant action as well as the *Frey* Action through a combined class action settlement to be approved by this Court.

[2]     Although this Motion does not seek sanctions from Mr. Frey, Mr. Frey was complicit in the fraud perpetrated by Joint Counsel. Mr. Frey is obviously aware of the criminal charges that he is facing and took no steps to disclose them to Frontier. To the extent Mr. Perrong was also aware, which he and Joint Counsel have not said he was not, he too failed to disclose this material fact.

misrepresenting that Mr. Frey could serve as an adequate class representative.[3]

Joint Counsel's goal seems obvious in retrospect: hide material information that would disqualify Mr. Frey from serving as an adequate class representative and try to jointly settle Mr. Frey's and Mr. Perrong's cases for as much as they could, as quickly as they could, before Frontier discovered Mr. Frey's criminal charges. And it almost worked. Without any reason to suspect their motivations, Frontier engaged in good faith settlement negotiations and ultimately reached a "resolution" of both Mr. Frey's and Mr. Perrong's actions. But, as Joint Counsel knew or should have known, Frontier would never have agreed to settle, and certainly not for the amount agreed to at mediation, had Frontier known the truth. The negative publicity from settling with an individual facing such serious criminal charges alone would have been enough to deter Frontier from settling Mr. Frey's claims.

Shortly after receiving Frontier's notice that Frontier would not proceed with any settlement with Mr. Frey due to Joint Counsel's material misrepresentations and omissions, Joint Counsel tried to save their payday by filing the Motion for Preliminary Approval of a Class Action Settlement and Incorporated Memorandum in Support[4] ("Approval Motion").[5] In doing so, they

---

[3]     Indeed, as discussed further in Frontier's Opposition to Plaintiff's Motion for Preliminary Approval ("Opposition"), (*Perrong* Action, ECF No. 18), Mr. Frey cannot adequately represent the interests of a class. The Opposition and its exhibits are incorporated herein by reference.

[4]     ECF No. 15 (Approval Mot.).

[5]     Lest Joint Counsel argue that this Motion be denied because Frontier did not attempt to meet and confer with them before filing, Frontier would point out that no such obligation exists, whether under the Local Rules or the Court's rules, for motions of this nature. Moreover, Frontier did attempt to confer with Joint Counsel (albeit not directly with respect to this motion) to discuss Joint Counsel's conduct and its impact on any settlement. Indeed, on March 29, 2021, within two days of becoming aware of the serious criminal charges pending against Mr. Frey, Frontier reached out to Plaintiffs and Joint Counsel with a four-page letter, explaining Frontier's realization that it was fraudulently induced and demanding that Plaintiffs and Joint Counsel take no further action to pursue the settlement. Without making any attempt to substantively respond to Frontier's letter, Joint Counsel proceeded to file their Approval Motion. Through their conduct, Joint Counsel have demonstrated to Frontier that they have no interest in meaningfully meeting and conferring and therefore any attempt to do so here would have been futile.

2

falsely represented to this Court that the Parties have reached a binding settlement agreement. However, there is *no* enforceable settlement agreement. The purported settlement agreement for which Joint Counsel seeks approval was procured through fraud and is therefore unenforceable. Moreover, Joint Counsel filed the Approval Motion knowing that Frontier did ***not*** consent to it, nor did Frontier intend to proceed with any settlement in light of Joint Counsel's bad-faith conduct.

Joint Counsel's conduct should not be tolerated. Frontier respectfully requests that this Court use its inherent authority to sanction Joint Counsel by awarding Frontier all of its reasonable attorneys' fees and costs incurred as a result of Joint Counsel's conduct, as well as any other relief that this Court deems just and proper. Further, because neither Mr. Perrong nor Joint Counsel have complied with their fiduciary duties and, thus, cannot be approved as adequate by the Court under Federal Rule of Civil Procedure 23, the Court should dismiss the Class Action Complaint.

## I.   FACTUAL BACKGROUND

On May 31, 2019, Plaintiff Jon Frey filed a putative class action asserting violations of the TCPA based on allegations that Frontier placed calls to a phone number where Mr. Frey was charged per call using an automatic telephone dialing system ("ATDS") without his consent.[6]

On August 6, 2020, unbeknownst to Frontier, the Federal Bureau of Investigation ("FBI") executed a federal search warrant against Mr. Frey, and seized his phone based on allegations that Mr. Frey "distributed child pornography to a chat group in a chat group in which chat participants trade child pornography."[7]  On October 20, 2020, Mr. Frey was arrested[8] on multiple charges of child pornography, including distribution and attempted distribution of child pornography.[9]  On

---

[6]      *See Frey* Action, ECF No. 1 (Complaint).

[7]      *See* Ex. A, *United States v. Jon Frey*, No. 20-mj-1704 ("*Frey* Criminal Action"), ECF No. 8 (Mot. for Pretrial Detention).

[8]      On November 4, 2020, Mr. Frey was indicted on these charges by a federal grand jury.

[9]      *See* Ex. A, *Frey* Criminal Action, ECF No. 8 (Mot. For Pretrial Detention at 16).

that *same* day, and for the first time during the course of the *Frey* Action, Joint Counsel reached

out to Frontier to discuss potential settlement of the *Frey* Action.[10]  Joint Counsel made no mention

of Mr. Frey's pending criminal charges or that he had been arrested earlier that same day.[11]  The

Parties conducted a second phone call to discuss settlement on October 28, 2020, and once again,

Joint Counsel did not mention the fact that Mr. Frey was in federal custody.[12]

On November 2, 2020, Joint Counsel sent a formal "settlement demand" letter to Frontier

stating "[f]ollowing our discussion last week, the plaintiff Jon Frey, as well as Andrew Perrong,

are writing to make a settlement demand regarding this matter."[13]  Joint Counsel did not mention

that Mr. Frey was in federal custody at the time.

On November 23, 2020, Mr. Perrong filed this lawsuit against Frontier, alleging that he

and the putative class members had received telemarketing phone calls without their consent to

phone numbers listed on the federal Do-Not-Call list in violation of the TCPA ("*Perrong*

Action").[14]

Following receipt of the November 2, 2020 settlement demand, the Parties engaged in

ongoing settlement discussions and negotiations.  At no point during any of those conversations

did Joint Counsel disclose to Frontier that Mr. Frey has been indicted on federal charges of

distribution of child pornography and that he was being held at a federal detention center.

On January 24, 2021, Joint Counsel sent a further "authorized" settlement counteroffer on

behalf of Mr. Frey and Mr. Perrong to Frontier.  Joint Counsel thus emailed not one but two

---

[10]     *See* Ex. B, Decl. of Michael P. Daly ¶ 6.

[11]     *Id.* ¶ 27.

[12]     *See* Ex. B, Daly Decl. ¶¶ 9, 27.

[13]     *See* Ex. C, Letter from Joint Counsel to Frontier (Nov. 2, 2020).

[14]     *See generally*, *Perrong* Action, ECF No. 1 (Compl.).

settlement communications to Frontier purportedly on behalf of Mr. Frey while he was being held in a federal detention center, notwithstanding that Mr. Frey's own criminal counsel had trouble accessing him during that time.  Indeed, on February 3, 2021, Mr. Frey's criminal counsel filed a motion for continuance of Mr. Frey's criminal trial because "given the restrictions in place due to COVID, counsel was not able to visit with the defendant while he was in custody."[15]

In their January 24, 2021 email, while Mr. Frey was still in federal custody, Joint Counsel proposed that the Parties mediate with retired Judge Morton Denlow.[16]  The Parties scheduled a mediation with Judge Denlow for February 16, 2021.  On January 26, 2021, Mr. Frey was released from custody with "stringent conditions," including the following:  (1) "Home Incarceration with Location Monitoring through GPS" at his parents' residence; (2) a prohibition on "possession and/or use of any computers and connected devices"; and (3) restrictions on the use of a cell phone with internet access.[17]

On February 3, 2021, in advance of the upcoming mediation, the Parties met with Judge Denlow telephonically.  During that conversation, Joint Counsel represented to Judge Denlow that Mr. Frey would only be able to participate in the mediation by phone and not by ZOOM, falsely claiming that Mr. Frey had to work.[18]  But, as Frontier later learned, the real reason that Mr. Frey could not participate by ZOOM was because of the stringent conditional release restrictions that prohibited any access to computers and the internet.[19]  Moreover, during this call, Judge Denlow

---

[15]    *See* Ex. D, *Frey* Criminal Action, ECF No. 29 ("Def.'s Mot.  for Continuance").

[16]    *See* Ex. E, Email from A. Paronich to M. Daly, *et al.* (Jan. 24, 2021).

[17]    *See* Ex. F, *Frey* Criminal Action, ECF No. 26 (Order Granting Def.'s Mot. for Release from Custody).

[18]    *See* Ex. B, Daly Decl. ¶ 15.

[19]    *See* Ex. F, *Frey* Criminal Action, ECF No. 26 (Order Granting Def.'s Mot. for Release from Custody).

asked whether Mr. Perrong and Mr. Frey were able to represent the interests of a class.[20]  Without missing a beat, Joint Counsel responded with an unequivocal "Yes."[21]

The very next day, Joint Counsel submitted the pre-mediation "Class Action Checklist" to Judge Denlow and Frontier.[22]  In the checklist, Judge Denlow asked Joint Counsel to identify any potential issues from "Possible Objectors."[23]  Despite Mr. Frey's indictment, Joint Counsel responded with only "[f]ocusing the settlement on a non-reversionary fund and ensuring that there are proper protections against Fraud for publication claimants will be important to avoid objections."[24]

On February 16, 2021, the Parties spent nearly 12 hours in mediation with Judge Denlow. During the mediation, neither Mr. Frey nor Joint Counsel revealed that Mr. Frey had been indicted for child pornography charges and was therefore an inadequate and atypical class representative. To the extent Mr. Perrong was aware of the Indictment, and neither he nor Joint Counsel have stated that he was not, he too did not make any disclosure.  Following the mediation, the Parties continued negotiating the terms of the purported settlement agreement, including Mr. Frey's incentive award.  Joint Counsel continued to conceal Mr. Frey's pending criminal charges during those conversations.[25]

On March 27, 2021, Frontier became aware of Mr. Frey's criminal indictment for the first time.[26]  On March 29, 2021, Frontier notified Joint Counsel of "a material breach of the Class

---

[20]    *See* Ex. B, Daly Decl.¶ 16.

[21]    *Id.*

[22]    *See* Ex. B, Daly Decl. ¶¶ 17–19

[23]    *See* Ex. G, Pls.' Class Action Checklist at § XI.

[24]    *Id.*

[25]    *See* Ex. H, Email from Joint Counsel to Frontier (Feb. 28, 2021).

[26]    *See* Ex. B, Daly Decl. ¶ 28.

Action Settlement Agreement and Release" by Mr. Perrong and Mr. Frey ("Notice of Material Breach").[27]  In the Notice of Material Breach, Frontier informed Joint Counsel that "Frontier will not settle any case with Mr. Frey" and demanded that they "cease and desist from any effort to seek court approval of the Settlement Agreement."[28]  Joint Counsel responded by e-mail in less than twenty-five minutes.[29]  But nowhere in their response did they express surprise or shock, nor did they make any effort to refute that they or Mr. Perrong had knowledge of Mr. Frey's pending criminal charges.[30]

On April 1, 2021, Judge Denlow emailed the Parties stating, "I am deeply troubled by the information regarding the serious criminal charges facing Mr. Frey and its impact on the settlement," and that he was awaiting Joint Counsel's response.[31]  Later that same day, Judge Denlow indicated Joint Counsel "brought to [his] attention" in an *ex-parte* communication their vague initial response and asked whether Frontier had decided how to proceed with the settlement.[32]  Frontier explained that Joint Counsel must respond to Frontier before "Frontier determines whether a settlement involving Mr. Perrong and the same class counsel is appropriate."[33]  Joint Counsel did not respond until after filing the Approval Motion on April 2, 2021, at which point they declared "Plaintiffs have filed the Motion for Preliminary Approval of the Settlement, which is attached.  We're prepared to enforce the settlement agreement as

---

[27]     *See* Ex. I, Notice of Breach Letter ("Notice").

[28]     *Id.* at 4.

[29]     *See* Ex. B, Daly Decl. ¶ 30.

[30]     *Id.*

[31]     *See* Ex. J, Email from Judge Denlow to the Parties' counsel (Apr. 1, 2021).

[32]     *Id.*

[33]     *Id.*

agreed."[34]   Notably, the Approval Motion makes no effort to deny prior knowledge of Mr. Frey's criminal charges.[35]

Additionally, the evidence further reveals that Mr. Perrong was fully aware of the charges pending against Mr. Frey and, despite having an obligation to adequately represent the interests of the class, made no effort to disclose this information to Frontier, Judge Denlow, or to otherwise inform the Court.  This conduct is in contravention of his duties as potential class representative.

Because of Joint Counsel's bad faith and lack of candor, Frontier has incurred significant legal fees and costs that it would not have incurred but for Joint Counsel's conduct.  These include, but are not limited to (1) the costs of mediation and mediator fees, and (2) attorneys' fees incurred to prepare for and attend mediation, negotiate the void settlement agreement, and draft and litigate this motion for sanctions and Frontier's opposition to the Approval Motion.  Therefore, for the reasons stated herein, this Court should exercise its inherent authority and issue sanctions against Joint Counsel in the amount of Frontier's reasonable and necessary attorneys' fees and costs. Further, because both Mr. Perrong and Joint Counsel have demonstrated, through their conduct, that they cannot adequately represent the interests of the putative class asserted in the Class Action Complaint as required by Fed. R. Civ. P. 23, this case should be dismissed, and Mr. Perrong should be prohibited from refiling any putative class action lawsuit against Frontier.

## II.    LEGAL STANDARD

It is well-settled that "[f]ederal courts possess certain inherent powers, including 'the ability to fashion an appropriate sanction for conduct which abuses the judicial process.' . . . One permissible sanction is an assessment of attorney's fees against a party that acts in bad faith."

---

[34]    *Id.*

[35]    *Perrong* Action, ECF No. 15 (Approval Mot. at n.2).

*Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1182 (2017).  Where sanctions are awarded they "must be compensatory, rather than punitive."  *Id.*  In order to determine the appropriate scope of the damages, the court must use a "but-for-test" to "award only those fees that the innocent party would not have incurred in the absence of litigation misconduct."  *Id.*

## III.    ARGUMENT

### A.    Joint Counsel's Conduct Demonstrates Bad Faith and Lack of Candor

For the past five months, Frontier worked diligently with Joint Counsel to resolve both the *Perrong* Action and the *Frey* Action.   During that time period, however, Joint Counsel intentionally misrepresented and omitted material information to fraudulently induce Frontier into a settlement.  Moreover, despite being fully aware that Frontier would not settle the *Frey* Action after learning of Mr. Frey's pending criminal charges, Joint Counsel intentionally filed the Approval Motion, falsely suggesting that all Parties had agreed to settle both the *Perrong* Action and the *Frey* Action to the Court and the members of the putative class.  Joint Counsel's bad faith conduct and lack of candor should not be excused.

"Federal courts have inherent power to sanction a party when it has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons,' or where 'fraud has been practiced upon it, or that the very temple of justice has been defiled.'"  *Antoniak v. Armstrong*, No. 18-1263, 2020 WL 2539194, at *6 (E.D. Pa. May 19, 2020), *reconsideration denied*, No. 18-1263, 2020 WL 4436737 (E.D. Pa. Aug. 3, 2020) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991)).  The Third Circuit has held that "'what would be indicative of bad faith in a case such as this one, would be some indication of an intentional advancement of a baseless contention that is made for an ulterior purpose, e.g., harassment or delay.'"  *Deming-Archambault v. Lennox Int'l*, No. 17-1652, 2018 WL 1899033, at *2 (W.D. Pa. Apr. 20, 2018) (internal citations omitted).  As discussed below, Joint Counsel's material misrepresentations and intentional omissions to induce Frontier

into settling these cases, as well as their subsequent motion seeking Court approval of the fraudulently procured settlement agreement, clearly demonstrates bad faith and lack of candor.

> i.     *Joint Counsel's misrepresentations were intended to fraudulently induce Frontier into settling and are evidence of their bad faith conduct and lack of candor.*

Joint Counsel have engaged in a pattern and practice of deceitful conduct throughout the entire five-month period during which the Parties engaged in settlement negotiations. These material misrepresentations were made for one purpose: to fraudulently induce Frontier into settling before Frontier realized the truth about Mr. Frey.

Under Pennsylvania law, fraudulent inducement requires:

> (1) a representation; (2) material to the transaction at hand; (3) made falsely with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury.

*Gavurnik v. Vantage Labs, LLC*, No. 19-5537-KSM, 2020 WL 6381383, at *2 (E.D. Pa. Oct. 30, 2020); *see also EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 275–76 (3d Cir. 2010). Importantly, "courts have consistently held that the concealment of a material fact by a defendant amounts 'to a culpable misrepresentation no less than does an intentional false statement.'" *Leder v. Shinfeld*, 609 F. Supp. 2d 386, 398 (E.D. Pa. 2009); *see also ATD-Am. Co. v. Krueger Int'l, Inc.*, No. 12-0032, 2012 WL 1382472, at *8 (E.D. Pa. Apr. 20, 2012) (stating that fraudulent inducement can consist of "anything calculated to deceive, whether . . . it be direct falsehood or by innuendo, by speech or silence"); *In re Outlaw Lab'y, LP Litig.*, No. 18-0840, 2020 WL 5552558, at *18 ("A duty to disclose may also arise in the so-called 'half truth' context—that is, when a speaker makes a representation which, though not false, he knows will be misleading absent full disclosure of additional facts known to him which qualify the initial representation.").

Here, Joint Counsel's multiple misrepresentations and omissions were material because Frontier would never have voluntarily agreed to settle the case had it been aware of the criminal

charges pending against Mr. Frey, especially given the potential reputational damage to Frontier by entering into a settlement agreement with an accused child pornographer. Moreover, Mr. Frey's inability to serve as an adequate and typical class representative in connection with a class action settlement is material to the settlement negotiations. Frontier would not have settled a class action with an individual who could not adequately represent the interests of the class and whose claims and defenses were not typical of the putative class members. Mr. Frey's pending criminal charges prevent him from being able to do so. Mr. Frey is presently under house arrest and is prohibited from using any device with access to the internet (*e.g.*, home computer, laptop, cell phone, etc.).[36] If this case were to proceed, Mr. Frey would not be able to carry out his fiduciary duties to the absent class members because his computer and internet restrictions would unquestionably impact his ability to participate in the case or communicate with Joint Counsel. And, if convicted, Mr. Frey faces a minimum of five years in prison.[37] It is unclear how, or whether, Mr. Frey would be able to carry out his fiduciary duties as a class representative from prison, particularly where even his own criminal defense attorney had limited access to him to prepare for his trial.[38] Further, Mr. Frey's pending criminal charges have already impacted his ability to serve as an adequate class representative because they prevented him from effectively participating in settlement negotiations (*i.e.*, Mr. Frey's limited access to legal counsel while in custody and his inability to attend mediation via ZOOM) and led him to mislead Frontier into a purported settlement.

Under similar facts, the Northern District of California found that a "severe and ongoing

---

[36]     *See* Ex. F, *Frey* Criminal Action, ECF No. 26 (Order Granting Def.'s Mot. for Release from Custody); *see also Frey* Criminal Action, ECF No. 19 (Govt. Resp. to Def.'s Mot. to Revoke Order of Detention and for Release on Conditions of Bail at 11) ("Prison is a certainty for this defendant—he faces a mandatory minimum of five years[.]").

[37]     *See* Ex. A, *Frey* Criminal Action, ECF No. 8 (Mot. For Pretrial Detention)

[38]     *See* Ex. D, *Frey* Criminal Action, ECF No. 29 ("Def.'s Mot. for Continuance").

criminal record," including first-degree burglary and vandalism charges, were sufficient to disqualify an individual from serving as a class representative because she was "unable to vigorously represent the best interest of the class and unfit to properly exercise her fiduciary duties to absent class members." *Dunford v. American DataBank, LLC*, 464 F. Supp. 3d 1378, 1397-8 (N.D. Cal. 2014). A number of other courts across the country have similarly held that significant criminal conduct may be sufficient to disqualify a plaintiff from serving as a class representative. *See Sloane v. Gulf Interstate Field Servs., Inc.*, No. 4:16-01571, 2017 WL 1105236, at *24 (M.D. Pa. Mar. 24, 2017) (finding that plaintiff could not serve as a class representative because his criminal history and his alcoholism call into question his credibility); *Kirkpatrick v. Ironwood Commc'ns, Inc.*, No. C05-1428JLR, 2006 WL 2381797, at *6 (W.D. Wash. Aug. 16, 2006) (holding that due to plaintiff's past crimes he "will likely be subject to multiple attacks on his credibility based on his past crimes [which] will likely severely limit [plaintiff's] ability to vigorously pursue the interests of absent class members"); *Maddox & Starbuck, Ltd. v. British Airways*, 97 F.R.D. 395, 396-97 (S.D.N.Y. 1983) (holding that "criminal activity" of plaintiff prevented plaintiff from qualifying as a class representative); *Weisman v. Darneille*, 78 F.R.D. 669, 671 (S.D.N.Y. 1978) (disqualifying plaintiff as a class representative due to a prior felony conviction and lies regarding that conviction during his depositions).

Because Mr. Frey's pending criminal charges prevent him from serving as an adequate class representative, such information was material to the settlement negotiations. Joint Counsel knew that Mr. Frey would not be able to qualify as a class representative, so they made material false representations both through their words and conduct, as well as through their complete lack of candor, in an attempt to settle these class cases before Frontier could find out the truth. The timing of Joint Counsel's conduct sheds light on the depth of their fraud. The *Frey* Action had

been pending for over a year when Joint Counsel made an unsolicited call to discuss settlement for *the first time*.[39]   Significantly, that was the same day that Mr. Frey was taken into custody on charges of possession and distribution of child pornography.[40]   Joint Counsel aggressively pursued settlement and pushed hard to accelerate the timing of any settlement.   In fact, two days after receiving Frontier's counteroffer to Mr. Frey's settlement demand, Joint Counsel recommended that the Parties mediate the case with Judge Denlow and proposed a date only eight days later.[41] At no point during the almost four months between when Joint Counsel first reached out to discuss settlement (October 20, 2020) and the mediation (February 16, 2021) did they disclose that Mr. Frey was in federal detention.[42]   Indeed, during this time period, they suggested that Frontier's offers had been presented to Mr. Frey for his consideration and were rejected by him.[43]   But, again, it is now unclear whether and when Joint Counsel would have been able to communicate any offers to Mr. Frey as even Mr. Frey's criminal defense counsel "was not able to visit with the defendant while he was in custody."[44]

Further, Joint Counsel affirmatively misled Frontier and Judge Denlow at least three times: (1) on February 3, 2021, about the reasons why Mr. Frey could not participate in the mediation by ZOOM;[45] (2) on February 3, 2021, by affirmatively representing that there were no concerns about

---

[39]       *See* Ex. B, Daly Decl. ¶ 6.

[40]       *See* Ex. A, *Frey* Criminal Action, ECF No. 8 (Mot. For Pretrial Detention).

[41]       *See* Ex. E, Email from A. Paronich to M. Daly, *et al*. (Jan. 24, 2021).

[42]       *See* Ex. B, Daly Decl. ¶ 27.

[43]       *See* Ex. E, Email from A. Paronich to M. Daly, *et al*. (Jan. 24, 2021) .("We are <u>authorized</u> to counter Frontier's [counteroffer] . . . .") (emphasis added).

[44]       *See* Ex. D, *Frey* Criminal Action, ECF No. 29 ("Def.'s Mot. for Continuance").

[45]       *See* Ex. F, *Frey* Criminal Action, ECF No. 26 (Order Granting Def.'s Mot. for Release from Custody).

Mr. Frey's ability to represent the interests of the putative class;[46] and (3) on February 4, 2021, by submitting the Class Action Checklist stating that the only potential obstacles to settlement were "[f]ocusing the settlement on a non-reversionary fund and ensuring that there are proper protections against Fraud for publication claimants will be important to avoid objections."[47]

As intended by Joint Counsel, Frontier relied on Joint Counsel's misrepresentations. Moreover, that reliance was justified because (1) Frontier had been given no reason to question Mr. Frey's ability to qualify as a class representative,[48] and (2) the misrepresentations were made by licensed attorneys with duties of candor.  Joint Counsel's fraudulent inducement constitutes bad faith conduct and lack of candor, sanctionable pursuant to the Court's inherent power. *See e.g.*, *In re Bavelis*, 743 F. App'x 670, 676 (6th Cir. 2018).

In *Bavelis*, a creditor filed a proof of claim against the debtor, and then immediately assigned the note to an unrelated third party. *Id.* at 672.  Notwithstanding, the creditor's representative and his attorney failed to disclose the assignment and continued to litigate the case as though the creditor were still an interested party. *Id.*  As a result, the debtor agreed to participate in a settlement conference with the creditor's representative. *Id.*  Applying the but-for-test, the court agreed that inducing debtor into participating in the settlement agreement by failing to disclose the assignment of the promissory note was sanctionable bad-faith conduct. *Id.* at 676.

As in *Bavelis*, Joint Counsel's failure to disclose that Mr. Frey had been indicted on federal charges of possession and distribution of child pornography certainly impacted Frontier's willingness to participate in settlement discussions.  Frontier has no interest in entering into an

---

[46]     *See* Ex. B, Daly Decl. ¶¶ 14, 16.

[47]     *See* Ex. G, Pls.' Class Action Checklist.

[48]     As a matter of law, a recipient of a fraudulent misrepresentation "is under no duty to investigate its falsity in order to justifiably rely." *Bennett v. Itochu Int'l, Inc.*, 682 F. Supp. 2d 469, 479 (E.D. Pa. 2010).

agreement of any kind with an indicted child pornographer.  And Frontier has no desire in drawing negative publicity by entering into a multi-million dollar class action settlement with anyone who has been accused of such crimes.  Indeed, the fact that Joint Counsel felt the need to conceal the reason that Mr. Frey could not participate in the mediation by ZOOM, as well as Mr. Frey's ability to serve as a class representative and the potential impediments to any class action settlement, strongly suggests that Joint Counsel knew that Frontier would not be willing to enter into the settlement if Frontier became aware of Mr. Frey's criminal charges.

Accordingly, Joint Counsel's false and misleading conduct, as well as their failure to disclose and lack of candor, was clearly for the purpose of fraudulently inducing Frontier, and as such constitutes bad faith and lack of candor.

     ii.    *Joint Counsel acted in bad faith and demonstrated a lack of candor through their court filings.*

Joint Counsel have also engaged in bad faith conduct and lack of candor by filing the Approval Motion on April 2, 2021, ***after*** Joint Counsel was notified that Frontier "will not settle any case with Mr. Frey" and that "Frontier intends to vigorously oppose" any attempts to seek court approval of the Settlement Agreement.[49]  Joint Counsel filed the Approval Motion pursuant to Fed. R. Civ. P. 23(e), which by necessity requires the existence of a settlement before such a motion may be filed.  To support the Approval Motion, Joint Counsel falsely represented to this Court that "Plaintiff Andrew Perrong and Jon Frey . . . and Defendant Frontier . . . ***have reached a class action settlement*** of the above-captioned matter ***and***" the *Frey* Action.[50]  But there is no "class action settlement" as the only purported "settlement agreement" was obtained through fraud

---

[49]    *See* Ex. I, Notice.

[50]    *Perrong* Action, ECF No. 15 (Approval Mot. at 1) (emphasis added).

and, as such, is unenforceable.[51]

Because Joint Counsel fraudulently induced Frontier, the purported settlement agreement is voidable, and indeed, Frontier voided it through its Notice of Material Breach.[52] Accordingly, Joint Counsel's misrepresentation that the Parties have reached a settlement is yet another example of their improper conduct and lack of candor.

Joint Counsel attempts to save face through a single, misleading footnote in which Joint Counsel offers Mr. Perrong as the sole class representative to resolve the dispute with respect to the action initiated by Mr. Frey.[53] But footnote 2 does not cure their misrepresentations in their filing with the Court. They filed a motion for preliminary approval, ***not*** a motion to enforce a settlement. By doing so, Joint Counsel made affirmative representations to the Court and the putative class members that the cases were settled and the Approval Motion was filed by consent. These representations were false and Joint Counsel knew it.

Moreover, Joint Counsel have taken no steps to cure their misrepresentations to the Court nor do they deny that they have known about Mr. Frey's *currently pending* criminal Indictment on federal charges for child pornography the whole time and utterly failed to disclose this material

---

[51] It is well-settled that "[i]f a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient." *McCloskey v. Novastar Mortg., Inc.*, No. 05-1162, 2007 WL 2407103, at *6 (E.D. Pa. Aug. 21, 2007); *see also In re Allegheny Int'l, Inc.*, 954 F.2d 167, 177–78 (3d Cir. 1992); Restatement (Second) of Contracts § 164(1) ("If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable[.]").

[52] *See* Ex. I, Notice.

[53] *Perrong* Action, ECF No. 15 (Approval Mot. at 2, n.2). As discussed in more detail in the Opposition, even if Frontier had agreed that Mr. Perrong could serve as the sole class representative, the parties would, among other things, have to renegotiate (1) the terms of the purported settlement agreement to remove Mr. Frey, (2) the class definition, (3) the value of the settlement (including any attorneys' fees component), (4) the notice forms, (5) the Proposed Preliminary Approval Order, and (6) the Proposed Final Approval Order.

fact to Frontier.[54]   Instead, Joint Counsel take a "blame the victim" approach, asserting that Frontier should have questioned Joint Counsel's candor before agreeing to settle.[55]   This is not a defense to intentionally misleading the Court, Judge Denlow, and Frontier.  However, it is further evidence of bad faith conduct and lack of candor.

**B.**      <u>**Sanctions under the Court's Inherent Authority are Warranted Here**</u>

The Supreme Court has held that sanctions are appropriate pursuant to the Court's inherent authority where the alleged conduct "reaches both conduct before the court and beyond the court's confines."  *See Chambers*, 501 U.S. at 46 (1991).  Indeed, courts in the Third Circuit have issued sanctions pursuant to the court's inherent authority where the bad-faith conduct at issue "occurred throughout several aspects of [the] litigation which are not squarely covered by any one rule."  *See, e.g., Derzack v. County of Alleghany, Pa.,* 173 F.R.D. 400, 412 (W.D. Pa. 1996)

In *Derzack*, the misconduct at issue included both the manufacturing of evidence and its cover-up in connection with court-ordered and court-monitored discovery.  *Id.*  The plaintiffs also used the manufactured evidence to manipulate out-of-court settlement negotiations.  *Id.*  Because the misconduct included both conduct sanctionable under the Federal Rules of Civil Procedure, as well as conduct that was not governed by the Rules (*e.g.*, settlement), the court held that the "plaintiffs' misconduct most directly implicates the inherent power of the court."  *Id.*

Similarly, Joint Counsel's bad-faith conduct occurred before this Court through the filing of the Approval Motion.  The misconduct also occurred "beyond the court's confines" through misrepresentations and failures to disclose material information during settlement negotiations and

---

[54]      *Perrong* Action, ECF No. 17 (Pl.'s Opp'n to Def.'s Mot. to Strike at 5) ("The time for Frontier to figure out whether it had challenges to Mr. Frey's or Mr. Perrong's adequacy was before executing the settlement agreement.")

[55]      *Id.*

the mediation process.  *See Chambers*, 501 U.S. at 46.  Accordingly, because Joint Counsel's conduct is not "squarely covered by any one rule," the Court may, and should, use its inherent authority to sanction Joint Counsel.  *Derzack,* 173 F.R.D. at 412.

**C.**   **Payment of Frontier's Reasonable Attorneys' Fees and Costs is a Proper Sanction**

Under the court's "inherent power, a court may order the offending party to pay the attorney's fees and costs of the innocent or prevailing party in order to make the latter party whole for expenses caused by the misconduct of the offending party."  *Antoniak*, 2020 WL 2539194, at *6; *see also Deming-Archambault v. Lennox Int'l*, No. 17-1652, 2018 WL 1899033, at *2 (W.D. Pa. Apr. 20, 2018) ("Under its inherent powers, 'a court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'").  "The amount of a fee award to a party is limited 'to the fees the party would not have incurred but for the bad faith.'" *Deming-Archambault*, 2018 WL 1899033 at *2.  In other words, sanctions under the court's inherent authority may only be compensatory and may not be used to punish a party's misconduct. *Antoniak*, 2020 WL 2539194, at *6.

Courts regularly award sanctions where attorneys act in bad faith during settlement negotiations.  For example, in *Sheppard v. River Valley Fitness One, L.P.*, 428 F.3d 1, 11 (1st Cir. 2005), the attorney attempted to coerce a settlement by attaching to the demand letter a stipulation to judgment filed in a similar, yet unrelated case.  *Id.*  However, the stipulation to judgment did not accurately reflect the value of the judgment in that case because it left out information that significantly reduced its value.  *Id.*  In upholding an order issuing monetary sanctions, the court held that the demand letter, although not technically untrue, was misleading and violated the attorney's obligations of candor to third parties.  *Id.* at *13.

Similarly, in *In re Suk Kim*, No. 06-00157, 2010 WL 148635, at *8 (Bankr. D. Haw. Jan.

14, 2010), the court sanctioned an attorney who used frivolous motions and a "barrage of threatening communications, in an improper effort to 'up the ante' and bully the trustee into a settlement." The court held that this conduct constituted bad faith and was sanctionable under the court's inherent power. *Id.*

Frontier has incurred significant expenses, including attorneys' fees, costs, and at least $10,000 for the mediation with Judge Denlow. ***None*** of these fees and costs would have been incurred but for Joint Counsel's bad faith conduct and abject lack of candor. This Court should sanction Joint Counsel in the form of Frontier's reasonable attorneys' fees and costs that Frontier would not otherwise have incurred but for Joint Counsel's bad faith conduct and lack of candor. In support of its request for attorneys' fees and costs, and with the Court's permission, Frontier will submit a fee application within twenty-one days of the Court's order granting this Motion.

**D.      The Perrong Action Should be Dismissed because Joint Counsel and Mr. Perrong have Shown they Cannot Adequately Represent the Interests of the Putative Class**

Because neither Joint Counsel nor Mr. Perrong have shown themselves to be adequate representatives for the putative class members, the *Perrong* Action should be dismissed.

Mr. Perrong filed his lawsuit as a putative class action. In so doing, he and Joint Counsel purport to represent the interests of the putative class. Federal Rule of Civil Procedure 23 imposes strict requirements on individuals seeking to represent the class, whether as a named plaintiff or as an attorney. Chief among these requirements is the ability to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4) and (g)(4) (changing "protect" to "represent"). Indeed, it is well settled that by choosing to file a class action lawsuit, the named plaintiff and the class attorneys accept fiduciary responsibilities and obligations to the putative class members. *See Kaymark v. Urden Law Offices, P.C.*, No. 13-419, 2019 WL 999756, at *12 (W.D. Pa. Mar. 2, 2019) ("Thus, as a class representative, by assuming a representative role on behalf of the absent

class members, voluntarily accepts a fiduciary obligation toward the class that may not be abandoned at will.") (internal citations omitted); *see also Aetna, Inc. v. Whatley Kallas, LLP*, No. 18-2172, 2019 WL 1437916, at \*7 (E.D. Pa. Mar. 29, 2019) ("Class attorneys, purporting to represent a class, also owe the entire class a fiduciary duty once the class complaint is filed.") (internal citations omitted).

Here, neither Mr. Perrong nor Joint Counsel can adequately represent the putative class, as they have repeatedly put their own interests ahead of class members' interests. As noted above, Joint Counsel misrepresented and omitted material information and were interested primarily in their own payday rather than concerning themselves with the interests of putative class members. This much is evident from the fact that Joint Counsel was more than willing to ram through the settlement despite knowing about (1) Mr. Frey's Indictment and pending criminal trial, (2) the potential impact that these charges may have on his ability to serve as a class representative, and (3) the potential to draw objections to the settlement from individuals who dispute whether an accused child pornographer can adequately represent their interests.

Similarly, Mr. Perrong is incapable of serving as an adequate class representative because the evidence suggests that he was aware of Mr. Frey's criminal charges and did not disclose this material information to Frontier, Judge Denlow, or otherwise make an effort to bring it to the Court's attention. For example, while the *Frey* Action was pending, Mr. Perrong had a separate complaint pending with the Pennsylvania Public Utilities Commission ("PUC Proceeding") based on the same allegations that form the basis for his complaint here.[56] Frontier made multiple attempts before October 20, 2020, to resolve the PUC Proceeding with Mr. Perrong. Mr. Perrong completely rebuffed all attempts at resolution, culminating on October 2, 2020, when he stated

---

[56] The PUC complaint was resolved before Mr. Perrong filed the instant class action lawsuit.

"Please don't contact me about attempting to settle this again, that ship has sailed.  I look forward to the hearing."[57]  Then, on October 20, 2020, the *very same day* that Mr. Frey was taken into federal custody, Mr. Perrong, out of nowhere, reached out to discuss settlement.  In that correspondence, he left the settlement offer open for only two days because "time is of the *extreme essence* in this matter."[58]  The timing and the urgency of Mr. Perrong's sudden interest in settling the PUC Proceeding strongly suggest that this was not a coincidence.  Not to mention, Mr. Perrong's counsel here had contacted Frontier on that same day and then included Mr. Perrong in the November 2, 2020 demand letter to Frontier.[59]

Individuals who knowingly withhold material information and engage in repeated and affirmative misrepresentations all to protect their own interests are not fulfilling their fiduciary duties to the putative class members and thus cannot be approved by the Court under Rule 23 as adequately representing the interests of the class.  Because this case cannot be sustained as a class action as pleaded, it follows that the *Perrong* Action should be dismissed.[60]

## IV.  CONCLUSION

Joint Counsel fraudulently induced Frontier into a purported class action settlement of the *Frey* and *Perrong* Actions.  They willfully hid Mr. Frey's pending criminal charges, affirmatively misrepresented the reasons for Mr. Frey's inability to participate in the mediation by ZOOM, and intentionally filed the Approval Motion in this Court, which they knew at the time of filing, contained materially false or misleading statements.  This conduct constitutes bad faith litigation and demonstrates a lack of candor.  For these reasons, the Court should issue sanctions against

---

[57]     *See* Ex. K, Email from A. Perrong to D. O'Dell (Oct. 2, 2020).

[58]     *See* Ex. L, Email from A. Perrong to D. O'Dell (Oct. 20, 2020) (emphasis added).

[59]     *See* Ex. B, Daly Decl. ¶ 6; Ex. C, Letter from Joint Counsel to Frontier (Nov. 2, 2020).

[60]     Frontier does not dispute that Mr. Perrong may be entitled to refile his individual claim in his individual capacity should he wish to do so.

Joint Counsel pursuant to its inherent authority and order Joint Counsel to pay Frontier's attorneys'

fees and costs.  Moreover, this case should be dismissed, because neither Mr. Perrong nor Joint

Counsel can adequately represent the interests of the class, and the Court should grant any other

relief that the Court deems just and proper.

Dated:  April 17, 2021                                    Respectfully submitted,


                                                          /s Michael P. Daly
                                                          Michael P. Daly (Pa. Bar No. 86103)
                                                          Faegre Drinker Biddle & Reath LLP
                                                          One Logan Square, Ste. 2000
                                                          Philadelphia, PA 19103-6996
                                                          Phone:  215.988.2700
                                                          Fax:  215.988.2757
                                                          michael.daly@faegredrinker.com

                                                          Marsha J. Indych
                                                          (Motion for *pro hac vice* admission
                                                          forthcoming)
                                                          Faegre Drinker Biddle & Reath LLP
                                                          1177 Avenue of the Americas, 41st Floor
                                                          New York, New York 10036-2714
                                                          Phone:  212.248.3140
                                                          Fax:  212.248.3141
                                                          marsha.indych@faegredrinker.com

                                                          *Counsel for Defendant*
                                                          *Frontier Utilities Northeast, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on the date set forth below, I served the foregoing document on all counsel of record who have entered an appearance via the Court's CM/ECF system.

Dated: April 17, 2021              By:   *_/s/  Michael P. Daly_____*
                                                 Michael P. Daly