# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW PERRONG,<br><br>Plaintiff,<br><br>v.<br><br>FRONTIER UTILITIES NORTHEAST LLC and NEXT GENERATION ENERGY, INC.,<br><br>Defendants. | Civil Action No. 20-05844-MSG |

## DECLARATION OF MICHAEL P. DALY

I, Michael P. Daly, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am a Partner at Faegre Drinker Biddle & Reath LLP.

2. I have been with the firm (and its predecessor firm) since 2001.

3. I have two decades of experience in consumer litigation, including representing defendants in Telephone Consumer Protection Act litigation.

4. I also co-chair two class action subcommittees of the American Bar Association's Section of Litigation: the Class Actions subcommittee of the Consumer Litigation Committee and the Rule 23 of subcommittee of the Class Actions and Derivative Suits Committee.

5. I am counsel for Defendant Frontier Utilities Northeast LLC ("Frontier") in this action and a related action over which the Honorable Karen S. Marston is currently presiding. *See Frey v. Frontier Utilities Northeast LLC, et al.*, No. 19-2372 (E.D. Pa.) (the "*Frey* Action").

6. On October 20, 2020, I received an unsolicited call from Anthony Paronich, who is co-counsel for Plaintiff Jon Frey and Plaintiff Andrew Perrong.

1

7. During that call, Mr. Paronich asked for the first time if Frontier would be interested in settling the *Frey* Action. Mr. Perrong had not filed his Class Action Complaint at that time.

8. Mr. Paronich further stated that his interest in settlement stemmed from the recent nomination of Justice Amy Coney Barrett to the Supreme Court, which was about to consider the Telephone Consumer Protection Act's definition of an "automatic telephone dialing system." (Justice Barrett had authored the Seventh Circuit's opinion in *Gadelhak v. AT&T Services, Inc.*, 950 F.3d 458 (7th Cir. 2020), which had narrowly interpreted that term.)

9. On October 28, 2020, I had another telephone call with Mr. Paronich to discuss the possibility of settling the *Frey* Action, as well as other alleged TCPA claims and putative class claims against Frontier.

10. During that discussion, Mr. Paronich agreed to provide Frontier with a formal settlement demand.

11. On November 2, 2020, Mr. Paronich sent me a settlement demand for the *Frey* Action and the claims that were eventually asserted in this action a few weeks later.

12. On January 22, 2021, one of my colleagues sent Mr. Paronich and his co-counsel Frontier's formal response to the November 2, 2020 settlement demand.

13. On January 24, 2021, Mr. Paronich responded with an "authorized" counteroffer and suggested that the parties attend a mediation with retired Judge Morton Denlow of JAMS. On January 28, 2020, the parties agreed to retain the Judge Denlow to mediate the dispute.

14. On February 3, 2021, Judge Denlow conducted a pre-mediation conference call.

15. During that call, Mr. Paronich stated that Mr. Perrong would participate in the mediation by videoconference but that Mr. Frey could only participate by telephone because he had to work that day.

16. Mr. Paronich further stated that Mr. Perrong and Mr. Frey were able to adequately represent the interests of the putative class.

17. On February 4, 2021, Mr. Paronich submitted to Judge Denlow and Frontier the Class Action Checklist that Judge Denlow requires in all of his class action mediations.

18. That checklist asks counsel to identify any issues that may result in objections to a classwide settlement.

19. Plaintiffs' response to that question was as follows: "Focusing the settlement on a non-reversionary fund and ensuring that there are proper protections against Fraud for publication claimants will be important to avoid objections."

20. On February 16, 2021, Judge Denlow conducted a nearly twelve-hour mediation.

21. Mr. Frey participated in the mediation by telephone and the other parties and their counsel all participated by videoconference.

22. When Judge Denlow asked during the mediation whether there were impediments to a classwide settlement, Mr. Paronich and his clients stated that they were not aware of any.

23. Between February 17, 2021 and March 9, 2021, the parties continued to negotiate the terms of the settlement agreement.

24. On March 9, 2021, Mr. Paronich sent Frontier a copy of a settlement agreement that purported to be signed by both Mr. Perrong and Mr. Frey.

25. Frontier countersigned that document on March 9, 2021.

26. Between March 10, 2021 and March 27, 2021, the parties negotiated the form of a preliminary approval motion. That motion was not filed by Plaintiffs.

27. Between October 20, 2020 and March 27, 2021, I had numerous conversations with Mr. Paronich and exchanged emails with Joint Counsel. At no point during any of my

communications with Joint Counsel did they inform me that Mr. Frey was in federal custody or facing criminal charges for possession and distribution of child pornography.

28. I first learned that fact on March 27, 2021, after Michele Blythe, Managing Attorney at Frontier for Litigation, became aware of the charges that day after searching Mr. Frey's name in PACER.

29. On March 29, 2021, Michele Blythe sent Plaintiffs' counsel a letter informing them about the material breach of the settlement agreement due to their failure to disclose Mr. Frey's criminal charges.

30. Mr. Paronich responded by email less than twenty-five minutes later.

31. Nowhere in his response did Mr. Paronich express surprise at or deny Joint Counsel's or Mr. Perrong's knowledge of Frey's criminal charges.

32. I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 16, 2021                         */s/ Michael P. Daly*
                                              Michael P. Daly