# Exhibit G

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JON FREY,<br><br>                Plaintiff,<br><br>    v.<br><br>FRONTIER UTILITIES NORTHEAST LLC and ENERGY ACQUISITIONS GROUP LLC,<br><br>                Defendants. | Civil Action No. 19-2372-KSM |

**PLAINTIFF'S CLASS ACTION CHECKLIST**

**I.      Class Definition**

All persons in the United States to whom Frontier or anyone acting or purporting to act on Frontier's behalf made or tried to make any of the following calls between March 31, 2015, and the date of preliminary approval:

    (a)    one or more calls made using an automatic telephone dialing system, dialing platform, or other dialing equipment, to a number assigned to any paging service, cellular telephone service, specialized mobile radio service, radio common carrier service, or service for which the called party is charged for the call;

    (b)    one or more calls initiated using an artificial or prerecorded voice; and/or

    (c)    one or more calls to a telephone number while it was on the national Do-Not-Call Registry, a state Do-Not-Call Registry, or Frontier's internal do-not-call list.

Excluded from the Settlement Class are: (1) the Judges and Magistrate Judges presiding over the Actions and members of their immediate families; (2) the Defendants, their parent companies, successors, predecessors, and any entities in which the Defendants or their parents have a controlling interest, and Defendants'

current and former officers and directors; (3) persons who properly execute and timely file a request for exclusion from the class; and (4) the legal representatives, successors, or assigns of any such excluded person(s).

The settlement agreement will define "Calls" to include both telephone calls and text messages.

### A. Define the Class Period

Done above

### B. Define the Members of the Class

Done above

### C. Estimated Class size

Since the call centers used by Frontier's vendors are, in part, located overseas, it's not currently viable to definitively state the size of the class.

### D. Possible sub-classes

None.

## II. Form and Scope of Release
### A. Define claims to be released

**Released Claims.** Any and all claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses, and attorneys' fees of any nature whatsoever, whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory, of every nature and description whatsoever, as of the date of the Final Approval Order, that arise out of or relate in any way to the Released Parties' use of any telephone, any telephone or dialing equipment, text message or other messaging system, any dialing systems or tools, an "automatic telephone dialing system," or an "artificial or prerecorded voice" to contact or attempt to contact Members of the Settlement Class. This release expressly includes, but is not limited to, all claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (the "TCPA"), the TCPA's implementing regulations, 47 C.F.R. § 64.1200, et seq., the Telemarketing Sales Rule, 16 C.F.R. § 310, et seq.

2

(the "TSR"), any corollary or state laws similar to the TCPA and TSR, or enactment of any other statutory, regulatory or common law claim arising thereunder.

### B. Claims raised in the complaint

Claims raised in both complaints are included.

### C. Other claims

This release captures the nexus of telemarketing contact by, or on behalf of, Frontier.

### D. Identify parties to be released

**Releasing Parties.** Plaintiffs and the Members of the Settlement Class (whether or not such Members submit Claim Forms), and their respective assigns, heirs, successors, predecessors, parents, subsidiaries, officers, directors, shareholders, members, managers, partners, principals, representatives, and employees (each solely in their respective capacity as such), and all those who claim through them or who assert claims (or could assert claims) on their behalf.

**Released Parties.** Frontier and each of its past, present, and future members, owners, direct and indirect parents, subsidiaries, managers, divisions, predecessors, successors, holding companies, and affiliated companies and corporations, and each of the past, present, and future directors, officers, managers, employees, contractors, general partners, limited partners, investors, controlling persons, owners, trustees, principals, agents, associates, administrators, insurers, reinsurers, shareholders, attorneys, accountants, advisors, consultants, assignors, assignees, representatives, fiduciaries, predecessors, successors, divisions, joint ventures, or related entities of those companies including, but not limited to, the vendors, subvendors, contractors, subcontractors, and service providers retained to make calls (or which was involved in making calls for which another of the Released Parties). The release of any third parties is limited to any actions taken on behalf of Frontier.

### E. Exceptions to release, if any

The proposed release is consistent with what the parties have discussed in their prior settlement discussions. However, the Plaintiffs have added (and previously raised) the need for limiting language that made clear that the release of any third parties is limited to any

3

actions taken on behalf of Frontier Utilities. The reason for this is two-fold and mutually beneficial. First, the Plaintiffs will not want to impact other non-Frontier litigation that may involve the same third party vendors Frontier used for calling. For instance, as explained in our demand letter, Plaintiffs' counsel (and Mr. Perrong) have a pending case against Sperian Energy that has an overlap in vendors. Furthermore, this would invite objectors. Second, from Frontier's perspective, they almost certainly don't want to pay for a release that could benefit their competitors.

### III. Monetary Relief or Other Consideration
#### A. Fund Case

The Plaintiffs have proposed a ▓▓▓▓▓▓ common fund.

**1. Payments to class**

Included.

**2. Cost of notice**

Included.

**3. Cost of administration**

Included.

**4. Attorney's fees**

Included.

**5. Incentive award**

Included.

**6. Other**

N/A

#### B. Non-Fund Case

N/A

4

IV. **Reverter or No Reverter to Defendants:** N/A
    A. **What happens to unclaimed funds**
    B. **Possible second round of distributions**
    C. **Setting a floor alternative**

V. **Cy Pres**
    A. **What portion of unclaimed funds, if any**

The Plaintiffs believe that after a second round of distributions to claimants, a Cy Pres payment should be made.

    B. **Type of organization to receive funds**

The National Consumer Law Center, who focuses on consumer related issues, including privacy rights and the TCPA.

VI. **Non-Monetary Relief**
    A. **Stop existing practice**

    The Plaintiffs believe that a subsequent remedial measure statement should be made in the settlement agreement that will allow the parties to explain to the Court how it is unlikely that Frontier's vendors will receive telephone numbers that are on the National Do Not Call List for contact.

    B. **New practices**
    C. **Agreement to make change**
    D. **Injunctive relief: N/A**
    E. **Other**

VII. **Administration**
    A. **Third Party Administrator**

    The parties have preliminarily agreed to use KCC, a third party administrator with experience in deregulated energy TCPA class action settlements.

    B. **Party Administrator: N/A**
    C. **Costs – Out of Fund or an extra**

    Out of the Fund

**VIII. Form of Notice**
    **A. Are there lists or other means of class identification**

    Direct e-mail notice will be sent to customers of Frontier during the putative class period that were acquired by telemarketing vendors.

    **B. Mail**

    For any customers of Frontier during the putative class period that were acquired by telemarketing vendors where an e-mail address is either (a) unavailable or (b) bounces back/is rejected, direct mail notice will be sent.

    **C. Internet**

    The administrator will develop and maintain a case-specific settlement website during the administration of the settlement.

    **D. Publication**

    Due to the fact that calling data has been lost or is overseas, regionalized (where Frontier offers services), internet based publication notice will be necessary.

    **E. Estimate of cost of notice**

    The Plaintiffs are unable to estimate the cost of notice without knowing the amount of individuals who will have e-mail notice attempted to be sent to them.

    **F. Costs – Out of fund or an extra**

    Out of fund.

**IX. Claims Process**
    **A. Claims Made: N/A**
        1. **Estimated claims rate**
        2. **Estimate of payment per claim**
    **B. No Claim Necessary**

    Due to the unavailability of calling records, a claims process is necessary.

    **C. Pro rata distribution**

       Each valid claimant will receive a pro rata distribution.

    **D. Tax treatment**

       In the unlikely event that each claimant receives more than $599, the administrator will be responsible for distributing the appropriate tax forms.

**X. Opt-Outs**
    **A. Possible blow up provision in the event of \_\_\_% or \_\_\_ number of opt outs**

       The Plaintiffs do not believe any such provision is necessary.

**XI. Possible Objectors – Anticipate issues**

       Focusing the settlement on a non-reversionary fund and ensuring that there are proper protections against Fraud for publication claimants will be important to avoid objections.

**XII. Attorney's Fees -- Will be discussed at the end of negotiations, but no clear sailing provision required.**
    **A. When to discuss –**
    **B. Amount – Percentage or Specific Number**
    **C. Past practice by Plaintiffs' counsel**

**XIII. Incentive Award to Named Plaintiffs -- Will be discussed at the end of negotiations, but no clear sailing provision required.**
    **A. When to discuss**
    **B. Amount**
    **C. Past practice by Plaintiffs' counsel**

**XIV. Confirmatory Discovery – None necessary**
    **A. Is it necessary**
    **B. If so, what is the scope and methods of discovery**

**XV. Approval Process**
    **A. Federal**
    **B. State**
    **C. Know Your Judge**

The settlement will be submitted for approval in Federal court and the parties should discuss which Court it should be submitted to. Indeed, the Court in *Frey* appears to have experience is resolving only one class action and has closely scrutinized a number of factors that are atypical to see, especially at the preliminary approval stage. *See Wood v. Saroj & Manju Invs. Phila., LLC*, 2020 U.S. Dist. LEXIS 243700 (E.D. PA., December 28, 2020) (15-page decision on preliminary approval for a $250,000 FLSA settlement. This followed an instruction from the Court to file an amended motion following the first preliminary approval hearing).  The *Perrong* Court has a much longer and broader base of experience in dealing with class actions including extremely complex settlements and may be in a better position to facilitate a resolution in a more timely and efficient manner.  *See, e.g.*, *Vista Healthplan, Inc. v. Cephalon, Inc.*, E.D.Pa. No. 2:06-cv-1833, 2020 U.S. Dist. LEXIS 69614 (Apr. 20, 2020); *California v. Teva Pharmaceutical Industries*, E.D.Pa. No. 19-3281, 2020 U.S. Dist. LEXIS 102992 (June 10, 2020); *King Drug Co. of Florence v. Cephalon, Inc.*, E.D.Pa. , 2015 U.S. Dist. LEXIS 197311 (Oct. 15, 2015); *Alvarez v. BI Inc.*, E.D.Pa. No. 16-2705, 2020 U.S. Dist. LEXIS 60656 (Apr. 6, 2020); *Wahpoe v. Staffmore LLC*, E.D.Pa. No. 19-1268, 2020 U.S. Dist. LEXIS 169314 (Sep. 16, 2020).

**XVI. Steps Necessary to Obtain Preliminary Approval by the Court**
  A. **Settlement agreement –** if the parties are able to reach an agreement at the mediation, they will do so with a binding and enforceable term sheet. From the date of signature, the Plaintiffs will prepare a settlement agreement within seven days for Frontier's review and the parties agree that the agreement will be submitted to the Court within 14 days after that, along with the preliminary approval motion.
  B. **Motion for preliminary approval –** See above.
  C. **Reference to the mediation** – Yes.