UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW PERRONG, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>FRONTIER UTILITIES NORTHEAST LLC and NEXT GENERATION ENERGY, INC.,<br><br>Defendants. | Case No. 2:20-cv-05844-MSG |

## PLAINTIFF'S OPPOSITION TO DEFENDANT FRONTIER UTILITIES NORTHEAST LLC'S MOTION FOR SANCTIONS

In response to Defendant Frontier Utilities Northeast LLC's ("Frontier's") Motion for Sanctions, Plaintiff incorporates by reference his Motion for Leave to File Instanter Reply in Support of Motion for Preliminary Approval of a Class Action Settlement (Doc. 20), his attached proposed Reply in Support of Motion for Preliminary Approval of a Class Action Settlement (Doc. 20-1), and his Memorandum in Opposition to Frontier's Motion to Strike (Doc. 17) as if fully set forth herein. Plaintiff does not believe it is necessary or helpful to the Court to multiply these proceedings more than Frontier already has[1] by repeating the reasons why the same arguments Frontier has already advanced in its other briefs do not have any merit. At all times, Plaintiffs' counsel correctly recognized that their fiduciary duties were not to their adversary but to their clients and the class and acted accordingly. In full compliance with their ethical obligations, and keeping the interests of the class paramount, Plaintiffs' counsel negotiated with Frontier at arm's length. Frontier feigns concern over the interests of the class but only does so

---

[1] Frontier also filed a "Request to Lift Stay" in the *Frey* case. *See Frey v. Frontier Utilities Ne. LLC, et al.,* No. 2:19-cv-02372-KSM, Doc. 101 (E.D. Pa. Apr. 19, 2021).

in service of its argument that it should be allowed to back out of the settlement and pay the class nothing. The truth is, thanks to Mr. Frey's, Mr. Perrong's, and Plaintiffs' counsel's efforts, the class obtained an excellent result. After aggressively fighting Plaintiffs at every turn in the litigation and then driving a hard bargain during a 12-hour mediation session, Frontier ultimately entered into a binding agreement to pay the class $3,200,000.

While the vast majority of Frontier's brief rehashes its same arguments already set forth in other briefs, Frontier discusses at length a case it has not previously cited, *In re Bavelis*, 743 F. App'x 670 (6th Cir. 2018). The circumstances in that case are far afield from the circumstances here. *Bavelis* involved a scheme by which an individual, Doukas, attempted to collect on a note he had no interest in. *Id.* at 672-673. Doukas had no interest in the note because unbeknownst to the issuer of the note, Bavelis, Doukas's company, Quick Capital, had assigned its interest in the note to another entity that Doukas did not own. *Id.* Throughout the litigation, Doukas and his counsel made numerous intentional misrepresentations in order to conceal the assignment. As the Sixth Circuit explained, the bankruptcy court awarded sanctions because:

> Doukas failed to mention the assignment in several discovery requests, even though the assignment was clearly responsive to the question asked or the documents requested. [Doukas and his counsel] also filed multiple documents with the bankruptcy court in which they failed to disclose the Assignment and even went so far as to make the false representation that Quick Capital was a creditor of the bankruptcy estate post-Assignment. Further, Doukas took several positions in the case that ran directly counter to [the assignee's] interests as a creditor; if Doukas had been truthful with Bavelis and the Court about the Assignment, Bavelis would not have been required to respond to arguments that served only the interests of Doukas and Quick Capital. Finally, Doukas frustrated Bavelis's efforts to reach a settlement. Although Quick Capital no longer owned the note, Doukas attended a settlement conference. But the extent of the adversity between Doukas and [the assignee] meant that the claim negotiations between Doukas

> and Bavelis had no chance of resolving the Claim. In July 2013, Bavelis's counsel uncovered the assignment during discovery in unrelated litigation. Counsel brought the assignment to the bankruptcy court's attention during a status conference in August, but [Doukas's counsel] falsely claimed that he had previously told Bavelis's counsel about the assignment.

*Id.* at 672-674 (citations omitted). Here, unlike in *Bavelis*, Frontier does not argue that Plaintiffs' counsel misrepresented anything in the underlying litigation, either in discovery or to the Court. In fact, Frontier did not issue any discovery requests to which information about the charges against Mr. Frey would have even been responsive. Furthermore, for the reasons Plaintiff has previously explained, Plaintiffs did not misrepresent anything in settlement negotiations. Unlike in *Bavelis*, where negotiations between Doukas and Bavelis had no chance of resolving the pending claim, the negotiations between Mr. Frey, Mr. Perrong, and Frontier resulted in a class action settlement agreement that fully resolved each Plaintiff's case against Frontier. The criminal charges against Mr. Frey in no way deprived him of standing to assert his TCPA claim, nor did the charges render him inadequate to be a class representative. Finally, it should be noted that unlike *Bavelis*, where the information concealed could only be discovered through discovery in another action, the information allegedly "concealed" here was publicly available on the first page of Google search results from searching "Jon Frey" or by updating the PACER search Frontier had already done to attack Mr. Frey earlier in the litigation.

Frontier also cites two other cases not cited in its other briefs to support the proposition that courts "regularly" award sanctions for counsel's bad faith conduct in settlement negotiations. These cases are likewise inapposite.

*Sheppard v. River Valley Fitness One, L.P.*, 428 F.3d 1 (1st Cir. 2005) involved a health club that was sued for sexual harassment by one of its employees. *Id.* at 3. The manager of the health club also proceeded to sue the health club, alleging he was fired for reporting the sexual

3

harassment. *Id.* The health club filed counterclaims against each plaintiff accusing them of conspiring to fabricate their lawsuits. *Id.* The health club settled with the manager for a Stipulation of Judgment of $50,000, but the judgment was a ruse, as the health club agreed to accept $100 from the manager in satisfaction of that judgment (and the $100 was never even paid). *Id.* at 3-4, 9-10, 12 n.7. The health club then attempted to use the worthless $50,000 judgment to intimidate the sexual harassment victim into paying the health club $50,000, sending her a letter offering to settle in exchange for a $50,000 payment and telling her that it was clear that after being presented with extensive evidence, the manager and his counsel came to the conclusion that the litigation had only one outcome (*i.e.*, the health club prevailing on its counterclaim) and proceeded to settle for the $50,000 judgment. *Id.* at 3-4, 9-10. The court found that the health club's affirmative conduct of trying to intimidate the sexual harassment victim into settling using the worthless $50,000 judgment gave rise to a duty to disclose that it agreed to accept $100 in satisfaction of the judgment. *Id.* at 9-10. Here, Plaintiffs did not do anything to affirmatively use the pending charges against Mr. Frey to intimidate or induce Frontier into settling. The subject of whether there were any criminal charges against Mr. Frey was simply never raised by anyone. It is impossible to even conceive of a scenario by which Plaintiffs *could have* misled Frontier as to those charges because if they made any representations having to do with the subject, Frontier could simply Google his name and view the public records about Mr. Frey for itself.

*In re Kyung Suk Kim*, No. 06-00157, 2010 Bankr. LEXIS 118 (Bankr. D. Haw. Jan. 14, 2010) likewise has no application here. In that case, the court awarded sanctions where a party in bad faith filed a motion to remove a trustee that was meritless in its own right and also accompanied that motion with "a barrage of threatening communications, in an improper effort

to 'up the ante' and bully the trustee into a settlement." *Id.* at *22-23.  Here, Plaintiffs did not file any meritless motions, and Frontier has never argued that it ever felt threatened or bullied by Plaintiffs' counsel.  Again, there is no way the charges against Mr. Frey could have even conceivably been used to threaten or bully Frontier when full information on the charges was available on Google and other public sources.

At bottom, all Frontier is complaining about is nondisclosure of a fact that Frontier surely wishes it had researched before entering into the Settlement Agreement, but which Plaintiffs' counsel was under no duty to disclose.  This case is nothing like the limited cases Frontier cites where courts have imposed sanctions under their inherent authority.

## CONCLUSION

For the foregoing reasons, Frontier's Motion for Sanctions should be DENIED.

Respectfully submitted,

**/s/ Joseph F. Murray**
Joseph F. Murray (327025)
Brian K. Murphy (admitted *pro hac vice*)
Jonathan P. Misny (admitted *pro hac vice*)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
Telephone: 614.488.0400
Facsimile: 614.488.0401
E-mail: murray@mmmb.com
       murphy@mmmb.com
       misny@mmmb.com

Anthony I. Paronich (admitted *pro hac vice*)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

*Attorneys for Plaintiff and the Proposed Settlement Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 3, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to all counsel of record.

                                        **/s/ Joseph F. Murray**
                                        Joseph F. Murray