## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW PERRONG, individually and on behalf of a class of all persons and entities similarly situated,<br><br>      Plaintiff,<br><br>vs.<br><br>FRONTIER UTILITIES NORTHEAST LLC and NEXT GENERATION ENERGY, INC.,<br><br>      Defendants. | Case No. 2:20-cv-05844-MSG |

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT

**I.     The Settlement Agreement is binding on Frontier.**

Frontier argues the Settlement Agreement cannot be approved because Frontier was fraudulently induced into entering into the Agreement. However, nothing resembling fraudulent inducement occurred. The elements of fraudulent inducement are:

> (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

*Paramount Fin. Commc'ns, Inc. v. Broadridge Inv. Commc'n Sols., Inc.*, No. 15-405, 2019 U.S. Dist. LEXIS 114699, at *48 (E.D. Pa. May 23, 2019) (citation omitted). Plaintiffs did not make any false representations to Frontier, nor did they attempt to mislead Frontier into relying on anything Plaintiffs said or didn't say. And Frontier did not so rely. Accordingly, the Settlement Agreement remains binding on Frontier.

   A.   *Plaintiffs did not make any false representations.*

Plaintiffs did not make any false representations concerning Mr. Frey.

First, Frontier argues that Plaintiffs' counsel made a misrepresentation when he called Frontier's counsel on October 20, 2020 and stated that Plaintiffs were interested in exploring settlement because they were concerned the Supreme Court might narrowly interpret the TCPA's definition of an "automatic telephone dialing system" ("ATDS") in *Facebook, Inc. v. Duguid*, No. 19-511, 2021 U.S. LEXIS 1742 (U.S. Apr. 1, 2021). This was a true representation. Plaintiffs legitimately had this concern. (*See* Exhibit 1, Declaration of Anthony Paronich ("Paronich Decl.") at ¶ 2.) And they were right to be concerned, as the Supreme Court later went on to interpret the definition of an ATDS narrowly. *See Facebook,* 2021 U.S. LEXIS 1742.

1

Frontier does not argue that Plaintiffs didn't have this concern. Nor does Frontier argue that Plaintiffs' counsel told them this concern was the sole reason they were interested in exploring settlement. Frontier's argument is that disclosing this one reason Plaintiffs were interested in exploring settlement imposed upon Plaintiffs' counsel an affirmative duty to inform Frontier's counsel of all other reasons Plaintiffs were interested in settling, *i.e.*, an affirmative duty to educate one's adversary as to all weaknesses in one's case, or at least any weaknesses that would impact the adversary's decision to settle.

No such duty exists. That much is clear from reading Frontier's own brief. Frontier cites only one case in support of the existence of a duty to disclose facts to one's adversary in settlement discussions—an out-of-circuit case from 1983 where the fact in question was that the attorney's client, whom the attorney was still purporting to represent, *had died*. *See Virzi v. Grand Trunk Warehouse & Cold Storage Co,* 571 F. Supp. 507 (E.D. Mich. 1983). In *Virzi*, the plaintiff's attorney failed to inform the court of the plaintiff's death or to move for substitution of parties and thereby led the court to enter an order of settlement for a non-existent party. *Id.* at 511-512. The court held there was unquestionably a duty to inform the court of the plaintiff's death in order to prevent the court from entering that order. *Id.* As to whether there was a duty to disclose the plaintiff's death to opposing counsel prior to negotiating a settlement on behalf of that dead plaintiff, the court considered this question to be "a more difficult judgment call." *Id.* at 512. The court noted that the comments to Rule 4.1 of the Model Rules of Professional Conduct state, "A lawyer is required to be truthful in dealing with others on a client's behalf, but **generally has no affirmative duty to inform an opposing party of relevant facts."** *Id.* at 510 (emphasis added). However, the court made an exception to the general rule and held that the attorney should not have purported to represent a dead client in settlement negotiations,

2

particularly where the client's death was material to the opposing party's willingness to settle. *Id.* at 512.

Frontier uses this case and this case alone to support its argument that Plaintiffs' counsel owed Frontier a duty to inform Frontier of everything that could potentially impact Frontier's willingness to settle, whether Frontier ever asked for the information or not. But the court in *Virzi* never suggested its holding could be extended so broadly. To the contrary, the court recognized that attorneys generally do not owe their adversaries a duty to voluntarily disclose anything. Moreover, the circumstances here are obviously very different from the dead client scenario in *Virzi*. Mr. Frey is not dead, nor does he otherwise lack standing to pursue claims under the TCPA. Plaintiffs' counsel continue to represent Mr. Frey and communicate with him regarding the case, as they did throughout settlement negotiations. (Paronich Decl. at ¶ 3.) As Plaintiffs previously explained, Mr. Frey is willing and able to be appointed as a class representative in the event the Court deems him necessary to preserve the parties' settlement. (*See* Exhibit 2, Declaration of Jon Frey ("Frey Decl.") at ¶ 2.) Under Frontier's own case law, there was no duty to volunteer information to Frontier about the criminal charges against Mr. Frey. Nor has any other court recognized such a duty. *See Guidotti v. Del Prince*, No. GD 09-008835, 2012 Pa. Dist. & Cnty. Dec. LEXIS 67, at *13-16 (finding with respect to settlement discussions that "[m]ere silence, in the absence of a duty to speak, is insufficient [to constitute fraud]. The duty to disclose arises where there is a confidential or fiduciary relationship between the parties involved."); *Maertin v. Armstrong World Indus.*, 241 F. Supp. 2d 434, 461-462 (D.N.J. 2002) (no duty to disclose anything because the arm's length negotiation of a personal injury settlement did not create a fiduciary relationship between the parties, as "it ordinarily would be anomalous to require a [party] to act as a fiduciary for interests on the opposite side of

3

the negotiating table" and the plaintiffs did not express trust and confidence in the defendant during the settlement negotiations because they "were represented by their own able counsel") (quoting *Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47, 53 (3d Cir. 1988)).

The second misrepresentation Frontier alleges is that Plaintiffs' counsel allegedly stated during a pre-mediation conference call with the mediator that Mr. Frey could only participate by telephone because he had to work that day. Once again, Frontier has failed to show this statement was false. In fact, the Court wouldn't know it from reading Frontier's brief, but Plaintiffs' counsel has already directly explained to Frontier that his statement as to Mr. Frey's participation by telephone was true. (*See* Paronich Decl. at ¶ 4, Ex. A.) Nowhere does Frontier inform the Court that Plaintiffs' counsel substantively responded to the allegations in Frontier's "Notice of Breach" letter. Instead, Frontier represents to the Court: "And when Frontier asked Plaintiffs and Joint Counsel to explain their conduct and told them that there was no settlement, they said nothing. Instead, they filed Plaintiff's Motion for Preliminary Approval of Class Action Settlement …." (Doc. 18 at p. 1; *see also id.* at p. 7.) For Frontier and its counsel to argue that the Court should hold Plaintiffs' counsel to a duty of voluntary disclosure to them far beyond any duty that has ever been recognized, at the very same time that they fail to inform the Court that Plaintiffs substantively responded to their "Notice of Breach" letter, is inconsistent to say the least. But it is easy to see why Frontier wouldn't want the Court to review Plaintiffs' response—because it confirms Plaintiffs did not make any false statements and Frontier has no rebuttal.

As Plaintiffs have already explained to Frontier, the statement about Mr. Frey participating by telephone so he could work the day of the mediation was true. (*See* Paronich Decl. at ¶ 4, Ex. A.) As Frontier knows from the litigation, Mr. Frey owns a company, Richmond Computer, that provides technology support services. (Frey Decl. at ¶ 3.) The company continues

4

to operate and has employees. (*Id*.) As was the case on the day of the mediation, Mr. Frey continues to have work obligations for Richmond Computer, including consulting with his employees. (*Id.* at ¶¶ 3-4.) Participation by telephone is a common occurrence in Zoom videoconferences, and nobody had a problem with Mr. Frey participating in this manner. As with the statement about being concerned about the *Facebook* ruling, Plaintiffs' counsel did not have a duty to explain to their adversary all of their or their clients' reasons behind a course of action.

The third misrepresentation Frontier alleges is an alleged statement that Plaintiffs were adequate class representatives. This was also true. Mr. Frey is an adequate class representative. For this same reason, the other misrepresentations Frontier alleges, which consist of failing to identify the charges against Mr. Frey as an impediment to settlement or as grounds for objecting to the settlement, are also not misrepresentations. Frontier argues that "Mr. Frey's felony indictment raises an insurmountable barrier to his adequacy" but has no case law to support this proposition. Frontier suggests that in *Dunford v. Am. DataBank, LLC*, 64 F. Supp. 3d 1378 (N.D. Cal. 2014), it was only "charges" for felony first-degree burglary, vandalism, and aggravated trespass that rendered the class representative inadequate, but the court explained that she was a previously convicted felon, had a lengthy and ongoing criminal history, and had ongoing alcoholism-related problems, as demonstrated by her arrest the day before the class certification hearing for entering the wrong apartment while intoxicated, resulting in an aggravated trespass charge to which she pled guilty. The court never held that a felony charge was an insurmountable obstacle for a class representative; it held that Rule 23(a)(4) was not satisfied because "Ms. Dunford *has shown herself* to be too distracted by her own criminal defense and alcohol-related issues to be able to vigorously represent the best interests of absent class members." *Id.* at 1396-1397 (emphasis added). The court was particularly concerned that there was an upcoming

settlement conference and ultimately decided it was unwilling to entrust the duty of representing the class in those negotiations to Ms. Dunford. *Id.* at 1396.

Here, Mr. Frey has already demonstrated that despite the charges against him, he would be a more than adequate class representative if he is deemed necessary to fulfill the settlement. As an initial matter, it should be noted that Mr. Frey has no prior criminal history and hasn't been convicted of anything. (Frey Decl. at ¶ 5.) That alone separates him from the putative class representatives in Frontier's case law. In this country, Mr. Frey is innocent until proven guilty. But more importantly, the adequacy inquiry isn't about judging a person based on their criminal record—it is about identifying potential conflicts of interest. The inquiry is simply whether there are "conflicts of interest between [Mr. Frey] and the class [he] seek[s] to represent." *McCall v. Drive Fin. Servs., L.P.*, 236 F.R.D. 246, 250 (E.D. Pa. 2006). As Plaintiff pointed out in his opening brief, this court has found that "unrelated unsavory, unethical, or even illegal conduct" is "irrelevant to the issue of adequacy to represent a class for particular claims or issues." *Id.* at 251 (citation omitted) (finding convicted felon adequate). In *McCall*, this court found that cases finding convicted criminals inadequate were distinguishable because in every case, there was a "close relationship between the criminal conduct and the subject matter of the lawsuit" and that cases finding individuals inadequate due to concerns over dishonesty or credibility were likewise distinguishable because they "all involve[d] representatives who were dishonest or lacked candor about matters central to the litigation itself." *Id.* at 251-252. In other words, what created the conflict of interest was the potential for the criminal or dishonest conduct to defeat the class representative's claim, prejudicing the class. *Id.*

Here, there is no conflict because the charge against Mr. Frey is completely unrelated to his TCPA claim. Moreover, Mr. Frey has demonstrated his interests are in complete alignment

6

with those of the class. A self-interested class representative in Mr. Frey's position would have instructed counsel to negotiate the best individual settlement they could for him as quickly as possible in hopes of obtaining a settlement payment prior to opposing counsel inevitably researching the criminal charges against him. Mr. Frey did not do this. He elevated the interests of the class above his own and authorized counsel to proceed to explore a classwide settlement for months. (Frey Decl. at ¶ 6.) Indeed, when a final obstacle to the class settlement was Frontier's refusal to allow the Plaintiffs to apply for $10,000 service awards, Mr. Frey (as well as Mr. Perrong) agreed he would only seek a $5,000 award because he did not want to allow his own interests to get in the way of an excellent recovery for the class. (*See* Doc. 18-5, p. 49; Paronich Decl. at ¶ 5.) Moreover, Mr. Frey is knowledgeable about and experienced with TCPA litigation, making him particularly well suited to protect the interests of the class. (Frey Decl. at ¶ 7.) Until Mr. Perrong asserted his claims against Frontier, Mr. Frey was the only person who stepped up on behalf of the class and took Frontier to task for its unlawful telemarketing. And in that litigation, he was an exemplary litigant. Frontier raises no concerns with Mr. Frey's conduct in connection with this case (other than not bypassing counsel and contacting Frontier directly to tell Frontier about the criminal charge against him[1]) because there are none.

Mr. Frey's pretrial conditions have in no way hampered his ability to represent the class if necessary.[2] Mr. Frey participated in the mediation session even though in Plaintiffs' counsel's

---

[1] Frontier also lodges this same complaint about Mr. Perrong but otherwise makes no real challenge that Mr. Perrong—a law student on the law review at Temple University with no criminal history—will not be able to represent the class.

[2] Even if Mr. Frey ends up being incarcerated at some later point in time, he is still adequate. *See Streeter v. Sheriff of Cook Cnty.*, 256 F.R.D. 609, 613 (N.D. Ill. 2009) ("Defendants cite no case law supporting this proposition, and indeed, if convicted felons could not serve as class representatives, there would be no such thing as a class action in the prison or jail context. Obviously, there are hundreds of cases in this district alone where prisoners or pretrial detainees with criminal convictions have served as class

7

experience, putative class representatives are not typically required to attend mediations in person. Frontier argues that Mr. Frey does not have internet access, but obviously class actions have existed since long before the internet. Mr. Frey is still able to communicate with counsel by telephone, and any written documents or communications Mr. Frey would need to review can and have been printed out for him. (Frey Decl. at ¶ 8.) Overnight mail is another available option to share any additional documents with Mr. Frey if that were to become necessary.

        B.       *Frontier's counsel did not rely on any of Plaintiffs' counsel's representations.*

Even if Frontier could show that Plaintiffs made a misrepresentation, it could not show that it relied on any such misrepresentation. Frontier argues it relied because it wouldn't have entered into the Settlement Agreement had it known of the charges against Mr. Frey. But that isn't the standard for reliance; that is the standard for materiality. *Paramount*, 2019 U.S. Dist. LEXIS 114699, at *48-49 ("A misrepresentation is material if the party would not have entered into the agreement but for the misrepresentation."). Materiality of a fact does not demonstrate a party actually relied on a representation. *See Harrison v. Cabot Oil & Gas Corp.*, 887 F. Supp. 2d 588, 594 (M.D. Pa. 2012) ("The circular argument that because Plaintiff signed the lease, he must have done so in reliance on Gayley's statement does not show a genuine issue of fact on this point, nor does it eliminate all other motives which may have caused Plaintiff to enter into the lease at issue."). Frontier has not attempted to explain how it relied on anything Plaintiffs' counsel said or didn't say in settlement negotiations, because it didn't.

As an initial matter, the Settlement Agreement is a fully integrated document. (*See* Doc. 15-1 at § 9.1). Therefore, under Pennsylvania law, Frontier is barred from arguing it relied on

---

representatives. To the extent Defendants are arguing that the named Plaintiffs have credibility problems because of their convictions that preclude them from serving as class representatives, credibility is not a requirement of a class representative, and whether or not a plaintiff is credible is irrelevant to that person's ability to be a class representative.") (citations omitted).

any representations not found in the Settlement Agreement itself. *Hart v. Arnold*, 2005 PA Super 328, 884 A.2d 316, ¶ 47. The parties' Settlement Agreement represents nothing about the adequacy of Mr. Frey or Mr. Perrong or if they have any criminal background or pending charges. If it was important to Frontier not to settle with a party that has pending criminal charges, or it was relying on Plaintiffs to tell Frontier of any such charges, it was incumbent on Frontier to ask Plaintiffs to put a representation to that effect in the settlement agreement. *Id.* ("where [a] party asserts he relied on understandings, promises or representations made prior to execution of written contract, [the] party should have protected himself by incorporating into written agreement those understandings, promises or representations upon which he now relies.") (citation omitted). But Frontier never did.

Even if we ignore Pennsylvania law and look outside of the written agreement, Frontier never asked Plaintiffs to make any representations about the Plaintiffs. Indeed, Frontier didn't even request any information *in discovery* as to whether Mr. Frey had a criminal background. Moreover, Frontier was separately motivated to settle the case. Before anything was even said about Mr. Frey participating in the mediation by telephone, Frontier offered to settle on a classwide basis for $1,250,000 in writing and agreed to mediate. (Paronich Decl. at ¶ 6.) This was despite the fact that Frontier had previously asserted challenges to Mr. Frey being appointed as a class representative. The very first substantive filing Frontier submitted in the *Frey* case (a motion to dismiss, which was denied) begins with Frontier listing other cases Mr. Frey had filed under the TCPA—presumably discovered from doing a PACER search of his name—and arguing that his filing these other cases cast doubt on the viability of his claim. *See Frey v. Frontier Utilities Ne. LLC, et al.*, No. 2:19-cv-02372-GEKP, Doc. 9 at p. 1 (E.D. Pa.). In discovery, Frontier proceeded to *subpoena Mr. Frey's wife*, who had nothing to do with the case,

9

for a deposition, further demonstrating just how invested Frontier was in its personal attack on Mr. Frey. Frontier's Answer, filed during the stay of the litigation, specifically denied the allegation in the complaint that Mr. Frey was an adequate class representative and asserted affirmative defenses that he lacked standing due to being a "professional plaintiff" and had "unclean hands." *See id.*, Docs. 36 at ¶ 77 and 90 at p. 8 ¶ 77, p. 13 ¶¶ 27-28. Yet suddenly, after no more discovery had taken place, Plaintiffs' counsel allegedly represents that Mr. Frey is "adequate" and Frontier expects us to believe that this induced Frontier to change its mind, drop the defenses it just raised, and forego updating its PACER search of Mr. Frey's other litigation activity because it is now relying on Plaintiffs' counsel's assessment as to Mr. Frey's fitness to be a class representative?[3] When Frontier's circular argument that it relied because it signed the Settlement Agreement is unpacked, the absurdity becomes readily apparent.

## II. The Court should grant preliminary approval of the Settlement Agreement.

Given that the Settlement Agreement is binding on Frontier, it should be approved for the same reasons Plaintiff set forth in his Motion. All of this discussion about Mr. Frey is really a sideshow, as he is not asking to be appointed as a class representative. Mr. Perrong can and should be appointed to represent the class, and the parties' Settlement Agreement should be approved.

---

[3] It should also be noted that another PACER search wasn't even necessary. There are a number of people named Jon Frey, but the very first Google search results from searching "Jon Frey" pertaining to this Jon Frey reveal documents from his criminal case. All Frontier had to do to learn of the criminal case was Google "Jon Frey." Frontier says nothing about its counsel, Michele Blythe's, motivation for deciding to search Jon Frey's name on PACER two weeks *after* the Settlement Agreement was executed, but it seems odd for her to decide do this out of the blue. She has been counsel of record for Frontier throughout the entire *Frey* litigation and receives ECF notices of every docket entry by email, so she was already fully apprised of everything on the docket. Frontier's failure to be forthcoming about what prompted the PACER search leads Plaintiffs to suspect that it was really a Google search that precipitated the "discovery" of the charges against Mr. Frey, but that didn't play well into Frontier's narrative.

Respectfully submitted,

**/s/ Joseph F. Murray**
Joseph F. Murray (327025)
Brian K. Murphy (admitted *pro hac vice*)
Jonathan P. Misny (admitted *pro hac vice*)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
Telephone: 614.488.0400
Facsimile: 614.488.0401
E-mail: murray@mmmb.com
murphy@mmmb.com
misny@mmmb.com

Anthony I. Paronich (admitted *pro hac vice*)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

*Attorneys for Plaintiff and the Proposed Settlement Class*

# CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to all counsel of record.

**/s/ Joseph F. Murray**
Joseph F. Murray