**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANDREW PERRONG and STEWART ABRAMSON, individually and on behalf of a class of all persons and entities similarly situated,<br><br>       Plaintiffs,<br><br>vs.<br><br>FRONTIER UTILITIES NORTHEAST LLC and NEXT GENERATION ENERGY, INC.,<br><br>       Defendants. | Case No. 2:20-cv-05844-MSG |

**PLAINTIFFS' AMENDED AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM IN SUPPORT**

## I.      INTRODUCTION

Plaintiffs Andrew Perrong and Stewart Abramson (collectively, "Plaintiffs") and

Defendant Frontier Utilities Northeast LLC ("Frontier") (the Plaintiffs and Frontier are

collectively referred to herein as the "Parties") have reached a class action settlement of the

above-captioned matter.  The settlement includes the establishment of a $3,050,000.00

Settlement Fund to be distributed to Settlement Class Members that are Authorized Claimants

after payment of Administration Costs and a Fees, Costs, and Expenses Award to Settlement

Class Counsel.[1]  There is no reverter to Frontier of any portion of the Settlement Fund.

Furthermore, other than Settlement Class Members receiving notice through publication, no

claim will be required to receive a payment.  Notice will be effectuated through email and

postcards sent directly to Settlement Class Members identified in records obtained from Frontier,

internet-based publication notice through an internet media campaign designed by the Parties and

the Settlement Administrator with nationwide reach on desktop and mobile devices, and a

dedicated case website through which Claim Forms may be obtained.

The Settlement Agreement was reached by counsel with a keen understanding of the

merits of the claims and extensive experience in actions brought under the Telephone Consumer

Protection Act, 47 U.S.C. § 227, et seq. ("TCPA").  The relief provided meets the applicable

standards of fairness when taking into consideration the nature of Plaintiffs' claims, Frontier's

defenses, and the risks inherent in class litigation.  Accordingly, Plaintiffs respectfully request

that the Court: (1) grant preliminary approval of the Settlement Agreement; (2) provisionally

---

[1] All capitalized terms not defined herein have the meanings set forth in the Parties' Class Action
Settlement Agreement and Release ("Settlement Agreement"), attached as Exhibit 1.

certify the proposed Settlement Class; (3) appoint Plaintiffs' counsel as Settlement Class

Counsel; (4) appoint Plaintiffs Andrew Perrong and Stewart Abramson as the class

representatives of the Settlement Class; (5) approve the Long-Form Notice, Email Notice,

Postcard Notice, Publication Notice, and Claim Form; and (6) schedule the Final Approval

Hearing and related dates as proposed.

## II.   NATURE AND BACKGROUND OF THE CASE

The claims in the lawsuit rest on alleged violations of the TCPA, which prohibits, *inter*

*alia*, initiating any telephone solicitation to a phone using an automatic telephone dialing system

("ATDS") or an artificial or prerecorded voice.  *See* 47 U.S.C. § 227(b).  The TCPA also makes

it unlawful to receive more than one telephone call within any twelve-month period by or on

behalf of the same entity after placing the number on the National DNC Registry.  *See* 47 U.S.C.

§ 227(c)(5).  The TCPA provides a private cause of action to persons who receive such calls.  *Id.*

and 47 U.S.C. § 227(b)(3).

On November 23, 2020, Plaintiff Andrew Perrong filed a putative class action

complaint in this matter against Frontier and Next Generation Energy, Inc. alleging claims for

violations of the TCPA's Do-Not-Call ("DNC") provisions (the "Action").  On May 31, 2019,

Jon Frey filed a putative class action in the United States Court for the Eastern District of

Pennsylvania against Frontier and Energy Acquisitions Group, LLC, captioned *Frey v. Frontier*

*Utilities Northeast LLC, et al.*, Case No. 2:19-cv-02372-KSM, alleging claims for violations of

the TCPA's ATDS provisions (the "*Frey* Action"), which was subsequently dismissed without

prejudice on May 14, 2021.

The Parties engaged in motion practice and discovery in the *Frey* Action and in an action

filed by Plaintiff Andrew Perrong before the Pennsylvania Public Utilities Commission.  The

2

Parties exchanged information through discovery and participated in mediation under the guidance of mediator Hon. Morton Denlow from JAMS, which led to the Parties entering into a settlement agreement on March 10, 2021.

A dispute subsequently arose regarding the validity of that agreement, which resulted in extensive motion practice. *See, e.g.*, Plaintiff's Motion for Preliminary Approval of a Class Settlement (Doc. 15), Frontier's Opposition to Motion for Preliminary Approval (Doc. 18), Plaintiff's Reply (Doc. 23), Frontier's Sur-Reply (Doc. 29), and Plaintiff's Sur-Sur-Reply (Doc. 34);Frontier's Motion to Strike (Doc. 16), and Plaintiff's Opposition to Frontier's Motion to Strike (Doc. 17);   Frontier's Motion for Sanctions (Doc. 19), Plaintiff's Opposition to the Motion for Sanctions (Doc. 21), and Frontier's Reply (Docs. 31, 26-1).  The Court originally ordered oral argument on the Motions for Preliminary Approval, to Strike, and for Sanctions to be held on February 7, 2022.  In the days leading up the original oral argument, however, the Parties opened up a dialogue to resolve the pending Motions and held direct negotiations as well as once again involving Judge Denlow.  While those negotiations were continuing the Court rescheduled the oral argument on the pending Motions to March 9, 2022 (Doc. 44).

On February 18, 2022, Plaintiff Stewart Abramson joined Plaintiff Andrew Perrong in filing a First Amended Class Action Complaint in this matter (Doc. 46), which alleges claims for violations of the TCPA's ATDS and DNC provisions.  The parties also completed the execution of the Settlement Agreement that is the subject of this Motion.

Frontier denies all claims alleged in the Action and maintains that it and its third-party vendors complied with the TCPA and all other applicable laws.  Although Plaintiffs contest Frontier's defenses, they took them into account in evaluating the strengths and weaknesses of their claims.

The Parties have had a full and fair opportunity to evaluate the strengths and weaknesses of their respective positions, eventually culminating in the Settlement Agreement now before this Court[2]. If approved, this Settlement Agreement will replace and supersede the March 10, 2021 agreement that was at issue in the Motions for Preliminary Approval, to Strike, and for Sanctions in all respects. However, if not approved, the Settlement Agreement will be null and void and the parties will return to their respective positions in the litigation, including having waived no rights with respect to the enforceability of the March 10, 2021 agreement.

## III.    THE PROPOSED SETTLEMENT

Pursuant to the Settlement Agreement, certification of the following Settlement Class for settlement purposes only is being sought:

> All persons in the United States to whom Frontier or anyone acting or purporting to act on Frontier's behalf made or tried to make any of the following Calls between May 31, 2013, and the date of entry of the Preliminary Approval Order:
>
> (a)    one or more Calls made using an automatic telephone dialing system, dialing platform, or other dialing equipment, to a number assigned to any paging service, cellular telephone service, specialized mobile radio service, radio common carrier service, or service for which the called party is charged for the Call;
>
> (b)    one or more Calls initiated using an artificial or prerecorded voice; and/or

---

[2] The Settlement Agreement involves a reduction of $150,000 from the March 10, 2021 agreement. This represents a reduction for the amount each Class Member is projected to receive from approximately $165 to $157. Although Class Counsel believes that the March 10, 2021 agreement was enforceable and that they would have prevailed on the prior Motions, even a successful outcome of those Motions in favor of the Class would still likely have led to a lengthy appeal. Class Counsel therefore concluded it was in the best interest of the Class to provide a modest monetary concession to bring about finality in terms of the outcome and timing for the settlement.

  (c) one or more Calls to a telephone number while it was on the national Do-Not-Call Registry or a state Do-Not-Call Registry or was on or requested to be placed on Frontier's internal do-not-call list.

(Settlement Agreement ¶ 1.33.)  The proposed settlement encompasses at least 10,000 individuals.  The proposed settlement establishes a non-reversionary, capped Settlement Fund of $3,050,000.00, which will exclusively be used to pay: (1) cash settlement awards to Settlement Class Members that are Authorized Claimants; (2) Administration Costs; (3) a Fees, Costs, and Expenses Award to Settlement Class Counsel up to one-third of the Settlement Fund in addition to out-of-pocket expenses of not more than $20,000.00, subject to Court approval; and (4) a one-time Court-approved Service Payment to each Plaintiff of up to $5,000.00 each.  Each Settlement Class Member that is an Authorized Claimant shall be entitled to receive an equal *pro rata* amount of the Settlement Fund after the Administration Costs, Fees, Costs, and Expenses Award, and one-time Service Payment to each Plaintiff are paid out of the Settlement Fund.  If the Administration Costs, Fees, Costs, and Expenses Award, and one-time Service Payment to each Plaintiff are approved as requested, Plaintiffs' counsel estimate that the average payment to a Settlement Class Member would be approximately $157.00.[3]

## A. Opt Out and Objection Procedures

Settlement Class Members will have the opportunity to exclude themselves from the Settlement Agreement or object to its approval.  (Settlement Agreement § 6.)  The procedures and deadlines for filing requests for exclusion and objections will be conspicuously listed in the

---

[3] This assumes that, in addition to the approximately 10,000 Settlement Class Members that will receive direct notice and automatically be entitled to a payment provided they do not opt out, approximately 1,000 additional persons given Publication Notice will submit a valid Claim Form, which is a conservative estimate given the typical response rate seen in TCPA class settlements of this size.

notices to the Settlement Class Members and on the Settlement Website.  The notices to the Settlement Class Members inform Settlement Class Members that they will have an opportunity to appear and have their objections heard by this Court at a Final Approval Hearing.  The notices also inform Settlement Class Members that they will be bound by the release contained in the Settlement Agreement unless they timely exercise their opt-out right.  (*Id.* at Exs. 2-5.)

**B.    Release**

The release is appropriately tailored to violations like those alleged in the Action and is limited to Settlement Class Members.  In exchange for settlement benefits, the Settlement Class Members who do not timely opt out of the Settlement Agreement will release Frontier and the Released Parties from any and all claims against them.  The release of any vendors, subvendors, contractors, subcontractors, and service providers that made or were involved in making calls is limited to actions taken by, on behalf of, or purportedly on behalf of Frontier.  (*Id.* ¶ 1.27.)

**C.    Service Payment to Class Representative**

If approved by the Court, both Plaintiffs will receive a one-time Service Payment of $5,000.00 from the Settlement Fund.  This award will compensate the Plaintiffs for their time and effort and for the risk undertook in prosecuting this case as well as participating in discovery.

**D.    Fees, Costs, and Expenses Award to Settlement Class Counsel**

If the Settlement Agreement receives preliminary approval, Plaintiffs' counsel will apply to the Court for a Fees, Costs, and Expenses Award in the amount of up to one-third of the total amount of the Settlement Fund in addition to out-of-pocket expenses of up to $20,000.00.  A Fees, Costs, and Expenses Award will compensate Plaintiffs' counsel for the work already performed in relation to the proposed settlement, as well as the remaining work to be performed

in documenting the proposed settlement, securing Court approval of the Settlement Agreement, making sure the Settlement Agreement is fairly implemented, and obtaining dismissal of the Action.

### E.      Remaining Funds

Any amount remaining in the Settlement Fund after making payments to all Authorized Claimants and paying the Administration Costs, any Fees, Costs, and Expenses Award, and any Service Payments will be distributed to a Court-approved *Cy Pres* Recipient.  (*Id*. ¶¶ 3.5-3.7.) The Parties propose the Utility Emergency Services Fund as an appropriate recipient.  (*Id*. ¶ 1.10.)

## IV.    NOTICE AND SETTLEMENT ADMINISTRATION

Administration Costs will be exclusively paid from the Settlement Fund.  The Parties have agreed upon, and propose that the Court approve, the nationally recognized class action administration firm KCC Class Action Services, LLC ("KCC") to be the Settlement Administrator, to provide notice to the Settlement Class, and to administer the proposed settlement, subject to review by counsel for the Parties and the Court.  (*Id*. ¶ 1.32.)  KCC estimates the costs to administer the Settlement Agreement will be approximately $275,000.

## V.     ARGUMENT

### A.      The Class Should Be Preliminarily Certified for Purposes of Settlement

"At the preliminary approval stage, the Court may conditionally certify the class for purposes of providing notice [of a proposed settlement]."  *In re Imprelis Herbicide*, No. 11-md-2284, 2013 U.S. Dist. LEXIS 18332, at *8 (E.D. Pa. Feb. 11, 2013) (citing Manual for Complex Litigation § 21.632 (4th ed. 2004) ("The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of

the subsections of Rule 23(b).")).  *Accord In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 776-78 (3d Cir. 1995) ("Only when the settlement is about to be finally approved does the court formally certify the class, thus binding the interests of its members by the settlement.").

In the circumstances here, the requirements of Rule 23 are readily met for settlement purposes.

### 1.      Rule 23(a)'s Requirements Are Satisfied

Fed. R. Civ. P. 23(a) requires that plaintiffs demonstrate the following:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

#### a.      Numerosity

The numerosity requirement is met where the class is so numerous that joinder of all members is impracticable.  *Carr v. Flowers Foods, Inc.,* No. 15-cv-6391, 2019 WL 2027299, at *8 (E.D. Pa. May 7, 2019) (finding 4,521 recipients in TCPA action satisfied numerosity).  "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."  *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). Numerosity is satisfied here as Frontier's records indicate that at least 10,000 persons may be members of the Settlement Class.

#### b.      Commonality

The commonality requirement is met where "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2); *Carr,* 2019 WL 2027299, at *9.  "Commonality requires a

showing of the existence of questions of law or fact common to the class." *Hawk Valley, Inc. v. Taylor*, 301 F.R.D. 169, 182 (E.D. Pa. 2014) ("A common question is one arising from a common nucleus of operative facts.").  "Generally, where defendants have engaged in standardized conduct towards members of the proposed class, common questions of law and fact exist.  *Id.*  "'[T]he commonality standard of Rule 23(a)(2) is not a high bar: it does not require identical claims or facts among class members.'"  *Stewart*, 275 F.3d at 227 (quoting *Chiang v. Veneman*, 385 F.3d 256, 265 (3d Cir. 2004)).  "'The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.'"  *Id.* (citing *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)).

Here, the claims asserted by Plaintiffs are predicated on allegations that Frontier is vicariously liable for unsolicited telephone calls made on behalf of or purporting to be on behalf of Frontier to Settlement Class Members' telephones without the requisite prior express consent. As such, Plaintiffs contend that issues of fact and law exist that are common to all Settlement Class Members, such as:

- Whether Frontier is vicariously liable for the conduct of the third parties;

- Whether the dialing systems used constituted "Automatic Telephone Dialing Systems" as that term is defined under the TCPA;

- Whether the call recipients had provided their prior express consent prior to being called;

- Whether Frontier's violations were knowing or willful;

- Whether the call recipients' telephone numbers were on the National DNC Registry; and

- Whether Settlement Class Members are entitled to statutory damages under the TCPA.

These common questions are wholly sufficient to satisfy the commonality requirement for settlement purposes. *Accord In re Urban Outfitters, Inc., Secs. Litig.*, No. 13-cv-5978, 2016 U.S. Dist. LEXIS 24915, at *3-4 (E.D. Pa. Feb. 29, 2016) (preliminarily certifying class action).

### c.      Typicality

Fed. R. Civ. P. 23(a)(3) requires that the claims of the class representative are "typical of the claims … of the class." "The typicality requirement 'is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals.'" *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 531 (3d Cir. 2004) (citation omitted). As the Third Circuit has held, "'[t]he concepts of commonality and typicality are broadly defined and tend to merge.'" *Baby Neal*, 43 F.3d at 56 (citation omitted). "In this respect 'the commonality and typicality requirements both seek to ensure that the interests of the absentees will be adequately represented.'" *Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492, 498 (E.D. Pa. 2009) (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 311 (3d Cir. 1998)). "'[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims.'" *Barel v. Bank of Am.*, 255 F.R.D. 393, 398 (E.D. Pa. 2009) (quoting *Stewart*, 275 F.3d at 227).

Here, typicality is met as Plaintiffs' claims are that third parties retained by Frontier made unsolicited telephone calls on behalf of or purporting to be on behalf of Frontier to Settlement Class Members' telephones by using an ATDS to contact Settlement Class Members' telephones

without obtaining prior express consent and calling telephone numbers listed on the National DNC Registry and that Frontier is, thus, liable for statutory damages under the TCPA. *Accord Gehrich v. Chase Bank U.S.*, 316 F.R.D. 215, 224 (N.D. Ill. 2016) (TCPA case; "The proposed class also satisfies commonality and typicality. Each class member suffered roughly the same alleged injury: receipt of at least one phone call … from [defendant] to her cell phone."); *Grannan v. Alliant Law Grp., P.C.*, No. 10-cv-02803 HRL, 2012 U.S. Dist. LEXIS 8101, at *11 (N.D. Cal. Jan. 24, 2012) ("The claims of the Named Plaintiff are typical of the Settlement Class, and arise out of the TCPA violations committed by defendant Alliant.").

For settlement purposes, Plaintiffs are typical of the absent Settlement Class Members because they were allegedly subjected to the same practices, they suffered from the same injuries, and because both Plaintiffs and the Settlement Class Members will benefit from the relief provided by the Settlement Agreement.

### d.    Adequacy of Representation

"[T]he adequacy of representation requirement of Rule 23(a)(4) 'considers whether the named plaintiffs' interests are sufficiently aligned with the absentees', and it tests the qualifications of the counsel to represent the class.'" *Cosgrove v. Citizens Auto. Fin., Inc.*, No. 09-cv-1095, 2011 U.S. Dist. LEXIS 95656, at *11 (E.D. Pa. Aug. 25, 2011) (quoting *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 303 (3d Cir. 2005)). This requirement "has two components": "[f]irst, the adequacy inquiry tests the qualifications of the counsel to represent the class"; and, "[s]econd, it seeks to uncover conflicts of interest between named parties and the class they seek to represent." *Carr*, 2019 WL 2027299, at *10 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 532).

"A class representative is adequate if: (1) the class representative's counsel is competent to conduct a class action; and (2) the class representative's interests are not antagonistic to the class's interests." *In re Ravisent Techs., Inc. Secs. Litig.*, No. 00-cv-1014, 2005 U.S. Dist. LEXIS 6680, at *16 (E.D. Pa. Apr. 18, 2005) (quoting *In re GMC Pick-Up Truck*, 55 F.3d at 800-01).

Here, there is nothing to suggest that Plaintiffs have interests antagonistic to those of the Settlement Class Members. Plaintiffs' interest in maximizing a recovery for the Settlement Class is aligned with the interests of Settlement Class Members generally. Plaintiffs have obtained an advantageous Settlement Agreement that treats all Settlement Class Members in the same fashion and provides real value to all valid claimants. Moreover, Plaintiffs' counsel have substantial experience in litigating consumer class actions and other complex commercial cases. *See* Exhibit 2, Declarations of Plaintiffs' counsel. Plaintiffs and their counsel have, and will continue to, zealously represent the interests of the proposed Settlement Class.

## 2. Rule 23(b)(3)'s Requirements Are Satisfied

The Settlement Class also satisfies Fed. R. Civ. P. 23(b)(3), which requires that the court find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### a. Predominance

The Fed. R. Civ. P. 23(b)(3) predominance inquiry "measures whether the class is sufficiently cohesive to warrant certification." *Newton v. Merrill Lynch Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 187 (3d Cir. 2001) (citing *Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 623 (1997)). "[T]he predominance inquiry focuses a common course of conduct by which the

defendant may have injured class members." *Barel*, 255 F.R.D. at 399 (citing *In re Prudential Ins.*, 148 F.3d at 314). For example, in *Barel*, involving consumer claims under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* ("FCRA"), the court found predominance satisfied where the defendant was alleged to have engaged "in a common course of conduct" and where "all class members, by definition, were subjected to the same practices." *Barel* at 399 ("The predominating, indeed the dispositive, issue is whether Defendant willfully violated the FCRA by obtaining consumer reports of non-customers.").

In this case, common legal issues predominate. All claims arise under the TCPA and seek statutory damages. Plaintiffs would argue that the calls to all Settlement Class Members were on behalf of or purporting to be on behalf of Frontier and related to Frontier's services. Whether the technology that was used to make the calls at issue implicates the TCPA is a common question of fact and law that relates to all Settlement Class Members with ATDS claims. Whether calls were made to phone numbers on the National DNC Registry is a common question of fact and law that relates to all Settlement Class Members with DNC claims like that asserted in this Action. Whether Frontier would be vicariously liable for the calling conduct will not cause predominance issues, as the conduct as it relates to Settlement Class Members is identical for purposes of an agency analysis.

Frequently in TCPA cases, defendants attempt to show that class members provided prior express written consent to receive telemarketing calls, and that determining the validity of such consent requires consumer-by-consumer factual "mini-trials." Here, even though prior express written consent is undisputedly an affirmative defense, the Plaintiffs would argue that they can attack any asserted consent defense using common proof. *See Stern v. Docircle, Inc.,* No. SACV 12-2005 AG (JPRx), 2014 U.S. Dist. LEXIS 17949, at *20 (C.D. Cal. Jan. 29, 2014) (granting

TCPA class certification and noting that consent defenses do not defeat predominance where consent will be proved or disproved on evidence and theories applicable to the entire class); *Van Patten v. Vertical Fitness Grp., LLC,* No. 12cv1614-LAB (MDD), 2013 U.S. Dist. LEXIS 189845, at *16-18 (S.D. Cal. Nov. 8, 2013) (granting TCPA class certification and explaining that where consent defenses are subject to common proof, individual issues do not predominate over common ones).

### b. Superiority

The other requirement of Fed. R. Civ. P. 23(b)(3) is the superiority requirement, *i.e.*, that a class action suit provides the best way of managing and adjudicating the claims at issue. "The superiority requirement 'asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication.'" *Good v. Nationwide Credit, Inc.*, No. 14-cv-4295, 2016 U.S. Dist. LEXIS 32154, at *22 (E.D. Pa. Mar. 14, 2016) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 533-34). "When assessing superiority and '[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, ... for the proposal is that there be no trial.'" *Id.* at *23 (quoting *Amchem Prods.*, 521 U.S. at 620).

Here, the Settlement Agreement provides redress for Settlement Class Members who individually may have potential damages of several thousand dollars at most and who thus are economically foreclosed from otherwise pursuing any relief. Notably, the TCPA does not allow for the recovery of attorneys' fees. To the extent Settlement Class Members did pursue litigation outside of the class context, the Settlement Agreement would avoid potential individual cases that could be filed by the thousands of Settlement Class Members for the same claims asserted here.

Unsurprisingly, courts routinely find class actions to be the superior method of adjudicating claims in the TCPA context:

> Jurists and commentators have long debated the merits of the modern class action and the public policies behind Rule 23. … It is the view of this Court that the instant case highlights one of the strongest justifications for the class action device: its regulatory function. … A statute such as the TCPA, which provides for a relatively small recovery for individual violations but is designed to deter conduct directed against a large number of individuals, can be effectively enforced only if consumers have available a mechanism that makes it economically feasible to bring their claims. Without the prospect of a class action suit, corporations balancing the costs and benefits of violating the TCPA are unlikely to be deterred because individual claims will not impose the level of liability that would outweigh the potential benefits of violating the statute.

*Bee, Denning, Inc. v. Capital Alliance Grp.*, No. 13-cv-2654- BAS-WVG, 2015 U.S. Dist. LEXIS 129495, at *37-38 (S.D. Cal. Sept. 24, 2015). The proposed class meets the superiority requirement of Fed. R. Civ. P. 23(b)(3).

### B. Preliminary Approval of the Proposed Settlement Is Warranted

The settlement of a class action requires court approval. Fed. R. Civ. P. 23(e)(2). Review of a proposed class action settlement typically proceeds in two stages. At the first stage, the parties submit the proposed settlement to the court, which must make a preliminary fairness evaluation. If the proposed settlement is preliminarily acceptable, the court then directs that notice be provided to all class members who would be bound by the proposed settlement in order to afford them an opportunity to be heard on, object to, or opt out of the settlement. *See* Fed. R. Civ. P. 23(c)(3), (e)(1), (e)(5). At the second stage, after class members are notified of the settlement, the court holds a formal fairness hearing. *See* Fed. R. Civ. P. 23(e)(1)(B). If the court concludes that the settlement is "fair, reasonable and adequate," the settlement is given

final approval.  Fed. R. Civ. P. 23(e)(2).  *See In re Nat'l Football League Players' Concussion Injury Litig.*, 301 F.R.D. 191, 197 (E.D. Pa. 2014).

Plaintiffs now seek preliminary approval of the Settlement Agreement pursuant to Fed. R. Civ. P. 23(e).  "The preliminary determination establishes an initial presumption of fairness." *In re GMC Pick-Up Truck*, 55 F.3d at 784.  Under Rule 23, a settlement falls within  the "range of possible  approval" if there is  a conceivable basis for presuming that the standard applied for final approval—fairness, adequacy, and reasonableness—will be satisfied.  *Id.*  In making a preliminary determination, the court should look to whether there are any obvious deficiencies that would cast doubt on the proposed settlement's fairness.  The court should also consider whether the negotiations occurred at arm's length, whether there was significant investigation of the claims, and whether the proposed settlement provides unwarranted preferential treatment to certain class members.  *Id.* (citing *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003)).

The Third Circuit has long recognized that there is a "strong presumption in favor of voluntary settlement agreements."  *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010) (citing *Pennwalt Corp. v. Plough*, 676 F.2d 77, 79-80 (3d Cir. 1982)).  "This policy is also evident in the Federal Rules of Civil Procedure and the District Court's Local Rules, which encourage facilitating the settlement of cases."  *Id.*  "This presumption is especially strong in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'"  *Id.* at 595 (quoting *In re GMC Pick-Up Truck*, 55 F.3d at 784). "Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts."  *Id.*  In

addition, "the parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial."  *Id.*

In determining whether class action settlements should be approved, "[c]ourts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement.  [Citation omitted] … They do not decide the merits of the case or resolve unsettled legal questions."  *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).  The Settlement Agreement is well within "the range of possible approval" and should be preliminarily approved in all respects.

Counsel anticipates that all Authorized Claimants will each receive approximately $157.00 under the Settlement Agreement.  Settlement Class Members who are on the Closed Sales List and do not request exclusion will automatically receive a *pro rata* payment from the Settlement Fund.  In addition, Publication Notice will be provided through an internet media campaign and a Settlement Website where Settlement Class Members who receive Publication Notice can view and print Claim Forms.  Plaintiffs' counsel further anticipates that providing easily accessible methods to obtain the Claim Forms and submit them by mail will likely result in the submission of approximately 1,000 additional Claim Forms which is a reasonably typical response for a TCPA settlement class of this size.

The proposed settlement was achieved only after utilizing the efforts of an experienced and sophisticated mediator in Hon. Morton Denlow of JAMS who has helped resolve numerous TCPA class actions.  Counsel also reviewed and analyzed more than ten separate document productions representing thousands of pages of documents from various defendants and third parties in the *Frey* Action as well as documents related to the Public Utility Commission action filed by Mr. Perrong.  The value of the proposed settlement represents an exceptional outcome

for Settlement Class Members.  For example, in *Vasco v. Power Home Remodeling Grp. LLC*, No. 15-cv-4623, 2016 U.S. Dist. LEXIS 141044 (E.D. Pa. Oct. 12, 2016), the Court approved a TCPA class action settlement that provided for payments of $27 per claimant.  There, the Court found that "[t]his amount is consistent with other class action settlements under the Act."  *Id.* at *23 (citing, *e.g.*, *Kolinek v. Walgreen Co.*, No. 13-cv-4806, 2015 WL 7450759, at *7 (N.D. Ill. Nov. 23, 2015) ($30); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) ($34.60); *Rose v. Bank of Am. Corp.*, No. 11-cv-02390-EJD, 2014 U.S. Dist. LEXIS 121641, at *30 (N.D. Cal. Aug. 29, 2014) ($20 to $40)).

Similarly, in *Gehrich*, 316 F.R.D. 215, another court approved a TCPA class action settlement.  There, the court found that while "[t]he theoretical recovery per [class] member is about $1.00," "[t]he actual recovery per claimant is approximately $52.50."  *Id.* at 228. Although "that recovery is well below the $500 statutory recovery available for each call," the court found that "the recovery falls well within the range of recoveries in other recent TCPA class actions."  *Id.*  As the court in *Gehrich* held, "'[t]he essential point here is that the court should not 'reject[]' a settlement 'solely because it does not provide a complete victory to plaintiffs,' for 'the essence of settlement is compromise.'"  *Id.* (quoting *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996)).  "An acceptable settlement is properly 'a bilateral exchange ... where both sides gain as well as lose something.'"  *Id.* (quoting *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1135 (7th Cir. 1979)).

While Frontier has agreed to settle, it was not without significant defenses as discussed above.  One of the most significant risks for the Settlement Class Members focuses on the question of whether the dialing system, which Plaintiffs contend is a predictive dialer, is an "Automatic Telephone Dialing System" under the TCPA.  As an initial matter, on July 10, 2015,

the FCC released an omnibus declaratory ruling clarifying numerous relevant issues affecting the TCPA, including definition of an ATDS under the statute[4]—which was overturned in part in *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018).  Following the D.C. Circuit's decision in *ACA Int'l,* courts have been split on what constitutes an ATDS under the TCPA.  Recently, the Supreme Court rendered its decision regarding what constitutes an "automatic telephone dialing system" under the TCPA.  *See Facebook, Inc. v. Duguid*, 592 U.S. ____ (2021), available at https://www.supremecourt.gov/opinions/20pdf/19-511_p86b.pdf (released on Apr. 1, 2021).  The decision held, "To qualify as an 'automatic telephone dialing system' under the TCPA, a device must have the capacity either to store a telephone number using a random or sequential number generator, or to produce a telephone number using a random or sequential number generator." *Id.* at 1.  While Plaintiffs do not concede that the dialing systems at issue do not have that "capacity," the standard to establish that is more difficult than when the settlement was signed.

Class certification is also far from automatic in TCPA cases.  *Compare Tomeo v. CitiGroup, Inc.*, No. 13 C 4046, 2018 WL 4627386, at *1 (N.D. Ill. Sept. 27, 2018) (denying class certification in TCPA case after nearly five years of hard-fought discovery and litigation), *Jamison v. First Credit Servs.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) (finding issues of consent to predominate in TCPA action), *and Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 527 (E.D. Wis. 2014) (same), *with Saf-T-Gard Int'l v. Vanguard Energy Servs.*, No. 12-3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012) (certifying a class in a TCPA action and finding no evidence supported the view that issues of consent would be individualized) *and Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 253 (N.D. Ill. 2014) (same).

---

[4] *See* https://apps.fcc.gov/edocs_public/attachmatch/FCC-15-72A1.pdf.

Even if the class were certified, the Plaintiffs would still have a substantial obstacle regarding Frontier's vicarious liability for the conduct of its vendors.  The Supreme Court in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), held traditional agency and vicarious liability principles are required in order to be found liable under the TCPA.  However, Frontier did not have contractual privity with the entities that physically initiated the calls, which would make such a finding more difficult.  *See, e.g., Cunningham v. Cap. Advance Sols., LLC*, No. 17-13050 (FLW), 2018 U.S. Dist. LEXIS 197590 (D.N.J. Nov. 20, 2018).  In fact, other district courts in the Third Circuit have entered summary judgment in favor of TCPA defendants in such a situation.  *See Klein v. Just Energy Grp., Inc.,* No. 14-1050, 2016 U.S. Dist. LEXIS 84447, at *43 (W.D. Pa. June 29, 2016) ("In sum, the evidence adduced in this case is not sufficient to support a finding by a reasonable jury that Collectcents was acting as an agent (whether under actual authority, apparent authority or ratification theories) for any of the Just Energy Defendants in making any of the calls.").  Moreover, as discussed above, Frontier contends that it never authorized any vendor to make the calls at issue.

In addition, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards—even after a plaintiff has prevailed on the merits—on due process grounds.  *See, e.g., Aliano v. Joe Caputo & Sons – Algonquin, Inc.*, No. 09-910, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights. … Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."). Moreover, the narrative of Frontier's telemarketing compliance efforts could present a case for reduction of any damages awarded after trial, and some courts have applied this principle in the

20

TCPA context.  *See, e.g., Golan v. Veritas Ent., LLC,* No. 4:14CV00069 ERW, 2017 U.S. Dist. LEXIS 144501 (E.D. Mo. Sept. 7, 2017) (reducing the damages awarded in a TCPA class action lawsuit to $10 a call).

By reaching this proposed settlement, the Parties will avoid protracted litigation and will establish a means for prompt resolution of Settlement Class Members' claims against Frontier. These avenues of relief provide a benefit to Settlement Class Members.  Given the alternative of long and complex litigation before this Court, the risks involved in litigating the Action, the fact that Frontier is a small company with finite resources, and the possibility of appellate litigation, the availability of prompt relief under the Settlement Agreement is highly beneficial to the Settlement Class.  Moreover, given the current COVID-19 pandemic and the financial stress and uncertainty it is causing so many individuals, the importance of prompt relief for Settlement Class Members is heightened in the current environment.

### C.    The Form and Method of Notice Should Be Approved

"Federal Rule of Civil Procedure 23 requires a district court approving a class action settlement to 'direct notice in a reasonable manner to all class members who would be bound by the proposal.'"  *In re DVI, Inc. Secs. Litig.*, No. 03-5336, 2016 U.S. Dist. LEXIS 40473, at *22-23 (E.D. Pa. Mar. 28, 2016) (quoting Fed. R. Civ. P. 23(e)(1)).  "Whereas 'the Rule provides broad discretion to district courts with respect to the notice's form and content, it must satisfy the requirements of due process.'"  *Id.* at *23 (quoting *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013)).  "Generally, 'there has been a failure of due process only in those cases where it cannot be said that the procedure adopted, fairly insures the protection of the interests of absent parties who are to be bound by it.'"  *Id.* (quoting *In re Diet Drugs Prods. Liab. Litig.*, 431 F.3d 141, 145 (3d Cir. 2005)).

### 1.      The Form of Notice Is Appropriate

"First, Rule 23(c)(2)(B) requires that class members be given the best notice practicable

under the circumstances, including individual notice to all potential class members identifiable

through reasonable efforts.  Specifically, the Rule provides that such notice must, in clear,

concise, and plain language, state: (i) the nature of the action; (ii) the definition of the class

certified; (iii) the class claims, issues, or defenses; (iv) the class member's right to enter an

appearance by an attorney; (v) the class member's right to be excluded from the class; (vi) the

time and manner for requesting exclusion; and (vii) the binding effect of settlement on class

members."  *Good*, 2016 U.S. Dist. LEXIS 32154, at *25-26 (citing Fed. R. Civ. P. 23(c)(2)(B)).

"Second, Rule 23(e) requires notification to all members of the class of the terms of any

proposed settlement.  Fed. R. Civ. P. 23(e).  This 'notice is designed to summarize the litigation

and the settlement' and 'to apprise class members of the right and opportunity to inspect the

complete settlement documents, papers, and pleadings filed in the litigation.'"  *Id.* (citing *In re*

*Prudential Ins.*, 148 F.3d at 327).

The dissemination of the notices satisfies all due process requirements.  The Settlement

Agreement provides for notice to the Settlement Class Members through email to all Settlement

Class Members for whom an email address is included in the Closed Sales List or for whom the

Settlement Administrator is able to obtain an email address through reasonable effort.[5]  In the

---

[5] Attempting to provide notice to as many Settlement Class Members as possible via email is particularly practical given the current status of the ongoing pandemic the country is currently experiencing.  *See, e.g., Haworth v. New Prime,* No. 6:19-03025-CV, 2020 U.S. Dist. LEXIS 67269, at *5 (W.D. Mo. Apr. 16, 2020): "The Court is also cognizant of the COVID-19 pandemic and the potential strain a mass mailing could place on the U.S. Postal Service."  This approach has been utilized in multiple TCPA class actions in Pennsylvania during the pandemic. *See, e.g., Abramson v. PALMCO Energy PA LLC,* No. 19-cv-1675, ECF No. 50 (W.D. Pa. Oct.

event an email address is unavailable for a Settlement Class Member on the Closed Sales List, the Settlement Administrator will mail a Postcard Notice after attempting to update the last known addresses of such Settlement Class Members through the National Change of Address database.  In addition, Publication Notice will be made through an internet media campaign designed by the Parties and the Settlement Administrator with nationwide reach on desktop and mobile devices.  (Settlement Agreement ¶¶ 1.23, 4.3.3.)  Settlement Class Members will be directed to the Settlement Website where they can view posted documents (including, but not limited to, the operative complaint in the Action, Settlement Agreement, and Long-Form Notice), view and print a Claim Form, or electronically submit a request for exclusion from the Settlement Agreement.  The notices will outline the allegations of the Action, advise Settlement Class Members of their right to opt out, and will announce the date of the Final Approval Hearing.

The contents of the proposed notices are more than adequate.  They provide Settlement Class Members with sufficient information to make an informed and intelligent decision whether to object to the Settlement Agreement.  As such, they satisfy the content requirements of Fed. R. Civ. P. 23.  *See* Fed. R. Civ. P. 23(c)(2)(B); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (stating that due process requires notice to apprise party of pendency of action, afford party opportunity to appear, describe party's rights, and provide party opportunity to opt out of action).

The proposed notice process more than satisfies all requirements.  The Parties have agreed upon a notice process including Email Notice, Postcard Notice, Publication Notice

---

2, 2020); *Abramson v. Am. Advisors Grp., Inc., et. al.*, No. 19-cv-1341, ECF No. 69 (W.D. Pa. May 6, 2020).

through an internet media campaign, and publication of a Long-Form Notice on the Settlement Website.  The language of the Email Notice, Postcard Notice, Publication Notice, and Long-Form Notice was negotiated and has been agreed to by the Parties.  The proposed notices are written in simple terminology and include: (1) a description of the Settlement Class; (2) a description of the claims asserted in the Action; (3) a description of the Settlement Agreement; (4) the deadlines for filing a Claim Form and/or for exercising the right to opt out (including limitation on the opt-out right); (5) the names of counsel for the Settlement Class; (6) the Final Approval Hearing date; (7) an explanation of eligibility for appearing at the Final Approval Hearing; and (9) the deadline for filing objections to the Settlement Agreement.

 2. **The Method of Notice Comports with Due Process and Is Reasonable**

"'[T]o satisfy due process, notice to class members must be reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *Glaberson v. Comcast Corp.*, No. 03-6604, 2014 U.S. Dist. LEXIS 172040, at *18 (E.D. Pa. Dec. 12, 2014) (quoting *In re Ikon Off. Sols., Inc. Secs. Litig.*, 194 F.R.D. 166, 174 (E.D. Pa. 2000)).  "Individual notice should be provided to all members who can be identified through reasonable efforts."  *Id.*

Notice will be effectuated through Email Notice and Postcard Notice sent directly to Settlement Class Members identified in records obtained from Frontier and by Publication Notice.  (Settlement Agreement § 4.)  An Email Notice will be sent to each Settlement Class Member for whom an email address is included in the Closed Sales List or for whom the Settlement Administrator is able to obtain an email address through reasonable effort.  Postcard Notice will be mailed to any Settlement Class Members on the Closed Sales List for whom an email address is unavailable.  Prior to mailing, the Settlement Administrator will attempt to

update the last known address of the Settlement Class Members through the National Change of

Address database.  In addition, Publication Notice will be made via an internet media campaign

with nationwide reach.  Accordingly, the proposed form and manner of notice are reasonable and

adequate, in accord with due process and Rule 23, and should be approved.

## VI.    SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement Agreement, the Court must set

a Final Approval Hearing date, dates for notice, deadlines for filing Claim Forms or objections or

requests for exclusion, and filing papers in support of the Settlement Agreement.  The Parties

propose the following schedule:

| | |
|---|---|
| Last day for the Settlement Administrator to publish the Settlement Website and begin operating a toll-free telephone number, email address, and post office box to accept inquiries from Settlement Class Members | 30 calendar days after entry of Preliminary Approval Order |
| Settlement Administrator begins providing notice to Settlement Class Members | On or before 30 calendar days after entry of Preliminary Approval Order |
| Last day for Settlement Class Members to submit Claim Forms, object, or request exclusion from the Settlement Class | 90 calendar days after entry of Preliminary Approval Order |
| Last day for Settlement Class Counsel to file motion in support of Final Approval Order and Final Judgment | 14 calendar days before Final Approval Hearing |

## VII.   CONCLUSION

For the reasons set forth above and the entire record in this litigation, the Settlement

Agreement warrants this Court's preliminary approval, and Plaintiffs' counsel respectfully

requests that the motion be granted.  Along with this memorandum, counsel will submit a Draft

Preliminary Approval Order, attached as Exhibit 3.

Respectfully submitted,

**/s/ Joseph F. Murray**
Joseph F. Murray (327025)
Brian K. Murphy (admitted *pro hac vice*)
Jonathan P. Misny (admitted *pro hac vice*)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
Telephone: 614.488.0400
Facsimile: 614.488.0401
E-mail: murray@mmmb.com
           murphy@mmmb.com
           misny@mmmb.com

Anthony I. Paronich (admitted *pro hac vice*)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

*Attorneys for Plaintiffs and the Proposed Settlement Class*

## CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2022, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification to all counsel of

record.

**/s/ Joseph F. Murray**
Joseph F. Murray