**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ANDREW PERRONG and STEWART ABRAMSON, individually and on behalf of all others similarly situated,** | Civil Action |
| *Plaintiffs*, | No. 20-cv-5844 |
| *v.* | |
| **FRONTIER UTILITIES NORTHEAST, LLC,** *et al.*, | |
| *Defendants*. | |

## <u>ORDER</u>

**AND NOW**, this 21st day of April, 2022, I find as follows:

1.      Plaintiffs Andrew Perrong and Stewart Abramson bring claims under the Telephone Consumer Protection Act (TCPA), 47 U.S.C § 227, on behalf of themselves and others similarly situated. Plaintiffs allege Defendants Frontier Utilities Northeast LLC and Next Generation Energy, Inc. made automated telemarketing calls to Plaintiffs and others and that these calls violated the TCPA.

2.      Presently before me is Plaintiffs' unopposed motion to preliminarily approve a settlement of the class claims.[1]

---

[1] The parties previously signed an agreement purporting to settle these claims in March 2021. Defendants opposed approving that settlement and argued it was induced by fraud. While oral argument on the issue was pending, the parties again settled their dispute, resulting in the present unopposed Motion.

## I.        TERMS OF THE PROPOSED SETTLEMENT

3.      The following is a brief summary of the significant features of the proposed Settlement Agreement. Interested parties should consult the proposed Settlement Agreement for its full terms.

4.      The proposed Settlement Agreement states that in exchange for a release of all claims, Defendants will make an aggregate payment of $3,050,000 to a settlement fund. The fund will be used to pay class claims, administration costs, expenses, attorneys' fees, and service awards to the named Plaintiffs. (Settlement Agreement ¶ 1.36.)

5.      The Settlement Agreement calls for claimants to be identified in two ways: (1) Defendants' records showing individuals to whom calls were placed, and (2) submitted claim forms. (Id. ¶ 1.2.) A settlement administrator will be appointed to review claim forms and determine their validity. (Id. ¶ 5.3.1.)

6.      The settlement fund will first be used to pay administration costs, expenses, attorneys' fees, and service awards. The remaining portion will be distributed to claimants pro rata. A second round of payments will be used to handle any funds left over due to uncashed checks. Funds remaining after the second round will be distributed to a cy pres recipient. (Id. ¶¶ 3.1-3.7)

7.      The Settlement Agreement provides for the two named Plaintiffs to apply to the Court for service payments of not more than $5,000 each. It also provides for Plaintiffs' counsel to submit requests for attorneys' fees to the Court for review. Attorneys' fees are capped at one third of the total settlement fund. (Id. ¶ 2.1.4.)

## II.       LEGAL STANDARD

8.      Class settlement typically proceeds in two stages: preliminary approval and final approval. See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig., 55 F.3d 768, 778 (3d Cir. 1995). At the preliminary approval stage, the question is whether to give notice of the

proposed settlement to the proposed class. Notice should be given if the court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

9.      Under the first requirement, the court must find that, following notice, objections, and a final approval hearing, it is "likely" that the settlement will be found to be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). An "initial presumption of fairness" arises "when the court finds that: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." Gen. Motors, 55 F.3d at 785.

10.     The second requirement is that the court must find it likely that the prerequisites for class certification set out in Rule 23(a) and (b) will be met. Those requirements are:

(1) the class is so numerous that joinder of all members is impracticable; ["numerosity"]

(2) there are questions of law or fact common to the class; ["commonality"]

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; ["typicality"] and

(4) the representative parties will fairly and adequately protect the interests of the class ["adequacy of representation"].

Fed. R. Civ. P. 23(a).

11.     In addition, because Plaintiffs' class claims seek money damages, the following requirements apply:

[i] the questions of law or fact common to class members predominate over any questions affecting only individual members, ["predominance"] and …

[ii] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. ["superiority"]

Fed. R. Civ. P. 23(b)(3).

12.     If notice is given, it must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The notice must clearly and concisely state in plain, easily understood language," the details of the proposed settlement enumerated in Rule 23(c)(2)(B).

## III.   <u>DISCUSSION</u>

13.     Based on the materials submitted with Plaintiffs' Motion, and bearing in mind that this case is at a preliminary stage where there has been no hearing, no presentation of evidence, and no resolution of factual issues, I make the following determinations regarding the likelihood that the settlement will be approved and that the class will be certified:

14.     **Fair, reasonable and adequate**: Plaintiffs represent that, based on the size of the settlement fund and the estimated number of classmembers, the likely payment to each classmember is $157, or roughly 31% of the statutory damages of $500. This payment was negotiated at arm's length and vigorously contested by both sides in prior motion practice. At this preliminary stage, I find it is likely that this amount represents a fair compensation to absent classmembers for the value of their claims. <u>See</u> <u>Gen. Motors</u>, 55 F.3d at 785.

15.     I note that the settlement contains a <u>cy pres</u> term. While <u>cy pres</u> terms are not prohibited, they require closer scrutiny to ensure that they are not abused. <u>See</u> <u>In re Google Inc. Cookie Placement Consumer Priv. Litig.</u>, 934 F.3d 316, 328 (3d Cir. 2019). In this case, given that the procedure for pro rata distribution specified in the Settlement Agreement ensures that the <u>cy pres</u> recipient will receive at most a tiny portion of the settlement fund, I find it is likely that the <u>cy pres</u> term in the Settlement Agreement is appropriate. <u>See</u> <u>In re Baby Prod. Antitrust Litig.</u>, 708 F.3d 163, 174 (3d Cir. 2013) ("<u>[C]y pres</u> awards should generally represent a small percentage of total settlement funds.").

4

16.     **Numerosity**: Plaintiffs estimate that thousands of individuals received calls from Defendants. At this stage, it is likely that classmembers are too numerous to make joinder feasible. Therefore, numerosity will likely be met.

17.     **Commonality**: The legality of Defendants' telemarketing calls under the TCPA is an issue common to all classmembers. At this preliminary stage, therefore, I find it is likely the requirement of commonality will be met.

18.     **Typicality**: Plaintiffs are alleged to have received calls from Defendants that were similar to calls received by other classmembers. In addition, it is alleged that the calls were made according to a script, which would make Plaintiffs' calls typical of those made to absent classmembers. Accordingly, I find it is likely the requirement of typicality will be met.

19.     **Adequacy of representation**: Plaintiff Perrong, first pro se and now through present counsel, aggressively pursued Defendants over their telemarketing calls in multiple forums for the past several years. This suggests he is an adequate representative of the absent classmembers. Plaintiffs' current counsel have prior experience in large consumer class actions set out in a certification attached to Plaintiffs' Motion. I have reviewed the certification and find it likely, at this stage, that counsel have the requisite experience to adequately prosecute the class claims.

20.     In prior motion practice, a suggestion was made that Plaintiffs and their counsel may have rushed to finalize a settlement before Defendants could learn that one party to the former agreement was facing criminal charges. Plaintiffs concede that the present Settlement Agreement includes a discount of $150,000—or 5% of the total fund—attributable to the risk that the prior agreement might be voided as induced by fraud.

21.     However, at this preliminary stage, I find that these allegations do not alter the conclusion that it is likely Plaintiffs and their counsel are adequate class representatives. Had Plaintiffs delayed in settling the class claims, there was a risk that Facebook, Inc. v. Duguid, 141 S. Ct. 1163, 1167 (2021), which came down just weeks after the prior settlement agreement was signed, could have extinguished Defendants' liability. I therefore find it likely that Plaintiffs' counsel have adequately prosecuted the class claims.

22.     **Predominance**: "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 453 (2016). In this case, there are important issues pertinent to the class claims that are common to all classmembers, such as whether Defendants' calls fell within the TCPA's prohibition and whether Defendants were responsible for the calls.

23.     It is possible that there may be an individual issue as to whether each classmember was sufficiently harmed by Defendants' calls to establish standing to sue. See Susinno v. Work Out World Inc., 862 F.3d 346, 351 (3d Cir. 2017). The presence of an individual issue as to standing may in some cases defeat predominance. In re Niaspan Antitrust Litig., 464 F. Supp. 3d 678, 718 (E.D. Pa. 2020). However, this is not an absolute bar, and, "[e]ven if the issue of injury-in-fact presents individual questions, it does not necessarily follow that they predominate over common ones and that class action treatment is therefore unwarranted." In re Mushroom Direct Purchaser Antitrust Litig., 319 F.R.D. 158, 200 (E.D. Pa. 2016) (alterations omitted).

24.     The Amended Complaint alleges that Defendants' calls were made according to a script. (Amended Complaint ¶ 44.) The caller would pretend to be from PECO Energy to conceal that the purpose of the call was to sell Defendants' services. (Id. ¶ 42.) These allegations suggest

6

that, had this case proceeded to trial, Plaintiffs could have used classwide proof in the form of the script to show that classmembers were harmed by the calls.

25.     Therefore, at this preliminary stage, I find it is likely that common issues will be found to predominate over individual issues.

26.     **Superiority**: Class adjudication in this case has two principal benefits. First, the individual claims are small and likely would not be litigated on their own. Second, many classmembers would be unable to determine who to sue given that the caller would falsely identify themselves as calling from PECO Energy—thus, individual claims, even if sufficiently large to be worth litigating, would go unredressed. A class action that uses Defendants' marketing records to identify classmembers will more efficiently allow these claims to be presented and deter violations of the TCPA. I therefore find it likely that the requirement of superiority will be met.

27.     **Form of notice**: Plaintiffs propose to notify classmembers in the following ways: (1) email, to those classmembers for whom an email address is available from Defendants' marketing records; (2) postcards, to those classmembers for whom a mailing address is available from Defendants' marketing records; (3) publication in internet advertisements; (4) a website; and (5) notification to federal and state officials as required by law. See 28 U.S.C. § 1715. I find that notice given through this combination of media meets the requirements of Rule 23(c)(2)(B). In addition, I have reviewed the content of the proposed notice and I determine that it adequately apprises classmembers of the nature of the Settlement Agreement and their rights with respect to it.

     **WHEREFORE**, it is hereby **ORDERED** that:

28.     **Appointment of the Settlement Administrator.** KCC Class Action Services, LLC is appointed as the Settlement Administrator.

29. **Provision of Class Notice.** Defendant Frontier Utilities Northeast LLC ("Frontier") and the Settlement Administrator shall notify Settlement Class Members of the settlement in the manner specified under Section 4 of the Settlement Agreement.

30. **Claim for a Settlement Award.** To be eligible to receive an award, subject to the review process for Claims pursuant to Section 5.3 of the Settlement Agreement, Settlement Class Members must either: (a) be listed on the Closed Sales List (as defined in the Settlement Agreement), in which case the Settlement Class Member need not submit a Claim Form and will automatically receive the award under the Settlement Agreement unless they request to be excluded from the Settlement Agreement pursuant to Section 6 of the Settlement Agreement; or (b) submit a timely and valid Claim Form to the Settlement Administrator no later than ninety (90) calendar days after the entry of this Order.

31. **Objection to Settlement.** Any Settlement Class Member who has not submitted a timely written request for exclusion and who wishes to object to the fairness, reasonableness, or adequacy of the Settlement Agreement, the Fees, Costs, and Expenses Award, or the Service Payments must deliver written objections to the Settlement Administrator or the Court by postal mail and postmarked no later than ninety (90) calendar days after the entry of this Order. Written objections must: (a) clearly identify the case name and number; (b) include the full name and the unique identification number for the Settlement Class Member assigned by the Settlement Administrator; (c) include the address, telephone number, and email address of the objecting Settlement Class Member; (d) include the full name, address, telephone number, email address, and the state bar(s) of admission of the objector's counsel (if the objector is represented by personal counsel); and (e) provide a detailed explanation stating the specific reasons for the objection, including any legal or factual support and any evidence in support of the objection, in accordance

8

with Rule 23(e)(5) of the Federal Rules of Civil Procedure. Any Settlement Class Member who timely submits a written objection, as described in this paragraph, has the option to appear and request to be heard at the Final Approval Hearing, either in person or through personal counsel, to object to the fairness, reasonableness, or adequacy of the Settlement Agreement, the Fees, Costs, and Expenses Award, or the Service Payments. However, Settlement Class Members (with or without their attorneys) intending to make an appearance at the Final Approval Hearing must include on a timely and valid objection a statement substantially similar to "Notice of Intention to Appear." Only Settlement Class Members who submit timely objections including Notices of Intention to Appear may speak at the Final Approval Hearing. If a Settlement Class Member makes an objection through an attorney, the Settlement Class Member will be responsible for his or her personal counsel's fees and costs.

32.     **Failure to Object to Settlement.** Settlement Class Members who fail to object to the Settlement Agreement in the manner specified above will: (a) be deemed to have waived their right to object to the Settlement Agreement; (b) be foreclosed from objecting to the Settlement Agreement or proposed settlement; and (c) not be entitled to appear and request to be heard at the Final Approval Hearing.

33.     **Requesting Exclusion.** Settlement Class Members may elect not to be part of the settlement and not to be bound by this Settlement Agreement. Individual requests for exclusion may be submitted to the Settlement Administrator electronically (through the Settlement Website) or by postal mail, but if submitted by postal mail, each Settlement Class Member must pay for postage. No mass opt-outs are allowed. All requests for exclusion must be in writing and must: (a) clearly identify the case name and number; (b) include the full name and the unique identification number for the Settlement Class Member assigned by the Settlement Administrator; (c) include

the address, telephone number, and email address of the Settlement Class Member seeking exclusion; (d) contain a statement that the requestor does not wish to participate in the settlement; and (e) be signed personally by the Settlement Class Member. A request for exclusion must be submitted no later than ninety (90) calendar days after entry of this Order.

34.    **Class Definition.** The class to be notified is defined as:

> All persons in the United States to whom Frontier or anyone acting or purporting to act on Frontier's behalf made or tried to make any of the following Calls between May 31, 2013, and the date of this Order:
>
> (a) one or more Calls made using an automatic telephone dialing system, dialing platform, or other dialing equipment, to a number assigned to any paging service, cellular telephone service, specialized mobile radio service, radio common carrier service, or service for which the called party is charged for the Call;
>
> (b) one or more Calls initiated using an artificial or prerecorded voice; and/or
>
> (c) one or more Calls to a telephone number while it was on the national Do-Not-Call Registry or a state Do-Not-Call Registry or was on or requested to be placed on Frontier's internal do-not-call list.
>
> Excluded from the class are: (1) the Judges and Magistrate Judges presiding over the Action and members of their immediate families; (2) the Defendants, their parent companies, successors, predecessors, and any entities in which the Defendants or their parents have a controlling interest, and Defendants' current and former officers and directors; (3) persons who properly execute and timely file a request for exclusion from the class; and (4) the legal representatives, successors, or assigns of any such excluded person(s).

35.    **Provisional Class Representatives.** Pending a decision on class certification, Plaintiffs Andrew Perrong and Stewart Abramson shall provisionally serve as the class representatives to implement the Parties' settlement in accordance with the Settlement Agreement. The law firms of Paronich Law, P.C. and Murray Murphy Moul + Basil LLP shall provisionally serve as class counsel. Plaintiffs and Counsel must fairly and adequately protect Settlement Class Members' interests.

36.     **Stay of Dates and Deadlines.** All discovery and pretrial proceedings and deadlines in this case are stayed until further notice from the Court, except for such actions as are necessary to implement the Settlement Agreement and this Order.

37.     **Final Settlement Approval and Class Certification Hearing.** On **November 10, 2022 at 10:00 a.m.**, this Court will hold a Final Approval Hearing to determine whether the Settlement Agreement should be approved as fair, reasonable, and adequate and whether a class should be certified as defined above. Plaintiffs' motion in support of the Final Approval Order and Final Judgment shall be filed on or before fourteen (14) calendar days before the Final Approval Hearing. If the Hearing is postponed, the notice to be provided classmembers of the postponement will be addressed in the order postponing the Hearing.

38.     **Summary Timeline.** The Settlement Agreement and this Order provide for the following dates and deadlines related to the provision of notice and the Final Approval Hearing:

| | |
|---|---|
| Last day for the Settlement Administrator to publish the Settlement Website and begin operating a toll-free telephone number, email address, and post office box to accept inquiries from Settlement Class Members | 30 calendar days after entry of this Order |
| Settlement Administrator begins providing notice to Settlement Class Members | On or before 30 calendar days after entry of this Order |
| Last day for Settlement Class Members to submit Claim Forms, object, or request exclusion from the Settlement Class | 90 calendar days after entry of this Order |
| Last day for Settlement Class Counsel to file motion in support of Final Approval Order and Final Judgment | 14 calendar days before Final Approval Hearing |

**BY THE COURT:**

_/s/ Mitchell S. Goldberg_
**MITCHELL S. GOLDBERG, J.**

11