**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANDREW PERRONG and STEWART ABRAMSON, individually and on behalf of a class of all persons and entities similarly situated,<br><br>      Plaintiffs,<br><br>vs.<br><br>FRONTIER UTILITIES NORTHEAST LLC and NEXT GENERATION ENERGY, INC.,<br><br>      Defendants. | Case No. 2:20-cv-05844-MSG<br><br>Judge Goldberg |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS AND MEMORANDUM IN SUPPORT**

## I.      INTRODUCTION

Plaintiffs Andrew Perrong and Stewart Abramson (collectively, "Plaintiffs") and

Defendant Frontier Utilities Northeast LLC ("Frontier") (the Plaintiffs and Frontier are

collectively referred to herein as the "Parties") have negotiated, and the Court preliminarily

approved a class action settlement of this Telephone Consumer Protection Act ("TCPA") case on

April 21, 2022. (Doc. 52.) A copy of the Settlement is on file with the Court. (Doc. 48-1.) The

Settlement requires the establishment of a $3,050,000.00 Settlement Fund to be distributed *pro*

*rata* to Settlement Class Members who are Authorized Claimants after payment of notice and

Administration Costs (if approved), a Fees, Costs, and Expenses Award to Settlement Class

Counsel (if approved), and Service Payment to the Plaintiffs (if approved).[1] There is no reverter

---

[1] All capitalized terms not defined herein have the meanings set forth in the Parties' Settlement Agreement and Release ("Settlement" or "Agreement"), filed at Doc. 48-1.

in the Settlement Fund.  Settlement Class Members who are Authorized Claimants will each receive a cash payment from this fund of $193.48. (*See* Declaration of Gio Santiago ¶15 ("KCC Decl.), attached hereto as Exhibit 1.)  This per claim payment amount is well within the range of (and often far exceeds) other TCPA class action settlements approved by courts in this Circuit and elsewhere.

The Parties' Settlement Agreement is now subject to final approval by the Court.  In accordance with the Court's Preliminary Approval Order, CAFA Notice Packets were mailed via Priority Mail to the U.S. Attorney General, the Attorneys General and the Commissioners of Public Utilities of each of the 50 states, the District of Columbia, and U.S. Territories, a Postcard Notice was sent via first class mail and an Email Notice was sent via email to identified Settlement Class Members on the Closed Sales List, advising them of the proposed settlement. (*See* KCC Decl. ¶¶ 3, 6-7.)  In addition, Publication Notice was distributed through the Google Display Network and Facebook resulting in the delivery of 313,880,471 impressions.  Notably, there were *no objections* to the settlement.  (*Id.* ¶ 14.)

The Settlement Agreement reflects a compromise of the Parties' positions for the purpose of resolving, without further litigation, all issues and claims relating to the allegations made in this Action on behalf of all members of the Settlement Class.  As demonstrated below, the Settlement negotiated by the Parties is fair, adequate, and reasonable and provides a substantial benefit to the Settlement Class.

The Parties request that the proposed order attached hereto as Exhibit 2, and filed with the Court previously, be entered.  The order will fully dispose of this matter.

## II.    NATURE AND BACKGROUND OF THE CASE

This case rests on alleged violations of the TCPA, which prohibits, *inter alia*, initiating any telephone solicitation to a phone using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice.  *See* 47 U.S.C. § 227(b).  The TCPA also makes it unlawful to receive more than one telephone call within any twelve-month period by or on behalf of the same entity after placing the number on the National Do Not Call Registry.  *See* 47 U.S.C. § 227(c)(5).  The TCPA provides a private cause of action to persons who receive such calls.  *Id.* and 47 U.S.C. § 227(b)(3).

## A.    THE LITIGATION AND SETTLEMENT NEGOTIATIONS

On November 23, 2020, Plaintiff Andrew Perrong filed a putative class action complaint in this matter against Frontier and Next Generation Energy, Inc. alleging claims for violations of the TCPA's Do-Not-Call ("DNC") provisions (the "Action").  On May 31, 2019, Jon Frey filed a putative class action in the United States Court for the Eastern District of Pennsylvania against Frontier and Energy Acquisitions Group, LLC, captioned *Frey v. Frontier Utilities Northeast LLC, et al.*, Case No. 2:19-cv-02372-KSM, alleging claims for violations of the TCPA's ATDS provisions (the "Dismissed *Frey* Action"), which was subsequently dismissed without prejudice on May 14, 2021.

The Parties engaged in motion practice and discovery in the Dismissed *Frey* Action and in an action filed by Plaintiff Andrew Perrong before the Pennsylvania Public Utilities Commission.  The Parties exchanged information through discovery and participated in mediation under the guidance of mediator Hon. Morton Denlow from JAMS, which led to the Parties entering into a settlement agreement on March 10, 2021.

A dispute subsequently arose regarding the validity of that agreement, which resulted in extensive motion practice. *See, e.g.*, Plaintiff's Motion for Preliminary Approval of a Class Settlement (Doc. 15), Frontier's Opposition to Motion for Preliminary Approval (Doc. 18), Plaintiff's Reply (Doc. 23), Frontier's Sur-Reply (Doc. 29), and Plaintiff's Sur-Sur-Reply (Doc. 34); Frontier's Motion to Strike (Doc. 16), and Plaintiff's Opposition to Frontier's Motion to Strike (Doc. 17); Frontier's Motion for Sanctions (Doc. 19), Plaintiff's Opposition to the Motion for Sanctions (Doc. 21), and Frontier's Reply (Docs. 31, 26-1). The Court originally ordered oral argument on the Motions for Preliminary Approval, to Strike, and for Sanctions to be held on February 7, 2022. In the days leading up the original oral argument, however, the Parties opened up a dialogue to resolve the pending Motions and held direct negotiations as well as once again involving Judge Denlow. While those negotiations were continuing, the Court rescheduled the oral argument on the pending Motions to March 9, 2022 (Doc. 44).

On February 18, 2022, Plaintiff Stewart Abramson joined Plaintiff Andrew Perrong in filing a First Amended Class Action Complaint in this matter (Doc. 46), which alleges claims for violations of the TCPA's ATDS and DNC provisions. Subsequently, the parties completed the execution of the Settlement Agreement that was submitted to the Court in conjunction with the Amended and Unopposed Motion for Preliminary Approval. (Doc. 48.) Notwithstanding the settlement, Frontier has denied and continues to deny all claims alleged in the Action and maintains that it and its third-party vendors complied with the TCPA and all other applicable laws.

The Settlement Agreement preliminarily approved by the Court establishes a non-reversionary, capped Settlement Fund of $3,050,000.00, which will exclusively be used to pay: (1) cash settlement awards to Settlement Class Members who are Authorized Claimants; (2)

Administration Costs; (3) a Fees, Costs, and Expenses Award to Settlement Class Counsel up to one-third of the Settlement Fund in addition to out-of-pocket expenses of not more than $20,000.00, subject to Court approval; and (4) a one-time Court-approved Service Payment to each Plaintiff of up to $5,000.00 each.

Each Settlement Class Member who is an Authorized Claimant shall be entitled to receive an equal *pro rata* amount of the Settlement Fund after the Administration Costs, Fees, Costs, and Expenses Award, and one-time Service Payment to each Plaintiff are paid out of the Settlement Fund.

## III.    THE PROPOSED SETTLEMENT

### A.    THE SETTLEMENT CLASS

Pursuant to the Settlement Agreement, certification of the following Settlement Class for settlement purposes only is being sought:

> All persons in the United States to whom Frontier or anyone acting or purporting to act on Frontier's behalf made or tried to make any of the following Calls between May 31, 2013, and the date of entry of the Preliminary Approval Order:
>
> (a)    one or more Calls made using an automatic telephone dialing system, dialing platform, or other dialing equipment, to a number assigned to any paging service, cellular telephone service, specialized mobile radio service, radio common carrier service, or service for which the called party is charged for the Call;
>
> (b)    one or more Calls initiated using an artificial or prerecorded voice; and/or
>
> (c)    one or more Calls to a telephone number while it was on the national Do-Not-Call Registry or a state Do-Not-Call Registry or was on or requested to be placed on Frontier's internal do-not-call list.

(Settlement Agreement ¶ 1.33.)  The proposed settlement encompasses at least 11,000 individuals.

B.    **SETTLEMENT RELIEF**

1.    **Class Member Relief: Settlement Fund**

The proposed Settlement Agreement establishes a non-reversionary, capped Settlement Fund of $3,050,000.00, which will exclusively be used to pay: (1) cash settlement awards to Settlement Class Members who are Authorized Claimants; (2) Administration Costs; (3) a Fees, Costs, and Expenses Award to Settlement Class Counsel up to one-third of the Settlement Fund in addition to out-of-pocket expenses of not more than $20,000.00, subject to Court approval; and (4) a one-time Court-approved Service Payment to each Plaintiff of up to $5,000.00 each.

Each Settlement Class Member who is an Authorized Claimant shall be entitled to receive an equal *pro rata* amount of the Settlement Fund after the Administration Costs, Fees, Costs, and Expenses Award, and one-time Service Payment to each Plaintiff are paid out of the Settlement Fund.  If the Administration Costs, Fees, Costs, and Expenses Award, and one-time Service Payment to each Plaintiff are approved as requested, Settlement Class Counsel estimate that the average payment to an Authorized Claimant would be approximately $157.00.

2.    **Class Representative Service Payment**

If approved by the Court, both Plaintiffs will receive a one-time Service Payment of $5,000.00 each from the Settlement Fund.  As discussed in Plaintiffs' Motion for Award of Attorneys' Fees, Costs, Expenses, and Class Representative Award, contemporaneously filed herewith, this award will compensate the Plaintiffs for their time and effort and for the risk undertook in prosecuting this case as well as participating in discovery.

3.    **Attorneys' Fees and Costs**

Settlement Class Counsel is contemporaneously filing a motion for an award of attorneys' fees in the amount of one-third of the total amount of the Settlement Fund

($1,016,666.67) and out of pocket costs and expenses of $20,000.  The requested award of attorneys' fees, costs, and expenses will compensate Settlement Class Counsel for the work already performed in relation to the settled claims, as well as the remaining work to be performed in documenting the settlement, securing Court approval of the settlement, making sure the settlement is fairly implemented, and obtaining dismissal of the Action.

### 4.    Remaining Funds

Any amount remaining in the Settlement Fund after making payments to all Authorized Claimants and paying the Administration Costs, any Fees, Costs, and Expenses Award, and any Service Payments will be distributed to a Court-approved *Cy Pres* Recipient.  (Settlement Agreement ¶¶ 3.5-3.7.) The Parties have proposed the Utility Emergency Services Fund as an appropriate recipient.  (*Id*. ¶ 1.10.)

The Philadelphia-based Utility Emergency Services Fund was established in 1983 and provides assistance to vulnerable families impacted by housing crises by providing emergency utility assistance through utility grants for families facing utility shut-offs.  It has more recently expanded its programs to assist low-income families with broader housing challenges.  *See* UTILITY EMERGENCY SERVICES FUND, https://uesfacts.org/about-uesf/ (last visited October 18, 2022).  The Utility Emergency Services Fund is both aligned with the interests of Settlement Class Members and would be a worthy *cy pres* recipient. However, it is important to note that the only *cy pres* payment will be made for uncashed checks which are no longer economically viable to distribute to Authorized Claimants. (Settlement Agreement ¶¶ 3.5-3.7.)

### C.    NOTICE AND SETTLEMENT ADMINISTRATION

The Settlement Administrator, KCC Class Action Services, LLC ("KCC"), caused the Postcard Notice to be delivered via first class mail and the Email Notice to be delivered via email

to Settlement Class Members in accordance with the Settlement Agreement and the Court's Preliminary Approval Order.  (KCC Decl. ¶¶ 6-7.)  The Settlement Administrator also caused the Publication Notice to be distributed through the Google Display Network and Facebook.  In addition, the Settlement Administrator administered the Settlement Website (*id.* ¶ 10), processed claim forms (*id.* ¶ 12), and will issue checks to claimants. The Settlement Administrator's records reflect that approximately 13 additional valid claims from the Publication Notice have been received, reviewed, and determined to be presumptively valid.  (*Id.* at ¶ 12.)  Subject to this Court's approval, Administration Costs, which are set forth in great detail in the attached Declaration from the Settlement Administrator, will be paid from the Settlement Fund. (Settlement Agreement ¶ 2.1.5.)

## D.    OPT-OUTS AND OBJECTIONS

Settlement Class Members were given the opportunity to opt out of or object to approval in accordance with the Settlement Agreement.  (*Id.* ¶ 6.)  In total, only three Settlement Class Members opted out, and none objected to any aspect of the settlement.  (KCC Decl. ¶¶ 13-14.)

## E.    RELEASE

The release is appropriately tailored to violations like those alleged in the Action and is limited to Settlement Class Members.  In exchange for settlement benefits, the Settlement Class Members who did not timely opt out of the Settlement Agreement will release Frontier and the Released Parties from any and all claims against them. The release of any vendors, subvendors, contractors, subcontractors, and service providers that made or were involved in making calls is limited to actions taken by, on behalf of, or purportedly on behalf of Frontier.  (*Id.* ¶ 1.27.)  In addition, the Plaintiffs will generally release Frontier and the Released Parties from any and all claims against them.  (*Id.* ¶ 1.22.)

## IV.    ARGUMENT

### A.    THE SETTLEMENT APPROVAL PROCESS

A court may approve a class action settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing."  MANUAL FOR COMPLEX LITIGATION (SECOND) § 30.44 (1985).

The amendments to Rule 23(e)(2) that went into effect in December 2018 provide additional guidance, requiring courts consider whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided by the settlement is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief including the method of processing class-member claims, if required, (iii) the terms of any proposed award of attorneys' fees, including timing of payment, and (iv) any agreement required to be identified under Rule 23(e)(3) made in connection with the proposed settlement; and (D) the proposal treats class members equitably relative to each other.  Plaintiffs will address these factors as applicable, many of which overlap.  There is no governmental participant, and no agreement required to be identified under Rule 23(e)(3).

In addition, the Third Circuit has a strong judicial policy that encourages class settlements, especially those that are the product of arm's length negotiations.  *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 510 (D.N.J. 1997), *aff'd sub nom. Krell v. Prudential  Ins. Co. of Am.*, 148 F.3d 283, 317 (3d Cir. 1998); *see also In re Cmty.*

*Bank of N. Virginia*, 418 F.3d 277, 299 (3d Cir. 2005) ("all Federal Circuits recognize the utility

of … 'settlement classes' as a means to facilitate the settlement of complex nationwide class

actions") (quotation and citation omitted).

**B.    THE CRITERIA FOR FINAL APPROVAL ARE SATISFIED**

The Third Circuit has adopted a nine-factor test to determine whether a settlement is

"fair, reasonable, and adequate" and should be finally approved.  The elements of this test—

known as the "*Girsh* factors"—are:

> (1) the complexity and duration of the litigation; (2) the reaction of
> the class to the settlement; (3) the stage of the proceedings; (4) the
> risks of establishing liability; (5) the risks of establishing damages;
> (6) the risks of maintaining a class action; (7) the ability of the
> defendants to withstand a greater judgment; (8) the range of
> reasonableness of the settlement in light of the best recovery; and
> (9) the range of reasonableness of the settlement in light of all the
> attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *In re GMC Pick-Up Truck Fuel Tank Prods.*

*Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) (citing *Girsh*, 521 F.2d at 157).

As summarized below, these factors, as well as the factors contained in Rule 23(e)(2),

demonstrate that this settlement should be finally approved.

**1.    Complexity, Expense, and Likely Duration of the Litigation**

The first *Girsh* factor "captures the probable costs, in both time and money, of continued

litigation."  *In re Cendant Corp. Litig.,* 264 F.3d 201, 233 (3d Cir. 2001) (internal citation and

quotation marks omitted).  "By measuring the costs of continuing on the adversarial path, a court

can gauge the benefit of settling the claim amicably."  *GMC*, 55 F.3d at 812.  This factor

undoubtedly weighs in favor of the Settlement here.  In this litigation, the path from this point to

a final judgment would be long and expensive.  After discovery was completed, the Parties

would have had to brief class certification, and the Court would have been forced to decide the

strongly contested issue of whether a basis exists to certify a class for the purpose of establishing liability.  If the Court determined that certification was warranted, then Frontier presumably would have immediately exercised its right to seek interlocutory review of that certification order.  If the certification order was upheld, additional discovery would have been taken (with attendant discovery-related motion practice).  Thereafter, dispositive motions would have been filed by one or both of the Parties, and the Court would have been forced to adjudicate those motions, with additional appellate practice if such dispositive motions resulted in either entry of final judgment or a basis for interlocutory review.  Depending on how the Third Circuit resolved any such appeals, the case might ultimately have gone to trial.  Post-trial motions and additional appeals would have likely followed.

In fact, one of Class Counsel was involved in one of the only TCPA class actions to go through trial, and the amount of work done after class certification and through trial that would have resulted here is indicated in the work done in that case.  *See Krakauer v. Dish Network, L.L.C.*, No. 1:14-CV-333 (M.D.N.C. 2017) (more than 45 motions after a class certification decision through the time of trial).  That case remains on appeal several years after the initial trial was completed.  In short, litigating this Action would have proved lengthy, complex, and expensive, thereby delaying (and potentially dissipating) any benefits that might have been obtainable by Settlement Class Members.  The proposed Settlement Agreement permits the Court and the Parties to avoid this significant expenditure of time and resources.  This factor strongly favors preliminary approval of the proposed settlement.

### 2.     The Reaction of the Settlement Class to the Settlement

The second *Girsh* factor "attempts to gauge whether members of the class support the settlement."  *Prudential*, 148 F.3d at 318.  Here, *no Settlement Class Member* has objected to any

aspect of the settlement. *See In re AT&T Corp. Sec. Litig.,* 455 F.3d 160 (3d Cir. 2006) (district court did not abuse discretion in finding that second factor weighed strongly in favor of approval where there were eight objections out of one million potential class members); *In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 305 (3d Cir. 2005) (noting that a similarly low level of objection is a "rare phenomenon"). Only three members have opted out. (KCC Decl. ¶ 13.) The positive response of the Settlement Class weighs in favor of approval.

      **3.     The Stage of Proceedings and the Amount of Discovery Completed**

The third *Girsh* factor "captures the degree of case development that class counsel [had] accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *See GMC,* 55 F.3d at 813.

This inquiry has two aspects: legal and factual. *Prudential,* 148 F.3d at 319. The first aspect is easily satisfied in this case, where the Parties engaged in extensive negotiations and related legal analysis with the help of an experienced and sophisticated mediator in Hon. Morton Denlow of JAMS who has helped resolve numerous TCPA class actions. As a result, Settlement Class Counsel has a more than adequate appreciation of the legal merits of the case. The same is true from a factual perspective, which involves "an inquiry into the type and amount of discovery the parties have undertaken." *Id.* Here, Settlement Class Counsel reviewed and analyzed more than ten separate document productions representing thousands of pages of documents from various defendants and third parties in the Dismissed *Frey* Action as well as documents related to the Public Utility Commission action filed by Mr. Perrong. Settlement Class Counsel has a thorough appreciation of the facts—good and bad—which bear upon the merits of the claims in this litigation. In view of the foregoing, this factor strongly favors approval of the proposed settlement.

      **4.     The Risks of Establishing Liability and Damages**

As to the fourth *Girsh* factor, as well as factor (C)(i) of Rule 23(3)(2) ("the costs, risks, and delay of trial and appeal"): "[b]y evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *GMC*, 55 F.3d at 814. "The risks surrounding a trial on the merits are always considerable." *Weiss v. Mercedes-Benz of N. Am.*, 899 F. Supp. 1297, 1301 (D.N.J. 1995); *see also, e.g., West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ("[N]o matter how confident one may be of the outcome of litigation, such confidence is often misplaced."). As to the risks of establishing damages: "Like the fourth factor, this inquiry attempts to measure the expected value of litigating the action rather than settling it at the current time." *Cendant*, 264 F.3d at 238-39 (internal citation and quotation marks omitted).

Plaintiffs believe that the claims against Frontier would be successful at trial. Nevertheless, these claims would face several difficult challenges if the litigation were to continue. If this Action proceeds, based on their experience with other TCPA actions and the specifics of this Action, Settlement Class Counsel expects that Frontier will aggressively raise multiple issues.

While Frontier has agreed to settle, it was not without significant defenses as discussed above. One of the most significant risks for the Settlement Class Members focuses on the question of whether the dialing system, which Plaintiffs contend is a predictive dialer, is an "Automatic Telephone Dialing System" under the TCPA. As an initial matter, on July 10, 2015, the FCC released an omnibus declaratory ruling clarifying numerous relevant issues affecting the

TCPA, including definition of an ATDS under the statute[2]—which was overturned in part in *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018).  Following the D.C. Circuit's decision in *ACA Int'l,* courts have been split on what constitutes an ATDS under the TCPA.  Recently, the Supreme Court rendered its decision regarding what constitutes an "automatic telephone dialing system" under the TCPA.  *See Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021).  The decision held, "To qualify as an 'automatic telephone dialing system' under the TCPA, a device must have the capacity either to store a telephone number using a random or sequential number generator, or to produce a telephone number using a random or sequential number generator." *Id.* at 1165.  While Plaintiffs do not concede that the dialing systems at issue do not have that "capacity," the standard to establish that is more difficult than when the settlement was signed.

Class certification is also far from automatic in TCPA cases.  *Compare Tomeo v. CitiGroup, Inc.*, No. 13 C 4046, 2018 U.S. Dist. LEXIS 166117, at *3 (N.D. Ill. Sept. 27, 2018) (denying class certification in TCPA case after nearly five years of hard-fought discovery and litigation), *Jamison v. First Credit Servs.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) (finding issues of consent to predominate in TCPA action), *and Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 527 (E.D. Wis. 2014) (same), *with Saf-T-Gard Int'l v. Vanguard Energy Servs.*, No. 12-3671, 2012 U.S. Dist. LEXIS 174222 (N.D. Ill. Dec. 6, 2012) (certifying a class in a TCPA action and finding no evidence supported the view that issues of consent would be individualized) *and Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 253 (N.D. Ill. 2014) (same).

Even if the class were certified, Plaintiffs would still have a substantial obstacle regarding Frontier's vicarious liability for the conduct of its vendors.  The Supreme Court in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), held traditional agency and vicarious liability

---

[2] *See* https://apps.fcc.gov/edocs_public/attachmatch/FCC-15-72A1.pdf.

principles are required in order to be found liable under the TCPA. However, Frontier did not have contractual privity with the entities that physically initiated the calls, which would make such a finding more difficult. *See, e.g., Cunningham v. Cap. Advance Sols., LLC*, No. 17-13050 (FLW), 2018 U.S. Dist. LEXIS 197590 (D.N.J. Nov. 20, 2018). In fact, other district courts in the Third Circuit have entered summary judgment in favor of TCPA defendants in such a situation. *See Klein v. Just Energy Grp., Inc.,* No. 14-1050, 2016 U.S. Dist. LEXIS 84447, at *43 (W.D. Pa. June 29, 2016) ("In sum, the evidence adduced in this case is not sufficient to support a finding by a reasonable jury that Collectcents was acting as an agent (whether under actual authority, apparent authority or ratification theories) for any of the Just Energy Defendants in making any of the calls."). Moreover, as discussed above, Frontier contends that it never authorized any vendor to make the calls at issue.

In addition, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons – Algonquin, Inc.*, No. 09-910, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights. … Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."). Moreover, the narrative of Frontier's telemarketing compliance efforts could present a case for reduction of any damages awarded after trial, and some courts have applied this principle in the TCPA context. *See, e.g., Golan v. Veritas Ent., LLC,* No. 4:14CV00069 ERW, 2017 U.S. Dist. LEXIS 144501 (E.D. Mo. Sept. 7, 2017) (reducing the damages awarded in a TCPA class action lawsuit to $10 a call).

By reaching this settlement, the Parties will avoid protracted litigation and will establish a means for prompt resolution of Settlement Class Members' claims against Frontier. These avenues of relief provide a benefit to Settlement Class Members. Given the alternative of long and complex litigation before this Court, the risks involved in litigating the Action, the fact that Frontier is a small company with finite resources, and the possibility of appellate litigation, the availability of prompt relief under the Settlement Agreement is highly beneficial to the Settlement Class. Moreover, given the current COVID-19 pandemic and the financial stress and uncertainty it is causing so many individuals, the importance of prompt relief for Settlement Class Members is heightened in the current environment.

While Plaintiffs were confident they would ultimately prevail, this Action would continue to be heavily litigated by experienced class action counsel on behalf of Frontier. As with any litigation, there are risks inherent in continuing to litigate, but considering that Plaintiffs were able to obtain by settlement much of the relief sought in the litigation, it is in the Settlement Class's best interest to accept the relief provided in the Settlement Agreement now rather than to spend hundreds of thousands of dollars in fees and years of time in an attempt to obtain a marginally better result through litigation.

### 5.    Risks of Maintaining Class Action Status Through Trial

Because "the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the class action," *GMC*, 55 F.3d at 817, the court must measure the likelihood of obtaining and maintaining a certified class if the action were to proceed to trial. *Girsh*, 521 F.2d at 157. While for the reasons stated above, Plaintiffs firmly believe that this case is appropriate for class action treatment, regardless of any settlement, it is undeniable that class certification for settlement purposes removes some of the hurdles upon

which some courts have denied certification of a litigation class.  For example, manageability is not a concern with settlement classes.  *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).

What is certain is that any decision granting certification absent settlement would be subjected to the cost, delay, and the uncertainty of a Rule 23(f) appellate challenge, before the class could proceed to trial, and an appeal from any verdict or judgment in favor of the class would likewise follow.  If a class could not be certified here, it would leave few, if any, class members with both the resources and financial incentive to chase a maximum $500 award for each alleged statutory violation on their own, with the practical result of no recovery by anyone. *See  Carnegie v. Household Int'l, Inc.,* 376 F.3d 656, 661 (7th Cir. 2004) ("The *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.") (emphasis in original).  The proposed Settlement Agreement provides a remedy now to all Settlement Class Members, rather than risking an uncertain result after years of expensive litigation.

### 6.        Ability to Withstand a Greater Judgment

The sixth *Girsh* factor considers "whether the defendants could withstand a judgment for an amount significantly greater than the [s]ettlement."  *Cendant*, 264 F.3d at 240.  This factor is particularly relevant here.

In a TCPA case such as this, the potential damages could bankrupt Frontier.  Unlike a large public company with extensive financial resources, Frontier is a small company with finite resources.  As one court acknowledged in approving a TCPA settlement:

> Individual class members receive less than the maximum value of their TCPA claims, but they receive a payout without having suffered anything beyond a few unwanted calls or texts, they receive it (reasonably) quickly, and they receive it without the time, expense, and uncertainty of litigation....  *[C]omplete victory for*

> Plaintiffs at $500 or $1,500 per class member could bankrupt [the
> defendant].... [The] recovery in the hand is better than a $500 or
> $1,500 recovery that must be chased through the bankruptcy courts.

*Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) (emphasis added); *see also Reinhart v. Lucent Tech.*, 327 F. Supp. 2d 426, 438 (D.N.J. 2004) ("[T]he risk of nonpayment is 'acute' where a defendant lacks 'significant unencumbered hard assets against which plaintiffs could levy had a judgment been obtained.'") (quoting *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 150 (E.D. Pa. 2000)).

The typical risks of nonpayment are accentuated in the current economic client where the country is facing the COVID-19 pandemic and the accompanying financial stress that is affecting nearly every business and individual in some form or fashion. The uncertainty created by this environment makes the certainty created the settlement achieved by Settlement Class Counsel even more valuable and prudent for the Settlement Class. This factor weighs heavily in favor of approval.

### 7. The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All the Attendant Risks of Litigation

The last two *Girsh* factors are usually considered together. They ask "whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial." *Prudential*, 148 F.3d at 322. As Judge Becker explained in *GMC*, "[t]he evaluating court must ... guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." 55 F.3d at 806. These factors overlap with Rule 23(e)(2)(C) (relief provided by the settlement is adequate, taking into account risks, distribution method, and attorneys' fees).

As explained above, the settlement amount here is reasonable relative to the claims asserted and the risks inherent in bringing those claims to a successful judgment after trial. The settlement amount and minimum per claimant payment of approximately $193.48 is well above other TCPA settlements approved across the country. The following provides a summary overview of a sampling of per claimant recoveries in similar TCPA cases around the country that establishes the result achieved in this case is not just reasonable but exemplary when compared to outcomes negotiated in other class settlements:

| Case Name | Claimant Amount |
|---|---|
| *Schely v. Verde Energy USA, Inc.,* No. 2:17-cv-00887-WB (E.D. Pa. May 19, 2020) | $100.00 cash |
| *Amanda Hopkins v. Modernize Inc.,* No. 4:17-cv-40087-TSH (D. Ma. Oct. 9, 2019) | $26.00 cash |
| *Marengo v. Miami Resch. Assocs., LLC*, No. 1:17-cv-20459-KMW (S.D. Fla. July 20, 2018) | $130.00 cash |
| *Vasco v. Power Home Remodeling Group LLC*, No. 15-cv-4623, 2016 U.S. Dist. LEXIS 141044 (E.D. Pa. Oct. 12, 2016) | $27.00 cash |
| *Kolinek v. Walgreen Co.*, No. 13-cv-4806, 2015 WL 7450759, at *7 (N.D. Ill. Nov. 23, 2015) | $30.00 cash |
| *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) | $39.66 cash |
| *Rose v. Bank of Am. Corp.*, No. 11-cv-02390- EJD, 2014 U.S. Dist. LEXIS 121641, at *30 (N.D. Cal. Aug. 29, 2014) | $40.00 cash |
| *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, 2014 WL 1309352, at *6 (N.D. Cal. Mar. 10, 2014) | $46.98 cash |
| *Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) | $24.00 cash |
| *Manoucherhi v. Styles for Less, Inc.,* Case No. 14cv2521 NLS, 2016 WL 3387473, at *2, 5 (S.D. Cal. June 20, 2016) | $10.00 cash (or $15.00 voucher) |
| *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 3:11-md-02261 (S.D. Cal. Feb. 20, 2013) | $12.97 cash (or $17.29 voucher) |
| *Estrada v. iYogi, Inc.*, No. 2:13-01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) | $40.00 cash |
| *Cubbage v. Talbots, Inc.*, No. 09-cv-00911-BHS (W.D. Wash. Nov. 5, 2012) | $40.00 cash (or $80.00 voucher) |
| *Wijesinha v. Susan B. Anthony List, Inc.*, No. 1:18-cv-22880-JEM (S.D. Fla. 2019) | $5.00 cash |
| *Satterfield v. Simon & Schuster, Inc., et al.,* No. 06-cv-2893 (N.D. Cal. 2010) | $175.00 cash |
| *Goldschmidt v. Rack Room Shoes, Inc.*, No. 1:18-cv-21220-KMW (S.D. Fla. 2019) | $5.00 cash (and $10.00 voucher) |

| Case Name | Claimant Amount |
|---|---|
| *Poirier v. CubaMaxTravel, Inc.,* No. 1:18-cv-23240-CMA (S.D. Fla. 2018) | $7.00 cash |
| *Weinstein v. The Timberland Co.,* No. 06-cv-00484 (N.D. Ill. 2008) | $150 cash |
| *Mohamed v. Off Lease Only, Inc.,* No. 1:15-cv-23352-MGC (S.D. Fla. 2019) | $50.00 cash |

And the proposed method of distributing relief and processing claims is effective and equitable.  Fed. R. Civ. P. 23(e)(2)(C).  To participate in the settlement, Settlement Class Members who were on the Closed Sales List and did not opt-out were automatically entitled to payment as Authorized Claimants.  Settlement Class Members who received Publication Notice were only required to submit simple claim forms to become Authorized Claimants.  They can participate in the benefits of the settlement regardless of whether that Authorized Claimant retained calling records or any other proof related to receipt of calls that allegedly violated the TCPA.  Payments to Authorized Claimants will be sent after final approval, and all Authorized Claimants will receive an equal amount.  *See* Fed. R. Civ. P. 23(e)(2)(D) ("the proposal treats class members equitably relative to each other").

The terms of the proposed attorneys' fees were disclosed in the Notices and are well in line with fees in other cases.  Attorneys' fees awarded will be paid at the same time Authorized Claimants are paid.

### 8.    The Class Representatives and Settlement Class Counsel Have Adequately Represented the Settlement Class

Rule 23(e)(2)(A) requires the Court to consider whether the Plaintiffs and Settlement Class Counsel have adequately represented the Settlement Class.  For the reasons stated in the Plaintiffs' memorandum in support of preliminary approval, Doc. 48 at pp. 11-12, this requirement is satisfied.  Plaintiffs' interests are aligned with those of the Settlement Class, and they have served the Settlement Class's interests in this litigation and in obtaining this

settlement.  And Settlement Class Counsel are experienced TCPA litigators.  (Class Counsel Decl., Doc. 48-2.)

9.      **The Proposal Was Negotiated at Arm's Length**

Rule 23(e)(2)(B) instructs the Court to consider whether the proposed settlement was negotiated at arm's length.

Here, the Parties reached the settlement through formal mediation sessions with a highly respected, independent mediator, the Honorable Morton Denlow of JAMS.  Prior to their sessions, the Parties prepared memoranda and exchanged information relevant to settlement negotiations.  The negotiations were substantive and included extensive discussions about the merits of Plaintiffs' legal claims and Frontier's defenses.

The prolonged, hard-fought, and arm's length negotiations between experienced attorneys for both sides and the result for the Settlement Class are all testaments to the non-collusive nature of the settlement.  And "the participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."  *In re ViroPharma Inc. Secs. Litig.*, No. 12-cv-2714, 2016 U.S. Dist. LEXIS 8626, at *24 (E.D. Pa. Jan. 25, 2016) (citation omitted).

The "arm's-length negotiation" factor of Rule 23(e)(2)(B) weighs in favor of approval.

**C.      SETTLEMENT CLASS MEMBERS WERE SENT PROPER NOTICE**

The threshold requirement concerning class notice is whether the means employed to distribute the notice was reasonably calculated to apprise the class of the pendency of the action, of the proposed settlement, and of the class members' right to opt out or object.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 159, 173 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950).  The notice process that was successfully implemented in this case more than

satisfied all requirements.  As previously approved by the Court, the Parties implemented a

Notice Plan including Postcard Notice, Email Notice, and publication of a Long-Form Notice on

the Settlement Website, which the Postcard Notice also directs Settlement Class Members to,

and Publication Notice through the Google Display Network and Facebook.  The language of the

Postcard Notice, Email Notice, Long-Form Notice, and Publication Notice was negotiated and

agreed to by the Parties and approved by the Court prior to being disseminated.  The proposed

notices were written in simple terminology and included: (1) a description of the Settlement

Class; (2) a description of the claims asserted in the Action; (3) a description of the Settlement

Agreement; (4) the deadlines for filing a Claim Form and/or for exercising the right to opt out

(including limitation on the opt-out right); (5) the names of counsel for the Settlement Class; (6)

the fairness hearing date; (7) an explanation of eligibility for appearing at the fairness hearing;

and (9) the deadline for filing objections to the settlement.  (KCC Decl. Exs. C-E.)

The Settlement Administrator utilized a set of reliable and robust databases to initially

compile addresses to provide Postcard Notice and Email Notice to as many Settlement Class

Members as possible.  (KCC Decl. ¶ 5.)

Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class

members who would be bound by" a proposed settlement.  Fed. R. Civ. P. 23(e)(1); *see also*

MANUAL FOR COMPLEX LITIGATION, *supra*, at § 21.312.  The best practicable notice is that which

is "reasonably calculated, under all the circumstances, to apprise interested parties of the

pendency of the action and afford them an opportunity to present their objections."  *Lightspeed*

*Media Corp. v. Smith*, 761 F.3d 699, 704 (7th Cir. 2014), citing *United States Air Funds, Inc. v.*

*Espinosa*, 559 U.S. 260, 272 (2010).

The Notice that was previously preliminarily approved by this Court and disseminated to the Settlement Class satisfies these criteria. The Notice is clear, straightforward, and provides persons in the Settlement Class with enough information to evaluate whether to participate in the Settlement. The Notice Plan constituted the best notice practicable under the circumstances, provided due and sufficient notice to the Settlement Class, and fully satisfied the requirements of due process and Federal Rule of Civil Procedure 23.

**D.    CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE**

The Settlement Class meets all of the requirements for certification under Rule 23. There are no significant factual or legal differences among Settlement Class Members—all were allegedly subject to illegal telemarketing, and all are subject to the protections of the TCPA. For the reasons set forth more fully in the motion for preliminary approval (Doc. 48), which have not changed, all of the Rule's requirements are met in the Settlement Class. Plaintiffs therefore request that the Court finally certify the Settlement Class for settlement purposes.

## V.    CONCLUSION

The proposed class action settlement is fair, reasonable, adequate, and well within the permissible range of possible judicial approval. It should, therefore, be approved in all respects.

Respectfully submitted,

*/s/ Anthony I. Paronich*

Anthony I. Paronich (admitted *pro hac vice*)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

Joseph F. Murray (327025)
Brian K. Murphy (admitted *pro hac vice*)
Jonathan P. Misny (admitted *pro hac vice*)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
Telephone: 614.488.0400
Facsimile: 614.488.0401
E-mail: murray@mmmb.com
        murphy@mmmb.com
        misny@mmmb.com

*Attorneys for Plaintiffs and the Proposed Settlement Class*

Dated: October 26, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to all counsel of record.

*s/ Anthony I. Paronich*

- 24 -